## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **RIAN HELGASON and CAROLINE CRAWFORD, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)** | **No.  3:20-cv-01573-E** |
| *Plaintiffs,* | |
| **v.** | **PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE UNDER SECTION 216(b) AND BRIEF IN SUPPORT** |
| **PERRY'S RESTAURANTS LTD; PERRY'S LLC; PBS HOLDINGS, INC.; and LEASING ENTERPRISES, LTD, collectively d/b/a Perry's Steakhouse and Grille; and CHRISTOPHER V. PERRY, individually.** | |
| *Defendants.* | |

Respectfully submitted,


By: _/s/ Drew N. Herrmann_
Drew N. Herrmann
Texas Bar No. 24086523
*drew@herrmannlaw.com*
Pamela G. Herrmann
Texas Bar No. 24104030
*pamela@herrmannlaw.com*

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
(817) 479-9229 – telephone
(817) 887-1878 – fax
ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 7

II.  LEGAL BASIS ....................................................................................................... 9

III. FACTUAL BACKGROUND ....................................................................................... 10

   A. Perry's utilizes the "tip credit" to supplement its servers' subminimum hourly rate and has a mandatory tip pool. ......................................................................... 11

   B. Perry's required Plaintiffs and Collective Members to share a portion of their tips with non-tipped employees. ................................................................................ 12

   C. Perry's deductions from its servers' wages for mandatory uniforms and other business-related items constitutes a minimum wage violation and destroys Perry's ability to take a tip credit. ................................................................................. 13

   D. Plaintiffs and Collective Members performed the same or similar job duties, including non-tipped job duties at a rate of $2.13 per hour. ......................................... 13

IV.  REQUEST FOR CONDITIONAL CERTIFICATION ........................................................ 16

   A. Collective actions are favored and District Courts are authorized to issue notice. ......... 16

   B. The *Lusardi* two-stage certification process. ................................................... 17

   C. Collective Members are entitled to notice based on Plaintiffs' allegations and sworn declarations submitted with this Motion. ........................................................ 21

       1. A reasonable basis exists crediting plaintiffs' assertions that other aggrieved similarly situated individuals exists. ........................................................ 21

       2. Plaintiffs and Collective Members are similarly situated with respect to job duties and Defendant's pay policies and practices. ......................................... 22

       3. Similarly situated potential opt-in plaintiffs exist. ...................................... 25

V.   REQUEST FOR NOTICE TO CLASS MEMBERS ........................................................ 26

VI.  CONCLUSION AND PRAYER .................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguilar v. Complete Landsculpture, Inc.*,
No. 3:04-CV-0776-D, 2004 U.S. Dist. LEXIS 20265 (N.D. Tex. Oct. 7, 2004); ...................... 18

*Aguirre v. Tastee Kreme #2, Inc.*,
No. H-16-2611, 2017 U.S. Dist. LEXIS 83944 (S.D. Tex. April 13, 2017)................................ 28

*Alford v. Freedom Oilfield Services, LLC*,
No. 5:16-CV-00331-DAE, 2016 WL 8673858 (W.D. Tex. Aug. 17, 2016) ............................... 21

*Arceo v. Orta*,
296 F. Supp. 3d 818 (N.D. Tex. Nov. 1, 2017).................................................................... 20, 30

*Beall v. Tyler Techs., Inc.*,
No. 2:08–CV–422, 2009 WL 1766141 (E.D. Tex. June 23, 2009) ............................................ 29

*Behnken v. Luminant Mining Co., LLC*,
997 F. Supp. 2d 511 (N.D. Tex. 2014) ................................................................................. 17, 27

*Bernal v. Vankar Enters.*,
No. SA-07-CA-695-XR, 2008 U.S. Dist. LEXIS 22814 (W.D. Tex. Mar. 24, 2008)............. 9, 10

*Bewley v. Accel Logistics, Inc.*,
No. 3:17-CV-0676-S-BK, 2018 U.S. Dist. LEXIS 89124 (N.D. Tex. 2018) .............................. 25

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
2015 U.S. Dist. LEXIS 90616 (S.D. N.Y. July 13, 2015) ................................................... 28, 29

*Biller v. RMCN Credit Servs.*,
No. 4:16-CV-00043-ALM-CAN, 2017 U.S. Dist. LEXIS 67361 (E.D. Tex. Apr. 3, 2017)........ 20

*Black v. SettlePou, P.C.*,
No. 3:10-CV-1418-K, 2011 U.S. Dist. LEXIS 15493 (N.D. Tex. Feb. 14, 2011) ................ 25, 29

*Burns v. Chesapeake Energy, Inc.*,
SA-15-CV-1016-RP, 2017 U.S. Dist. LEXIS 68726 (W.D. Tex. Mar. 14, 2017) ...................... 28

*Butler v. TFS Oilfield Servs., LLC*,
No. SA-16-CV-1150-FB, 2017 U.S. Dist. LEXIS 218126 (W.D. Tex. 2017) ............................. 29

*Cervantez v. TDT Consulting, LLC*,
No. 3:18-cv-2547-S-BN, 2019 U.S. Dist. LEXIS 142907 (N.D. Tex. July 22, 2019) ......... passim

*Clemons v. PHB, Inc.*,
No. 3:17-CV-0417-B, 2018 U.S. Dist. LEXIS 161630 (N.D. Tex. Sep. 21, 2018).......... 17, 18, 23

*Contreras v. Land Restoration LLC*,
No. 1:16-CV-883-RP, 2017 U.S. Dist. LEXIS 22842 (W.D. Tex. Feb. 17, 2017) ......... 25, 28, 30

*Crane v. J & M Communs., Inc.*,
No. 3:16-CV-2855-L-BH, 2017 U.S. Dist. LEXIS 104566 (N.D. Tex. 2017)............................ 25

*Davis v. Capital One Home Loans, LLC*,
No. 3:17-CV-3236-G, 2018 U.S. Dist. LEXIS 130035 (N.D. Tex. Aug. 2, 2018) .............. passim

*Dearmond v. Alliance Energy Servs., L.L.C.*,
No. 17-2222, 2017 U.S. Dist. LEXIS 116849 (E.D. La. July 25, 2017) ...................................... 28

*Desert Palace, Inc. v. Costa*,
539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)............................................................... 18

*Dyson v. Stuart Petroleum Testers, Inc.*,
308 F.R.D. 510 (W.D. Tex. Aug. 27, 2015) ................................................................................ 29

*Ecoquij-Tzep v. Hawaiian Grill*,
No. 3:16-cv-625-BN, 2017 U.S. Dist. LEXIS 95458 (N.D. Tex. June 21, 2017) ................. 17, 18

*Eggelston v. Sawyer Sportsbar, Inc.*,
No. 4:09-3529, 2010 U.S. Dist. LEXIS 65022 (S.D. Tex. 2010) .................................................. 9

*Escobar v. Ramelli Group, L.L.C.*,
No. 16- 15848, 2017 U.S. Dist. LEXIS 110361 (E.D. La. July 7, 2017) ..................................... 28

*Frazier v. Dall./Fort Worth Int'l Airport Bd.*,
285 F. Supp. 3d 969 (N.D. Tex. 2018) ................................................................................. 27, 30

*Fulton v. Bayou Well Servs. Llc*,
208 F. Supp. 3d 798 (N.D. Tex. 2016). ...................................................................................... 28

*Garner v. G.D. Searle*,
802 F. Supp. 418 (M.D. Ala. 1991) ........................................................................................... 21

*Goss v. Tyler Traditions, Inc.*,
No. 6-18-CV-423-JDK, 2019 U.S. Dist. LEXIS 175693 (E.D. Tex. July 22, 2019) ... 9, 18, 28, 29

*Hoffmann-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989).................................................................................... 16, 17, 26, 27

*Jackson v. Superior Healthplan, Inc.*,
No. 3:15-CV-3125-L, 2016 U.S. Dist. LEXIS 153791 (N.D. Tex. Nov. 7, 2016). .......... 18, 20, 23

*Joaquin v. Hinojosa*,
219 F. Supp. 3d 582 (W.D. Tex. 2016).................................................................... 9, 19, 20, 29

*Jones v. Etech Glob. Servs. LLC*,
No. 3:18-CV-0787-B, 2019 U.S. Dist. LEXIS 98948 (N.D. Tex. June 13, 2019) ...................... 18

*Jones v. JGC Dall. LLC*,
2012 U.S. Dist. LEXIS 185042 (N.D. Tex. 2012)................................................................. 20, 28

*Jones v. SuperMedia Inc.*,
281 F.R.D. 282 (N.D. Tex. 2012) .......................................................................................... 18, 25

*Keeton v. Found. Energy Mgmt.*,
No. 3:18-CV-01876-G, 2020 U.S. Dist. LEXIS 15979 (N.D. Tex. Jan. 30, 2020).......... 18, 20, 23

*Knox v. Jones Group*,
208 F. Supp. 3d 954 (S.D. Ind. 2016) ........................................................................................ 29

*Kucher v. Domino's Pizza, Inc.*,
No. 16-cv-2492 (AJN), 2017 U.S. Dist. LEXIS 213961 (S.D.N.Y. 2017)................................... 28

*Lee v. Metrocare Servs.*,
980 F. Supp. 2d 754 (N.D. Tex. 2013) ........................................................... 17, 25, 27

*Lemmers v. Gary Pools, Inc.*,
SA–15–CA–00828–OLG, 2016 U.S. Dist. LEXIS 181160 (W.D. Tex. May 24, 2016)............. 28

*Levy v. Schlumberger Tech Corp*.,
6:16- CV-00043, 2016 WL 8710032 (W.D. La. Sept. 23, 2016) ................................ 21

*Long v. Wehner Multifamily, LLC,*
CA 3:17-01258-N, Doc. 16, p. 5 (N.D. Tex. Sept. 28, 2017)......................... 21, 23, 27

*Lopez v. Fun Eats and Drinks, LLC dba Champps*,
No. 3:18-cv-01091-L-BN (N.D. Tex. Aug. 3, 2018) .................................... 9

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987)........................................................ 17

*Mahrous v. LKM Enterprises, L.L.C.*,
No. 16-10141, 2017 U.S. Dist. LEXIS 97918 (E.D. La. June 26, 2017)..................... 28

*McKnight v. D. Hous., Inc.*,
756 F. Supp. 2d 794 (S.D. Tex. 2010) ................................................ 20, 24

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir. 1995) ....................................................... 18, 19

*Munoz v. Crazy Fish Inc.*,
No. 3:13-CV-4934-P, 2014 U.S. Dist. LEXIS 181535 (N.D. Tex. June 30, 2014)..................... 19

*Neagley v. Atascosa Cty. EMS*,
No. SA-04-CA-0893-XR, 2005 U.S. Dist. LEXIS 230 (W.D. Tex. Jan. 7, 2005) ................ 21, 25

*Nguyen v. Versacom, LLC,*
No. 3:13-CV-4689-D, 2015 U.S. Dist. LEXIS 39738 (N.D. Tex. Mar. 27, 2015)..... 17, 19, 21, 25

*Nieddu v. Lifetime Fitness, Inc.*,
977 F. Supp. 2d 686 (S.D. Tex. 2013) ............................................... 20

*Page v. Crescent Directional Drilling, L.P.*,
No. 5:15-CV-193-RP, 2015 U.S. Dist. LEXIS 182322 (W.D. Tex. Dec. 10, 2015) ................ 28

*Pedigo v. Austin Rumba, Inc.*,
722 F. Supp. 2d 714 (W.D. Tex. 2010)............................................... 10

*Porter v. Specialty Rescue & Fire Serv., LLC*,
No. 3:18-CV-2584-G, 2019 U.S. Dist. LEXIS 52269 (N.D. Tex. Mar. 27, 2019)..................... 17

*Rousseau v. Frederick's Bistro, Ltd.*,
No. SA-09-CV-651-XR, 2010 U.S. Dist. LEXIS 34271 (W.D. Tex. Apr. 7, 2010) ................... 9

*Rueda v. Tecon Servs.*,
No. H-10-4937, 2011 U.S. Dist. LEXIS 69356 (S.D. Tex. June 28, 2011)........................... 25, 27

*Ryan v. Staff Care, Inc.*,
497 F. Supp. 2d 820 (N.D. Tex. 2007.............................................. 17, 20, 25

*Sandoz v. Cingular Wireless, LLC,*
553 F.3d 913 (5th Cir. 2008) ................................................................... 27

*Shaffer v. Perry's Rests., Ltd.,*
No. SA-16-CA-01193-FB, 2017 U.S. Dist. LEXIS 225876 (W.D. Tex. Aug. 7, 2017) .. 19, 20, 24

*Snively v. Peak Pressure Control, LLC,*
174 F. Supp. 3d 953 (W.D. Tex. Feb. 29, 2016) ........................................ 28

*Tolentino v. C & J Spec-Rent Servs., Inc.,*
716 F.Supp.2d 642 (S.D. Tex. 2010) .................................................. 21, 25

*Vega v. Point Sec., LLC,*
No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105 (W.D. Tex. Sep. 13, 2017) ............ 26, 28

*Wesley v. Experian Info. Sols., Inc.,*
No. 4:18-CV-00005, 2018 U.S. Dist. LEXIS 105469 (E.D. Tex. June 25, 2018) ...................... 20

*White v. Integrated Electronic Technologies, Inc.,*
No. 11–2186, 12–359, 2013 WL 2903070 (W.D. La. June 13, 2013) ......................... 29

*Whitehead v. Hidden Tavern Inc.,*
765 F. Supp. 2d 878 (W.D. Tex. 2011) ...................................................... 10

*Williams v. Sake Hibachi Sushi & Bar, Inc.,*
No. 3:18-CV-0517-D (N.D. Tex. May 22, 2018), ...................................... 9

*Williams v. Sake Hibachi Sushi & Bar, Inc.,*
No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701 (N.D. Tex. June 18, 2020) .................... 10

*Yair Granados v. Hinojosa,*
219 F. Supp. 3d 582 (W.D. Tex. 2016) ...................................................... 18

*Zachary v. Cobalt Mortg., Inc.,*
No. 4:16-CV-00754, 2017 U.S. Dist. LEXIS 41034 (E.D. Tex. Mar. 22, 2017) .................. 18, 19

**Statutes**

15 U.S.C. § 7001(a)(1) ......................................................................... 29

29 U.S.C. § 203(m) .................................................................... 8, 9, 10

29 U.S.C. § 203(t) ............................................................................. 9

29 U.S.C. § 206(a) ............................................................................. 9

29 U.S.C. § 216(b) ....................................................................... 8, 16

29 U.S.C. § 256 .............................................................................. 27

**Regulations**

TEX. BUS. & COM. CODE § 322.007(a), (d) ........................................... 29

## I.     INTRODUCTION

Rian Helgason and Caroline Crawford (collectively, "Plaintiffs") and Opt-in Plaintiffs[1] ("Collective Members"), worked as servers for Perry's Restaurants LTD., d/b/a Perry's Steakhouse and Grille ("Defendant" or "Perry's"), at one or more of Perry's restaurants in Texas.

Plaintiffs and Collective Members were all paid a direct subminimum hourly wage of less than $7.25 per hour and, in violation of the Fair Labor Standards Act ("FLSA"), were illegally (1) required to contribute a portion of their tips to a tip pool that were distributed to non-tipped employees (i.e. non-existent employees); (2) required to perform non-tipped work unrelated to their tipped occupation (i.e., "dual jobs") before, during, and at the end of their shifts at a rate of $2.13 per hour; (3) required to perform non-tipped work that exceeded twenty percent (20%) of their time worked during each workweek at a rate of $2.13 per hour; and (4) required to pay for mandatory uniforms and other business-related items.

Plaintiffs therefore respectfully request this Court to conditionally certify a class of similarly situated servers, direct prompt disclosure by Defendant of putative collective members' contact information, and authorize Plaintiffs' counsel to notify potential collective members of this action and of their rights to join this lawsuit. Specifically, Plaintiffs seeks conditional certification pursuant to 29 U.S.C. § 216(b) of a proposed class defined as:

> **All individuals who work or worked as servers for Defendant in Texas at any time during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour.**

This action challenges the common and company-wide policy of a large company that utilizes hundreds of servers to perform both tipped work and non-tipped job duties at a rate of

---

[1] In addition to the Named Plaintiffs, thirteen (13) opt-in plaintiffs have filed their consents to join this action prior to the filing of this Motion for Conditional Certification. *See* [Doc. 2, at 5-6];[Doc. 6-1, at 1]; [Doc. 6-2, at 1]; [Doc. 6-3, at 1]; [Doc. 6-4, at 1]; [Doc. 8-1, at 1]; [Doc. 8-2, at 1]; [Doc. 8-3, at 1]; [Doc. 9, at 3]; [Doc 10, at 3-4]; [Doc. 14-1].

$2.13 per hour throughout its restaurant locations in Texas. Defendant's practice of paying its servers $2.13 per hour the time its servers spent performing non-tipped work is a violation of the FLSA's minimum wage provisions.

In addition, it is Defendant's common policy and practice to compensate all of its servers pursuant to the tip credit—by paying all of its servers a direct cash wage (prior to accounting for tips) that is less than the federal minimum wage of $7.25 per hour. Instead of paying its servers a direct wage of at least $7.25 per hour, Defendant relies on tips generated from customers to supplement Plaintiffs and Collective Members' subminimum hourly rate to bring their effective rate of pay up to the required minimum wage of $7.25 per hour. However, Defendant cannot utilize tips to supplement the subminimum wages of its servers because Defendant has violated the FLSA's tip credit by unlawfully requiring its servers to participate in tip pool of which a portion of the pooled tips were improperly distributed to non-tipped employees (e.g. non-existent employees who were not scheduled to work and did not work) and were retained by Defendant. In addition, Defendant has violated the FLSA tip credit because it requires its servers to purchase mandatory uniforms and other business-related items, such as ink pens and check presenters. As a result, Defendant is barred from utilizing the tip credit under 29 U.S.C. § 203(m), to supplement its servers' wages with customer tips. Therefore, Plaintiffs and Collective Members are owed wages for their unpaid minimum hourly wage and their misappropriated tips resulting from the forced sharing of tips with non-tipped employees and unlawful deductions.

Under 29 U.S.C. § 216(b), this Court is authorized and empowered to conditionally certify a class of workers who are "similarly situated" to the Named Plaintiffs. Similar cases involving tipped employees who are subject to unlawful deductions and other common violations of the tip

credit (e.g. tip pooling violations and performing nontipped work at subminimum wage rate) are routinely conditionally certified.[2]

Accordingly, conditional certification is appropriate because the putative class of servers that Plaintiffs seek to represent performed the same or similar job duties and were all subject to the same widespread company policies (regardless of any alleged individualized factors or defenses Defendant's may attempt to raise)—paid pursuant to the tip credit (i.e. $2.13 per hour, plus tips) and required to participate in a tip pool. As set forth below, Plaintiffs have met the "lenient" burden for conditional certification at this stage–the notice stage.

## II.    LEGAL BASIS

The FLSA requires employers to pay its employees a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a). However, tipped employees[3] may be paid $2.13 per hour so long as their tips are sufficient to make up the difference of up to $5.12 per hour (i.e. difference between the subminimum hourly rate and the required minimum wage of $7.25 per hour). *See* 29 U.S.C. § 203(m). Employers may also require tipped employees to participate in a valid tip pool by pooling their tips with their co-workers, but employers cannot require tipped employees to pool their tips or distribute their tips with owners, employers, supervisors, management, or

---

[2] *See, e.g.*, Order Granting Pl.'s Mot. for Conditional Cert., *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D (N.D. Tex. May 22, 2018), ECF No. 14. (granting conditional certification in a case involving tipped employees – servers and bartenders) (Fitzwater, J.)); Order Granting Pl.'s Mot. for Conditional Cert., *Lopez v. Fun Eats and Drinks, LLC dba Champps*, No. 3:18-cv-01091-L-BN (N.D. Tex. Aug. 3, 2018), ECF No. 16. (granting conditional certification in a case involving tipped employees—servers and bartenders) (Horan, M.J.)); *Goss v. Tyler Traditions, Inc.*, No. 6:18-CV-423-JDK, 2019 U.S. Dist. LEXIS 175693, at *17 (E.D. Tex. July 22, 2019) (granting conditional certification in a case involving a class of servers and subclass of catering servers); *Rousseau v. Frederick's Bistro, Ltd.*, Civil Action No. SA-09-CV-651-XR, 2010 U.S. Dist. LEXIS 34271, at **2-3, 10 (W.D. Tex. Apr. 7, 2010) (conditionally certifying a class of servers who were paid $2.13 per hour and required to participate in a tip pool); *Bernal v. Vankar Enters.*, Civil Action No. SA-07-CA-695-XR, 2008 U.S. Dist. LEXIS 22814, at *1-3 (W.D. Tex. Mar. 24, 2008) (conditionally certifying a class of bartenders who participated in a mandatory tip pool of which a part of the collected tips were distributed to managers and cleaning crew); *Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 584 (W.D. Tex. 2016) (conditionally certifying a class of bartenders who were paid less than $7.25 and forced to share tips with bar backs); *Eggelston v. Sawyer Sportsbar, Inc.*, No. 4:09-3529, 2010 U.S. Dist. LEXIS 65022, at *10-11 (S.D. Tex. 2010) (conditionally certifying a class of bartenders required to share tips with non-tipped employees).

[3] A "tipped employee" is defined as an "employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

other non-tipped employees who do not customarily and regularly receive more than $30 per month in tips. *Id.*; 29 C.F.R. §531.56. If an employer violates the FLSA's specific rules and requirements with regards to tipped employees, the tip credit provision, or tip pooling, the employer loses its right to avail itself of the tip credit. 29 U.S.C. §203(m).

An employer's use of the tip credit under section 203(m) is an affirmative defense to the payment of the required minimum wage, therefore the employer has the burden to establish that it is entitled to rely on the tip credit to supplement its' tipped employees' hourly wages. *See Williams v. Sake Hibachi Sushi & Bar, Inc.*, Civil Action No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701, at *8 (N.D. Tex. June 18, 2020) ("employer 'has the burden of establishing its entitlement to the tip credit.'").[4]

### III.    FACTUAL BACKGROUND

Perry's owns and operates a chain of restaurants with several locations in Texas,[5] commonly known as Perry's Steakhouse and Grille or Perry's. *See also* (Helgason Decl.) at App.001 ¶¶ 2-3 *attached as* Exhibit A; (Crawford Decl.) at App.006 ¶¶ 2-3 *attached as* Exhibit B; (Sharif Decl.) at App.011 ¶¶ 2-3 *attached as* Exhibit C; (Sebikali Decl.) at App.016 ¶¶ 2-3 *attached as* Exhibit D; (Phylisha Decl.) at App.020-021 ¶¶ 2-3 *attached as* Exhibit E; (Evelyn Decl.) at App.025-026 ¶¶ 2-3 *attached as* Exhibit F. Perry's employs and employed Plaintiffs and Collective Members as servers at one or more of its restaurants in Texas, within the three (3) years prior to

---

[4] *See also Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010)("Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits.") (quoting *Bernal.*, 579 F.Supp.2d 804, 808)); *see also Whitehead v. Hidden Tavern Inc.*, 765 F. Supp. 2d 878, 881-82 (W.D. Tex. 2011) (burden of proof for the tip credit is on the employer not the plaintiffs).

[5] *See* Defendant's Website, https://perryssteakhouse.com/locations/ (last accessed on August 19, 2020) (identifying and listing its restaurant locations in Texas—Grapevine, Texas; Frisco, Texas; Dallas, Texas (including Uptown location); Austin, Texas (including, Domain Northside and Downtown locations); San Antonio, Texas; and Houston, Texas (including, Baybrook, Champions, Katy, Memorial City, River Oaks, Sugar Land, and The Woodlands locations).

the filing of this lawsuit.[6] Perry's also employs many other servers throughout its restaurant locations in Grapevine, Texas; Frisco, Texas; Dallas, Texas (including, the Uptown location); Austin, Texas (including, the Domain Northside and Downtown locations); San Antonio, Texas; and Houston, Texas (including, the Baybrook, Champions, Katy, Memorial City, River Oaks, Sugar Land, and The Woodlands locations) all of whom maintain identical job titles, job positions, and are required to perform the same or similar job duties.[7] Perry's online job positions for its servers position are identical across each of its locations in Texas.[8]

### A. Perry's utilizes the "tip credit" to supplement its servers' subminimum hourly rate and has a mandatory tip pool.

Perry's availed itself of the "tip credit" for Plaintiffs, Collective Members, and all of its servers. *See Def's Answer*, [Doc. 11, at 5 ¶ 31] (admitting "it utilized the statutorily provided so-called 'tip credit' pursuant to the provisions of the Fair Labor Standards Act"). Specifically, Perry's paid Plaintiffs, Collective Members, and all its other servers a direct hourly wage of $2.13 per hour, plus tips at all relevant times.[9] Perry's then relied on and used tips left by customers to

---

[6] *See* Ex. A, at App.001 ¶ 2 (named plaintiff, Helgason, employed from November 2017 to March 2020 and worked as a server at two (2) of Perry's locations—the "Uptown" location in Dallas, Texas and the "Grapevine" location in Grapevine, Texas); Ex. B, at App.006 ¶ 2) (named plaintiff, Crawford, employed from September 2017 to March 2020 and worked as a server at Perry's "Grapevine" and "Frisco" locations in Texas); Ex. C, at App.011 ¶ 2 (opt-in plaintiff, Sharif, employed from January 2018 to May 2020 and worked as a server at Perry's "Grapevine" location in Texas); Ex. D, at App.016 ¶ 2 (opt-in plaintiff, Sebikali, employed from June 2019 to present and works as a server at Perry's "Frisco" location in Texas); Ex. E, at App.020 ¶ 2 (opt-in plaintiff, Phylisha, employed from August 2017 to June 2019 and worked as a server at Perry's "Uptown" and "Grapevine" locations in Texas); Ex. F, at App.025 ¶ 2 (opt-in plaintiff, Evelyn, employed from October 2017 to May 2020 and worked as a server at four (4) of Perry's Texas locations—"Uptown" location in Dallas, Texas, "Grapevine" location in Grapevine, Texas, "Doman Northside" location and "Downtown Austin" location in Austin, Texas).

[7] *See Id.*; (Perry's Server Job Postings, Part I) at App.037-057 *attached as* Exhibit H (Perry's job positions for servers reflecting identical job duties and responsibilities for its locations in San Antonio and Houston, Texas); (Perry's Server Job Postings, Part II) at App.058-072 *attached as* Exhibit I (Perry's job positions for servers reflecting identical job duties and responsibilities for its locations in Grapevine, Frisco, Dallas, and Austin, Texas); *see also Opt-in Consents*, [Doc. 2, at 5-6];[Doc. 6-1, at 1]; [Doc. 6-2, at 1]; [Doc. 6-3, at 1]; [Doc. 6-4, at 1]; [Doc. 8-1, at 1]; [Doc. 8-2, at 1]; [Doc. 8-3, at 1]; [Doc. 9, at 3]; [Doc 10, at 3]; [Doc. 10, at 4]; [Doc. 14-1].

[8] *See* Ex. H, at App.037-057 (Perry's job positions for servers reflecting identical job duties and responsibilities for its locations in San Antonio, Texas and Houston, Texas); Ex. I, at App.058-072 (Perry's job positions for servers reflecting identical job duties and responsibilities for its locations in Grapevine, Frisco, Dallas, and Austin, Texas).

[9] *See* Ex. A, at App.001-002 ¶¶ 2-3 (paid a direct hourly wage of $2.13, plus tips); Ex. B, at App.006-007 ¶¶ 2, 4 (paid a direct hourly wage of $2.13 per hour, plus tips); Ex. C, at App.011-0012 ¶¶ 2-3 (paid $2.13 per hour, plus tips); Ex. D, at App.016 ¶2 (paid $2.13 per hour, plus tips); Ex. E, at App.020-021 ¶¶ 2-3 (paid $2.13 per hour, plus tips);

supplement its servers' subminimum hourly rate and bring their effective rate of pay up to the required minimum wage of $7.25 per hour.[10]

Perry's also required its servers, including Plaintiffs and Collective Members, to participate in a mandatory tip pooling arrangement whereby they contributed a fixed percentage (i.e. 4.5%) of their total food and alcohol sales from their tips into a tip pool to be shared with other employees.[11]

### B. Perry's required Plaintiffs and Collective Members to share a portion of their tips with non-tipped employees.

Only a *portion* of Plaintiffs and Collective Members' tips that they were required to contribute to the mandatory tip pool were distributed to other employees.[12] Defendant required its servers to contribute a proportion of their tips to the tip pool of which a portion were allegedly distributed to non-existent bussers and food runners, (i.e. regardless of whether the "bussers" and "food runners" were scheduled to work or actually worked).[13]

Defendant also retained a portion of Plaintiffs and Collective Members' tips.[14] Even though a portion of the tips that Plaintiffs, Collective Members, and other servers contributed to the tip pool, were purportedly earmarked for the bussers, the bussers did not receive all of the tips purportedly earmarked for the bussers.[15] Instead, Defendant paid its bussers a flat hourly wage, regardless of the amount of tips contributed into the tip pool and did not redistribute all the tips.[16]

---

Ex. D, at App.025-026 ¶3 (". . .paid in the same manner—pursuant to the tip credit (i.e. $2.13 per hour, plus tips—as myself, Crawford, Helgason, and Opt-in Plaintiffs."); *see also* (Paycheck Stubs) at App.030-036 *attached as* Exhibit G (reflecting Plaintiffs and Collective Members' direct hourly wage of $2.13 per hour).

[10] *See Id.*

[11] *See* Ex. A, at App.003-004 ¶ 10-11; Ex. B, at App.008 ¶ 11; Ex. C, at App.013 ¶ 10; Ex. D, at App.018 ¶ 10; Ex. E, at App.022-023 ¶¶ 11; Ex. F, at App.028 ¶ 11-12.

[12] *See Id.*

[13] *See Id.*

[14] *See* Ex. A, at App.004 ¶ 12; Ex. B, at App.009 ¶ 12; Ex. C, at App.013-014 ¶ 11; Ex. D, at App.018 ¶ 11; Ex. E, at App.023 ¶ 12; Ex. F, at App.028 ¶ 13.

[15] *See Id.*

[16] *See Id.*

### C.    Perry's deductions from its servers' wages for mandatory uniforms and other business-related items constitutes a minimum wage violation and destroys Perry's ability to take a tip credit.

Perry's required its servers, including Plaintiffs and Collective Members, to purchase specific mandatory uniforms, such as, shirts, aprons, and vests.[17] Perry's also required its servers, including Plaintiffs and Collective Members, to purchase business-related items, such as ink pens, permanent markers, server books, wine openers, pepper mills and holsters, and crumb scrapers (i.e. tool used to scrape and scoop bread crumbs off dining tables).[18] Although Perry's required its servers, including Plaintiffs and Collective Members to purchase mandatory uniforms and other business-related items, Perry's did not pay for or bear the expense associated with purchasing the mandatory uniforms and other business-related items.[19] Instead, Perry's servers, including Plaintiffs and Collective Members, paid for the mandatory uniforms and business-related items out-of-pocket or Perry's deducted for the cost of these items from their wages.[20]

### D.    Plaintiffs and Collective Members performed the same or similar job duties, including non-tipped job duties at a rate of $2.13 per hour.

Perry's servers, including Plaintiffs and Collective Members, waited on customers, took food and beverage orders, answered questions about the menu, delivered food and beverages, presented the customers with their bill and completed payment, removed dinnerware from tables, and performed other tasks as necessary to serve Perry's customers and as directed by Perry's.[21]

However, servers—including Plaintiffs and Collective Members—were also required to perform a number of non-tipped duties, both, *related* and *unrelated* to their tipped occupation as servers, including busser duties (i.e. resetting chairs and tables and cleaning tables); food runner

---

[17] *See* Ex. A, at App.004 ¶ 13; Ex. B, at App.009 ¶ 13; Ex. C, at App.014 ¶ 12; Ex. D, at App.018 ¶ 9; Ex. E, at App.023 ¶ 13; Ex. F, at App.028 ¶ 14.
[18] *See Id.*
[19] *See Id.*
[20] *See Id.*
[21] *See* Ex. A, at App.002 ¶ 4; Ex. B, at App.007 ¶ 5; Ex. C, at App.012 ¶ 4; Ex. D, at App.017 ¶ 4; Ex. E, at App.021 ¶ 4; Ex. F, at App.026 ¶4.

duties (i.e. cleaning different areas of the restaurant and running food); dishwasher duties (i.e. polishing glassware and silverware and cleaning steak trays); and food expeditor duties (i.e. preparing bread for the oven and whipping butter to pipe into ramekins) at rate of $2.13 per hour.[22] Servers, including Plaintiffs and Collective Members, were also required to perform non-tipped work *related* to their serving job (i.e. "side-work") before, during, and after their work shift at a rate of $2.13 per hour.[23] However, servers, including Plaintiffs and Collective Members spent more than 20% of their shift time during each workweek performing *related* non-tipped job duties (i.e. side-work).[24]

At the beginning and ending of each shift, servers, including Plaintiffs and Collective Members, also performed and completed a set number of non-tipped job duties listed on the "opening checklist" and "closing checklist."[25] During the opening shift, Perry's required its servers, including Plaintiffs and Collective Members, to perform and complete all "opening checklist" items before their first table could be seated.[26] This included, organizing chairs, aligning stools around the bar, placing candles on tables, cleaning and arranging books (i.e. bar menus), aligning and leveling tables, setting up patio tables with books and center pieces, setting up ice buckets, wiping down barstool legs, completing pork chop folds, setting up and filling tea and water pitchers, dusting the piano, dusting TV's, dusting ledges, verifying all plates and glassware

---

[22] *See* Ex. A, at App.002 ¶ 5; Ex. B, at App.007 ¶ 6; Ex. C, at App.012 ¶ 5; Ex. D, at App.017 ¶ 5; Ex. E, at App.021 ¶ 5; Ex. F, at App.026 ¶ 5.

[23] *See* Ex. A, at App.002 ¶ 6; Ex. B, at App.007 ¶ 7; Ex. C, at App.012 ¶ 6; Ex. D, at App.017 ¶ 5-6; Ex. E, at App.021 ¶ 6; Ex. F, at App.026 ¶ 6.

[24] *See* Id.

[25] *See* Ex. A, at App.002-003 ¶¶ 7-8; Ex. B, at App.007-008 ¶¶ 8-9; Ex. C, at App.012-013 ¶¶ 7-8; Ex. D, at App.017-018 ¶¶ 6-7; Ex. E, at App.021-022 ¶¶ 7-9; Ex. F, at App.027 ¶¶ 7-9.

[26] *See* Ex. A, at App.002-003 ¶ 7; Ex. B, at App.007-008 ¶ 8; Ex. C, at App.012-013 ¶ 7; Ex. D, at App.017 ¶ 6; Ex. E, at App.022 ¶ 8; Ex. F, at App.027 ¶ 8.

were polished and stocked, checking the linens on tables for proper placement, and any other non-tipped duties as directed and required by Perry's.[27]

During the closing shift, Perry's required its servers, including Plaintiffs and Collective Members, to perform and complete all items on the "closing checklist," such as polishing and restocking burgundy, white wine, and champagne stems, cleaning and restocking water coolers, polishing and restocking glasses, stocking and polishing dessert spoons, serving spoons, and tea spoons, stocking and polishing steak knives and dinner forks, pumping ports (i.e. pumping air out of wine towers), restocking the to-go station, filling and wiping salt and pepper shakers, stocking and polishing plates, completing daily clean up duties, cleaning and polishing ice buckets, polishing and restocking magnum decanters, snifters, white wine stems, carafes, highballs, and rocks glasses in the wine bar, removing candles from tables, wiping down booths, ensuring that patio is broken down and cleaned, and any other closing job duties as directed and required by Perry's.[28]

At the end of each work shift, Perry's servers, including Plaintiffs and Collective Members, were also required to complete all tasks (i.e. non-tipped job duties) on the "item count checklist."[29] This included, cleaning and filling a total of 12 sugar caddies and 12 sets of salt and pepper shakers; cleaning and polishing a total of 12 steak knife plates, 4 fork and butter knife plates; 2 plates (approximately 15-30) of spoons (serving, tea, dessert), 6 stacks (approximately 25-30) of bread and butter plates and 5 stacks (approximately 25-30) of appetizer plates; polishing and rolling a total of 230 rolls of silverware (50 extra – for a total of 280 rolls of silverware on Sunday, Monday,

---

[27] *See* Id.
[28] *See* Ex. A, at App.003 ¶ 8; Ex. B, at App.008 ¶ 9; Ex. C, at App.013 ¶ 8; Ex. D, at App.017-018 ¶ 7; Ex. E, at App.022 ¶ 9; Ex. F, at App.027 ¶ 9.
[29] *See* Ex. A, at App.003 ¶ 9; Ex. B, at App.008 ¶ 10; Ex. C, at App.013 ¶ 9; Ex. D, at App.018 ¶ 8; Ex. E, at App.022 ¶ 10; Ex. F, at App.027 ¶ 10.

Tuesday, and Wednesday); and cleaning, polishing, and placing 10 rock glasses in fridge and 3 snifters, 20 white wine stems, 3 decanters and 30 carafes in the wine tower.[30]

However, Perry's only paid its servers, including, Plaintiffs and Collective Members, a subminimum hourly rate of $2.13 per hour wage for all hours worked, regardless of the type of job duties performed and the amount of time spent performing non-tipped job duties.[31] Therefore, Plaintiffs and Collective Members were paid less than $7.25 an hour to perform non-tipped work, both related and unrelated, to their work as servers.[32]

## IV.   REQUEST FOR CONDITIONAL CERTIFICATION

Plaintiffs and Class Members respectfully request this Court to conditionally certify this action and permit notice to:

> **All individuals who work or worked as servers for Defendant in Texas at any time during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour.**

### A.  Collective actions are favored and district courts are authorized to issue notice.

An employee may bring an action on behalf of all "other similarly situated employees" under the FLSA. 29 U.S.C. § 216(b). Collective actions under section 216(b) are favored because they enable the "efficient resolution in one proceeding of common issues of law and fact," and provide plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). And, the "[c]ourt[s] authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action." *Id.* at 172. Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice

---

[30] *See Id.*
[31] *See* Ex. A, at App.002-003 ¶¶ 5-7; Ex. B, at App.007-008 ¶¶ 6-8; Ex. C, at App.012 ¶¶ 5-7; Ex. D, at App.017 ¶¶ 5-6; Ex. E, at App.021-022 ¶¶ 5-7; Ex. F, at App.026-027 ¶¶ 5-7.
[32] *Id.*

concerning the pendency of the collective action," the FLSA authorizes the Court to manage the collective action, including the power to authorize notice and monitor preparation and distribution of the notice. *Id.* at 169-73. In short, the FLSA empowers and encourages this Court to issue notice to all potential plaintiffs, and it should do so in this case.

### B.    The *Lusardi* two-stage certification process.

Although the Fifth Circuit has not definitively ruled on the issue, majority of Texas District Courts, including Courts in the Northern District, apply the two-stage *Lusardi*[33] analysis to decide whether a case should be conditionally certified. *See Cervantez v. TDT Consulting, LLC*, No. 3:18-cv-2547-S-BN, 2019 U.S. Dist. LEXIS 142907, at *6 (N.D. Tex. July 22, 2019) (". . . follows the *Lusardi* approach as the legal standard for collective action certification.")(collecting sources); *Porter v. Specialty Rescue & Fire Serv., LLC*, No. 3:18-CV-2584-G, 2019 U.S. Dist. LEXIS 52269, at *8 (N.D. Tex. Mar. 27, 2019) (". . .adopt[ing] the two-stage [*Lusardi*] approach for FLSA collective actions.")(citing and quoting *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007) ("Based on the Fifth Circuit precedent in *Mooney* and the history within this district regarding FLSA class certifications, the court adopts the two-stage approach.").[34]

> Under *Lusardi,* the court approaches the "similarly situated" inquiry via a two-step analysis: at the *first stage*—the "notice stage,. . .the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted [in support of conditional certification]—whether [plaintiffs are similarly

---

[33] *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

[34] S*ee also Davis v. Capital One Home Loans, LLC*, No. 3:17-CV-3236-G, 2018 U.S. Dist. LEXIS 130035, at *9 (N.D. Tex. Aug. 2, 2018) ("Because the court still prefers the two-stage approach, and. . .it appears that many Texas district courts continue to utilize it, the court adopts the two-stage approach in this case.")(citation omitted); *Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 515-16 (N.D. Tex. 2014) (adopting the prevailing standard—Lusardi two-stage approach for conditional certification) (collecting sources); *Clemons v. PHB, Inc.*, No. 3:17-CV-0417-B, 2018 U.S. Dist. LEXIS 161630, at *4 (N.D. Tex. Sep. 21, 2018) (". . .district courts in the Northern District of Texas have adopted the two-step approach outlined in *Lusardi*, 118 F.R.D. 351 (D.N.J. 1987), which consists of a notice stage and a decertification stage.")(citing *Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-cv-625-BN, 2017 U.S. Dist. LEXIS 95458, at *6 (N.D. Tex. June 21, 2017)(". . .Court will follow the *Lusardi* approach as the legal standard for collective action certification."); *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 758 (N.D. Tex. 2013) (applying the Lusardi two-stage approach); *Nguyen v. Versacom, LLC*, Civil Action No. 3:13-CV-4689-D, 2015 U.S. Dist. LEXIS 39738, at *4-5 (N.D. Tex. Mar. 27, 2015) (same).

17

situated] and notice of the action should be given to potential class members."[35] Because the court has minimal evidence before it at the notice stage, the court's determination is made using a "fairly lenient standard" requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy, or plan.[36] If it determines that certification is appropriate, it usually conditionally certifies the class," putative plaintiffs are given notice and an opportunity to "opt-in," and the action proceeds as a representative action throughout discovery.[37]

At the *second stage*, the court "reexamines the class after notice, time for opting in, and discovery have taken place."[38] This stage of the *Lusardi* approach, is precipitated by defendant's motion to decertify.[39] At this stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question.[40] If it finds that the class is no longer made up of similarly situated persons, then it may decertify the class.[41]

Because the first stage of conditional certification takes place prior to the completion of

discovery, the standard for notice "is a lenient" one and "typically results in 'conditional

---

[35] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *Davis,* 2018 U.S. Dist. LEXIS 130035, at *8 (citation omitted); *Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *6 (N.D. Tex. July 22, 2019) ("During the notification stage [first stage], the plaintiff moves for conditional certification. . .then [the district court] decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action").

[36] *See Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012); *Davis*, 2018 U.S. Dist. LEXIS 130035, at *8 (citing *Zachary v. Cobalt Mortg., Inc.*, Civil Action No. 4:16-CV-00754, 2017 U.S. Dist. LEXIS 41034, at *5 (E.D. Tex. Mar. 22, 2017); *Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *7 ("Because plaintiffs seeking conditional certification need not identify other hypothetical collective action members, the stage one standard is considered to be 'fairly lenient.'") (citation omitted); *Clemons*, 2018 U.S. Dist. LEXIS 161630, at *5 (citations omitted).

[37] *See Keeton v. Found. Energy Mgmt.*, No. 3:18-CV-01876-G, 2020 U.S. Dist. LEXIS 15979, at *7 (N.D. Tex. Jan. 30, 2020); *Jackson v. Superior Healthplan, Inc.*, Civil Action No. 3:15-CV-3125-L, 2016 U.S. Dist. LEXIS 153791, at *5-6 (N.D. Tex. Nov. 7, 2016).

[38] "After the opt-in period ends, the second step of the *Lusardi* approach usually occurs. In most cases, the second-step determination is precipitated by a motion for decertification by the defendant, usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and may make a factual determination on the similarly- situated question." *Yair Granados v. Hinojosa*, 219 F. Supp. 3d 582 at 584-85 (W.D. Tex. 2016) (Yeakel, J.) (citations and internal quotations omitted). *See also Aguilar v. Complete Landsculpture, Inc.*, Civil Action No. 3:04-CV-0776-D, 2004 U.S. Dist. LEXIS 20265, at *4 (N.D. Tex. Oct. 7, 2004); *Jones v. Etech Glob. Servs. LLC*, No. 3:18-CV-0787-B, 2019 U.S. Dist. LEXIS 98948, at *7 (N.D. Tex. June 13, 2019) ("Courts do not often engage in the second step—the decertification process—until after "discovery is largely complete and the matter is ready for trial.").

[39] *Id.*

[40] *Id.*

[41] *See Ecoquij-Tzep*, 2017 U.S. Dist. LEXIS 95458, at *7-8 (N.D. Tex. June 21, 2017); *Goss*, 2019 U.S. Dist. LEXIS 175693, at *7 (citing *Mooney*, 54 F.3d at 1214).

certification' of a representative class."[42] The court's inquiry at this stage is considerably less rigorous and allegations in the pleadings and affidavits[43] are generally sufficient to support conditional certification.[44] Only at the second stage, at the close of discovery, does the Court make a more rigorous factual determination as to whether the class members are similarly situated.[45]

Furthermore, Defendant will likely raise the same merit-based arguments concerning statute of limitations that Courts in the Fifth Circuit have rejected at the notice stage of conditional certification. *See, e.g.*, *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-01193-FB, 2017 U.S. Dist. LEXIS 225876 (W.D. Tex. Aug. 7, 2017) ("Perry's attempt to litigate the merits of this case at this stage in the proceedings is improper. . . .[and] Perry's argument that Plaintiffs' claims are likely time-barred, opposing Plaintiff's motion for conditional certification is the wrong procedural vehicle for this argument as courts should not evaluate the merits of the plaintiffs' FLSA claims in the context of a conditional certification motion. [Further][,] [stating] [that] [t]he Court will not consider Perry's statute-of-limitations argument at this time.") (citations omitted).[46] And, Defendant will likely raise merit-based arguments regarding specific factual circumstances; however, these arguments have also been rejected at the notice stage. *See, e.g.*, *Shaffer*, at *22-23 ("Perry's merit-based arguments regarding the specific factual circumstances of five of the twenty-three plaintiffs should be addressed in a motion for summary judgment or motion to decertify."

---

[42] *Mooney*, 54 F.3d 1207, 1214 (internal footnotes omitted); *Joaquin*, 219 F. Supp. 3d at 585 ("The decision to conditionally certify a class at the notice stage is lenient.").

[43] At the notice stage, the affidavits submitted to the court need not be in a form admissible at trial. *See Nguyen*, 2015 U.S. Dist. LEXIS 39738, at *6-7(evidence at the notice stage need not be in a form admissible at trial).

[44] *See Mooney*, 54 F.3d at 1213-1214; *see also Davis*, 2018 U.S. Dist. LEXIS 130035, at *8 (citing *Zachary*, 2017 U.S. Dist. LEXIS 41034, at *4-5).

[45] *Id*.

[46] *See also Munoz v. Crazy Fish Inc.*, No. 3:13-CV-4934-P, 2014 U.S. Dist. LEXIS 181535, at *7 n.3 (N.D. Tex. June 30, 2014) (declining to address willful and stating that "[s]ince this is a motion for conditional class certification and not an analysis on the merits, the Court does not yet address the statute of limitations issue.").

And, finding that individualized analysis, as to whether some were or were not subject to improper deductions, does not preclude conditionally certifying a class at the notice stage.).

Accordingly, at the notice stage, arguments or issues regarding individualized analysis and merit-based arguments to Plaintiffs and Collective Members' claims are not considered by the court nor are they proper grounds to defeat conditional certification at the notice stage. *See Id.*; *see also, Keeton*, 2020 U.S. Dist. LEXIS 15979, at *10 (N.D. Tex. Jan. 30, 2020); (stating that "[t]he court does not address the merits at the stage [notice stage] of litigation."); *Jones v. JGC Dall. LLC*, 2012 U.S. Dist. LEXIS 185042, at *14 (N.D. Tex. 2012) (". . .courts do not engage in merit-based analysis at the notice stage of a collective action").[47]

At this time, this case is at the notice stage and, therefore, the only question before this Court is whether Plaintiffs, under the lenient standard at the notice stage, have provided substantial allegations through their pleadings and affidavits to show that Plaintiffs are "similarly situated" to other potential collective members "with respect to their job requirements and compensation provisions." *See Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *6; *Davis*, 2018 U.S. Dist. LEXIS 130035, at *15.[48]

---

[47] *See also Jackson*, 2016 U.S. Dist. LEXIS 153791, at *15; *Joaquin*, 219 F. Supp. 3d 582, 585 ("[a]t this stage, courts generally refuse to consider a defendant's arguments on the merits") (citations omitted); *Arceo v. Orta*, 296 F. Supp. 3d 818, at 824 (N.D. Tex. Nov. 1, 2017) ("conditional certification stage is not 'an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.'"); *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) ("courts do not review the underlying merits of the action in deciding whether to conditionally certify the class"); *Wesley v. Experian Info. Sols., Inc.*, Civil Action No. 4:18-CV-00005, 2018 U.S. Dist. LEXIS 105469, at *8-9 (E.D. Tex. June 25, 2018); *Biller v. RMCN Credit Servs.*, No. 4:16-CV-00043-ALM-CAN, 2017 U.S. Dist. LEXIS 67361, at *13-15 (E.D. Tex. Apr. 3, 2017) ("[W]here courts find a particular need to address" putative class members individually, "Courts generally do so at the second stage…").

[48] *See also Ryan*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007); *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 804 (S.D. Tex. 2010) ("At this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated.") (citations omitted).

**C. Collective Members are entitled to notice based on Plaintiffs' allegations and sworn declarations submitted with this Motion.**

At the notice stage of the *Lusardi* analysis, a plaintiff must provide, through his or her pleadings and sworn statements, and substantial allegations that potential class members were subject to a single decision, policy, or plan that violated the FLSA.[49] A plaintiff does so "via a minimal factual showing" that (1) suggests that aggrieved individuals exist; (2) they are similarly situated to the plaintiff given the claims and defenses asserted; and (3) they want to opt in to the case.[50] The record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations."[51]

**1. A reasonable basis exists crediting Plaintiffs' assertions that other aggrieved similarly situated individuals exists.**

Plaintiffs allege that Defendant failed to comply with the FLSA by compensating its servers, including Plaintiffs and Collective Members, at a subminimum rate of less than $7.25 per hour for all hours spent performing non-tipped job duties and side-work unrelated to their tipped occupation. *See generally Pls Compl.*, [Doc. 1]; *see also* Section III (Factual Background). Plaintiffs further allege that Defendant failed to comply with Section 203(m) of the FLSA by requiring all its servers, including Plaintiffs and Collective Members to participate in mandatory tip pool where a portion of tips were not entirely distributed to other tipped employees (e.g. food runners and bussers) and unlawfully deducting for uniforms and other items. *See Id.*

---

[49] *Nguyen*, at *10 (N.D. Tex. Mar. 27, 2015) ("The question presented is whether plaintiffs have provided substantial *allegations* that potential class members were subject to a single decision, policy, or plan that violated the FLSA."); *Alford v. Freedom Oilfield Services, LLC*, No. 5:16-CV-00331-DAE, 2016 WL 8673858, at *1 (W.D. Tex. Aug. 17, 2016) (Primomo, M.J.), *report and recommendation adopted,* 2016 WL 8673859 (W.D. Tex. Sept. 7, 2016).

[50] *Id.* (internal quotes omitted).

[51] *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Levy v. Schlumberger Tech Corp.*, 6:16- CV-00043, 2016 WL 8710032, at *5 (W.D. La. Sept. 23, 2016) ("Due to the lenient burden imposed on a plaintiff at the notice stage, it is not necessary that Mr. Levy submit more than one declaration in support of his claims."); *Long v. Wehner Multifamily, LLC*, CA 3:17-01258-N, *Order Granting Motion for Conditional Certification*, Doc. 16, p. 5 (N.D. Tex. Sept. 28, 2017) (granting notice based on allegations and declaration of plaintiff only). ); *Neagley v. Atascosa Cty. EMS*, No. SA-04-CA-0893-XR, 2005 U.S. Dist. LEXIS 230, at *9 (W.D. Tex. Jan. 7, 2005).

Plaintiffs' evidence demonstrates that a reasonable basis that other aggrieved individuals exist with whom Plaintiffs are similarly situated with in terms of job duties and compensation. Here, Plaintiffs' allegations in their Complaint, [Doc. 1], are substantiated by their own declarations, Ex. A, at App.001-005; Ex. B, at App.006-010, and the declarations of their fellow servers and Opt-in Plaintiffs, Ex. C, at App.011-015; Ex. D, at App.016-019; Ex. E, at App.020-024; Ex. F, at App.025-029, paycheck stubs reflecting plaintiffs and collective members subminimum hourly rate of $2.13 per hour, Ex. G, at App.030-036, and Defendant's job positing for servers with identical job titles, job description, and duties, Ex. I at App.037-057; Ex. J at App.058-072. Furthermore, the declarations of the Plaintiffs, the declarations of the Collective Members (i.e. fellow servers and opt-in plaintiffs), and the additional evidence submitted demonstrates, Plaintiffs and Collective Members have worked for, or currently work for, Defendant as servers; they were paid pursuant to the tip credit (i.e. $2.13 per hour, plus tips); all subjected to uniformly enforced policies, including contributing tips to a mandatory tip pool, unlawful deductions for mandatory uniforms and other business-related items, paid a subminimum wage of less than $7.25 per hour regardless of the work performed, *see* Section III (Factual Background); and, as a result, they did not receive minimum wage as required by the FLSA.

### 2.  Plaintiffs and Collective Members are similarly situated with respect to job duties and Defendant's pay policies and practices.

In addition to Plaintiffs' allegations in their Complaint, [Doc. 1], Plaintiffs have submitted their own declarations,[52] the declarations of fellow servers and Opt-in Plaintiffs, Sara Sharif, Dimitri Sebikali, Phylisha Martinez, and Eveyln Castaneda Martinez,[53] and additional

---

[52] *See* Ex. A, at App.001-005; Ex. B, at App.006-010.
[53] *See* Ex. C, at App.011-015; Ex. D, at App.016-019; Ex. E, at App.020-024; Ex. F, at App.025-029.

documentary evidence.[54] Plaintiffs also submitted evidence that Defendant paid its servers similarly through use of the tip credit and assigned its servers similar non-tipped ("side-work") duties. *See* Section III (Factual Background); *see also* (Perry's Server Job Posting, Part I), Ex. I at App.037-057; (Perry's Server Job Position, Part II), Ex. J at App.058-072.

Plaintiffs' evidence is sufficient to show, for conditional certification at the notice stage, that Plaintiffs and putative collective members "possess similar job requirements and compensations structures," and, therefore, are similarly situated. *See, e.g.*, *Clemons*, U.S. Dist. LEXIS 161630, at *15 (deciding "whether potential class members are similarly situated, the Court need only find that the class members possess similar job requirements and compensation structures, not identical ones"); *Long*, 303 F. Supp. 3d 509, 513 (N.D. Tex. 2017) (stating that the named plaintiff "must only demonstrate that she and the proposed class are similarly situated with respect to their job requirements and with regard to their pay provisions. [The] positions need not be identical, but similar."); *see also Jackson*, 2016 U.S. Dist. LEXIS 153791, at *11 ("The duties of the potential class members need not be identical, only similar.")(citations omitted). Here, the evidence, as discussed above and in Section III (Factual Background), shows that Plaintiffs, Collective Members, and all other servers had the same responsibilities, performed the same or similar job duties, and were subject to the same compensation policies and practices—all paid a subminimum hourly wage of $2.13, pursuant to the tip credit, and required to contribute a fixed percentage of their tips into tip pool—implemented by Perry's on a company-wide basis— throughout all its locations in Texas. *See, e.g.*, *Keeton*, 2020 U.S. Dist. LEXIS 15979, at **13-14.

At this stage the focus is not on whether there has been an actual violation or whether Plaintiffs can meet their burden at the second stage (i.e. liability phase), but whether Plaintiffs and

---

[54] *See* (Paycheck Stubs) Ex. G, at App.030-036; (Perry's Server Job Posting, Part I), Ex. I at App.037-057; (Perry's Server Job Position, Part II), Ex. J at App.058-072.

Collective Members are similarly situated—affected by or subject to a "common policy, plan, pattern, or practice." *See Mcknight*, 756 F. Supp. 2d 794, at 802-803 (citations and internal quotations omitted). Here, Plaintiffs submit job postings from Defendant's website that reveal the similarity of job duties that servers perform across Defendant's Texas restaurant locations— servers are required to perform the same or substantially the same job duties and are (or were) offered the same compensation for their work at Defendant's Texas restaurant locations.[55] Defendant's job postings also make specific reference to the required side-work as described by Plaintiffs and Collective Members in their declarations. *See* Section III. D.

Moreover, each server job posting confirms that all servers, regardless of location, are subject to the same or similar working conditions and expectations.[56] Plaintiffs evidence also shows that Defendant's compensation policy is implemented on a company-wide basis and common to all its servers, including Plaintiffs and Collective Members. S*ee* Section III (Factual Background); *see, e.g.*, *Shaffer*, 2017 U.S. Dist. LEXIS 225876, at *18-19 (finding "prior litigation concerning Perry's Tip-Fee Policy reveals that Perry's likely implemented the policy nationwide. . . ." and, therefore finding certification of a class that includes all of Perry's servers is appropriate) (citations omitted).

As such, the evidence, in Section III; Section IV. C. 1; Section IV. C. 2., shows that all servers, including Plaintiffs and Collective Members were subject to a "common policy, plan, pattern, or practice" throughout Defendant's locations in Texas, and therefore, are sufficient to warrant conditional certification for a class of servers employed by Defendant throughout its locations in the State of Texas. *See Rueda v. Tecon Servs.*, No. H-10-4937, 2011 U.S. Dist. LEXIS

---

[55] *See* Section III (Factual Background); see also (Paycheck Stubs) Ex. G, at App.030-036; (Perry's Server Job Posting, Part I), Ex. I at App.037-057; (Perry's Server Job Position, Part II), Ex. J at App.058-072.

[56] *See* Section III (Factual Background); see also (Paycheck Stubs) Ex. G, at App.030-036; (Perry's Server Job Posting, Part I), Ex. I at App.037-057; (Perry's Server Job Position, Part II), Ex. J at App.058-072.

69356, at *13 (S.D. Tex. June 28, 2011) (stating that conditional certification of on state-wide basis is appropriate when "there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company"); *see also Ryan*, 497 F. Supp. 2d 820, 825 ("When the employers' actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.").

Plaintiffs have put forward sufficient evidence to met their lenient burden for conditional certification as required at the first stage–the notice stage and have shown conditional certification on a state-wide basis is appropriate.

### 3.    Similarly situated potential opt-in plaintiffs exist.

Plaintiffs are neither required by statute or the great weight of recent caselaw to specifically show or provide preliminary evidence that other aggrieved individuals desire to opt-in in order to conditional certify and issue notice. *See Crane v. J & M Communs., Inc.*, Civil Action No. 3:16-CV-2855-L-BH, 2017 U.S. Dist. LEXIS 104566, at *14-15 (N.D. Tex. 2017) (citation omitted) (noting that "other courts have allowed for class certification without either the submission of statements from similarly situated employees, or affidavits from named plaintiffs that provide specific information about other employees")). Although evidence or a showing that other similarly situated plaintiffs exist or desire to opt-in to this lawsuit is not required by the statute or the growing body of caselaw,[57] have met this requirement. In the present case, there are two (2)

---

[57] *See Bewley v. Accel Logistics, Inc.*, Civil Action No. 3:17-CV-0676-S-BK, 2018 U.S. Dist. LEXIS 89124, at *11-12 (N.D. Tex. 2018) ("an FLSA plaintiff is not required to identify and obtain preliminary support from an unspecified number of potential class members in order to provide notice to other potential class members") (citing *Black v. SettlePou, P.C.*, Civil Action No. 3:10-CV-1418-K, 2011 U.S. Dist. LEXIS 15493, at *9 (N.D. Tex. Feb. 14, 2011)("relying on a single affidavit and stating that a contrary rule would seem to be putting the cart before the horse"); *Lee*, 980 F. Supp. 2d 754, 768 (N.D. Tex. 2013)(O'Connor, J.)("numerosity is not a requirement for conditional certification"); *Nguyen*, 2015 U.S. Dist. LEXIS 39738, at *19-20 (N.D. Tex. Mar. 27, 2015); *Jones*, 281 F.R.D. at 291 (Boyle, J.) (citing *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F.Supp.2d 642, 653 (S.D. Tex. 2010); *Neagley*, 2005 U.S. Dist. LEXIS 230, at *9 (W.D. Tex. Jan. 7, 2005); *Contreras v. Land Restoration LLC*, No. 1:16-CV-883-RP, 2017 U.S. Dist. LEXIS 22842, at *17 (W.D. Tex. Feb. 17, 2017)(holding that "Plaintiffs need not specifically show

Named Plaintiffs and thirteen (13) Opt-in Plaintiffs who have filed their consents[58] to join this lawsuit. *See, e.g.*, *Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *22-24 ("holding that the element was met where one other person filed a notice of consent to join the collective action and the plaintiff 'identified other putative members of the class' in his declaration")(citation omitted).[59]

Furthermore, Plaintiffs and Opt-in Plaintiffs have articulated, based on their personal knowledge, that they are aware of other servers who performed similar duties for Defendant, were paid in the same manner, were similarly denied the protections of the FLSA, and would join a collective action to recover their unpaid wages, if provided with notice of this lawsuit. *See* Ex. A, at App.004-005 ¶¶ 14-15; Ex. B, at App.009 ¶¶ 14-15; Ex. C, at App.014 ¶¶ 13-14; Ex. D, at App.019 ¶¶ 12-13; Ex. E, at App.023 ¶¶ 14-15; Ex. F, at App.027-028 ¶¶ 15-16. *See, e.g.*, *Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *22-23 ("[P]laintiff's declaration 'based on his personal knowledge, that he is aware of other solids control technicians who ... would join a collective action to recover their unpaid wages, if provided with notice of this lawsuit,' would satisfy this element.").

## V.    REQUEST FOR NOTICE TO CLASS MEMBERS

Plaintiffs' proposed Notice and Consent forms (*attached as* Exhibit J) to potential opt-ins is "timely, accurate, and informative," as the law requires. *See Hoffmann-La Roche*, 493 U.S. 165, at 172. Notice to potential class members is necessary in making an informed decision about

---

that other aggrieved individuals desire to opt in. Requiring Plaintiffs to identify and obtain preliminary support from potential class members is 'putting the cart before the horse.'") (citation omitted).

[58] *See Opt-in Consents*, [Doc. 2, at 5]; [Doc. 2, at 6]; [Doc. 6-1, at 1]; [Doc. 6-2, at 1]; [Doc. 6-3, at 1]; [Doc. 6-4, at 1]; [Doc. 8-1, at 1]; [Doc. 8-2, at 1]; [Doc. 8-3, at 1]; [Doc. 9, at 3]; [Doc 10, at 3]; [Doc. 10, at 4]; [Doc. 14-1].

[59] *See also Vega v. Point Sec., LLC*, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *10 (W.D. Tex. Sep. 13, 2017) (finding two declarations sufficient for conditional certification at the notice stage) (collecting sources).

joining this action[60] and preserving their claims for unpaid wages by tolling the statute limitations.[61]

Plaintiffs' counsel requests leave to send notice to all individuals who work or worked as servers for Defendant in Texas at any time during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour. *See, e.g.*, *Davis*, 2018 U.S. Dist. LEXIS 130035 at *16 (conditionally certifying a class consisting of "All persons who are, have been, or will be employed by Defendants as 'Mortgage Loan Officers' 'Mortgage Loan Originators,' 'Senior Mortgage Loan Officers,' and other individuals who originated loan products *regardless of job title* within the United States at any time during the last three years."); *Lee*, 980 F. Supp. 2d at 768-69 (conditionally certifying a class "all Service Coordinators who were employed by Metrocare" covering within three (3) years preceding the of plaintiff's complaint.).[62]

Plaintiffs request the Court to order Defendant to produce within ten (10) days of the granting of this Motion, an Excel (.xls) file containing the names, all mailing addresses, all e-mail addresses, all telephone numbers (home, mobile, etc.), restaurant locations each person worked as a server, and beginning and ending dates of employment for all of the putative class members.[63]

---

[60] *See Cervantez*, 2019 U.S. Dist. LEXIS 142907, at *26 (citing *Behnken*, 997 F. Supp. 2d 511, 523 (quoting *Hoffmann-La Roche Inc.*, 493 U.S. 165, at 169))).

[61] An opt-in plaintiff's statute of limitations continues to run until he or she has filed a consent to join the lawsuit, therefore the limitations period is not tolled with respect to the other potential plaintiff's until he or she files a consent with the court opting-in. 29 U.S.C. § 256; *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citation omitted). As a result, each day that goes by before other servers are provided with notice and file a consent to opt-in is one less day for which he or she may recover the wages owed by Defendant.

[62] *See also Rueda*, 2018 U.S. Dist. LEXIS 214020, at *17 (granting conditional certification and defining the class to include hourly workers employed by Defendant over the last three years).

[63] *See Cervantez*, 2019 U.S. Dist. LEXIS 142409, at **22-23, 30 (ordering Defendant "to produce within ten (10) days of the granting of this [m]otion an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs . . ." and stating that "[m]obile phones, too, fall within the scope of what courts have found these to be acceptable forms of notice communication."); *see also Long*, 303 F. Supp. 3d 509, 514 (Defendant ordered to produce a list with the name, last known mailing address, email address, and telephone number within ten (10) days of the date of the court's Order); *Frazier v. Dall./Fort Worth Int'l Airport Bd.*, 285 F. Supp. 3d 969, 975 (N.D. Tex. 2018) (same); *Fulton v. Bayou Well Servs. Llc*, 208 F. Supp. 3d 798,

Telephone numbers will be used only for transmitting text message notice and to verify contact information for Class Members in the event that the initial notice is returned undeliverable. Upon production of the putative class member information, Plaintiffs request leave to send the Notice and Consent forms (*attached as* Exhibit J) by mail, and the proposed notice (*attached as* Exhibit K) via e-mail[64] and text message[65] to all identified class members. Plaintiffs' methods of transmitting notice are appropriate and reasonable, including transmitting notice via e-mail and text message to ensure timely notice is effectuated.[66] Courts have found text messaging to be an

---

803 (N.D. Tex. 2016).

[64] "[E]mail is a traditional and commonly used method to provide notice of class actions." *Lemmers v. Gary Pools, Inc.*, SA–15–CA–00828–OLG, 2016 U.S. Dist. LEXIS 181160, at *7 (W.D. Tex. May 24, 2016); *see also Contrera*s, 2017 U.S. Dist. LEXIS 22842, at *25; *Cervantez*, 2019 U.S. Dist. LEXIS 142409, at *2 (granting "[plaintiff's] request to distribute Notice through mail, email, text message. . ."); *Jones*, 2013 U.S. Dist. LEXIS 8865, at *4 (permitting notice via email); *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, at 962 (W.D. Tex. Feb. 29, 2016) ("sending of notice in FLSA proceedings via email is an appropriate method of distribution."); *Burns v. Chesapeake Energy, Inc.*, SA-15-CV-1016-RP, 2017 U.S. Dist. LEXIS 68726, at *27 (W.D. Tex. Mar. 14, 2017) ("Nor is there a valid reason why the parties should not agree to e-mail notice in the year 2017."); *Page v. Crescent Directional Drilling, L.P.*, No. 5:15-CV-193-RP, 2015 U.S. Dist. LEXIS 182322, at *10-11 (W.D. Tex. Dec. 10, 2015) (noting that "[n]umerous courts have found that notice via email is appropriate in FLSA collective actions" explaining that "[e]mail is not the wave of the future; [it] is the wave of the last decade and a half") (collecting authorities) (quotation marks omitted).

[65] "[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate." *Vega*, 2017 U.S. Dist. LEXIS 148105, at *12. Based on this observation, Judge Austin recommended the district court order plaintiff's counsel to "send a text message to the Class Members with a link to the Notice of Rights and Consent Form." *Id.* at *14-15; *see also Dearmond v. Alliance Energy Servs., L.L.C.*, No. 17-2222, 2017 U.S. Dist. LEXIS 116849, at * 8 (E.D. La. July 25, 2017) (ordering text message notice); *Escobar v. Ramelli Group, L.L.C.*, No. 16-15848, 2017 U.S. Dist. LEXIS 110361, at *8 (E.D. La. July 7, 2017) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period." (citing *Mahrous v. LKM Enterprises, L.L.C.*, No. 16-10141, 2017 U.S. Dist. LEXIS 97918, at *11 (E.D. La. June 26, 2017))); *but see Aguirre v. Tastee Kreme #2, Inc.*, No. H-16-2611, 2017 U.S. Dist. LEXIS 83944, at *23-24 (S.D. Tex. April 13, 2017) (denying requested text notice because it did not provide a full picture of the nature of the lawsuit, the class members' rights, and the seriousness of the communication; and it might therefore be misleading). Here, Plaintiffs' proposed text notice addresses Judge Johnson's concerns by directing class members to a website (www.perryslawsuit.com) which will contain the content from Plaintiffs' Proposed Notice and Consent Form Plaintiffs attached as **Exhibit J**. Although *Aguirre* suggests that text message notice may be potentially misleading, Plaintiffs' proposed text message and hyperlink contained in Plaintiffs' proposed notice and consent form, Exhibit J, addresses the concerns discussed in *Aguirre*.

[66] Courts also permit dissemination of notice via text message in certain cases, such as where "the nature of the employer's business facilitated a high turnover rate among employees," a category of business that includes the restaurant industry. *Kucher v. Domino's Pizza, Inc.*, No. 16-cv-2492 (AJN), 2017 U.S. Dist. LEXIS 213961, at *21-22 (S.D.N.Y. 2017) (citing *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.");*Goss*, 2019 U.S. Dist. LEXIS 175693, at *16-17 ("courts have found there is high employee turnover in the restaurant industry, which counsels in favor of allowing text messages here.")(citations omitted).

appropriate means of notice, especially where there is evidence that text messaging is a form of communication previously used by the employer to communicate with its employees.[67] Here, text message is a form of communication previously used by Defendant in communicating with its employees – potential class members. *See* Ex. A, at App.005 ¶¶ 16-17; Ex. B, at App.009-010 ¶¶ 16-17; Ex. C, at App.014 ¶¶ 15-16; Ex. D, at App.019 ¶¶ 14-15; Ex. E, at App.023-024 ¶¶ 16-17; Ex. F, at App.029 ¶¶ 17-18. Plaintiffs therefore respectfully request this Court to permit notice to be sent via text message with a link to the website where the proposed notice and consent form will be posted. *See Cervantez*, 2019 U.S. Dist. LEXIS 142409, at *34.

Plaintiffs request leave for their counsel to be permitted to maintain a website, which will be limited to the content of the approved Notice and Consent Form. On that website, Plaintiffs' counsel will also post the Notice and Consent Form (*see* Exhibit J) that counsel is requesting the Court to approve for dissemination.[68] Plaintiffs request that the potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms from that website.[69]

Plaintiffs request a sixty (60) day opt-in period from the initial date of transmitting the

---

[67] "Courts have found text-message notification appropriate 'when the employer has previously communicated with the employees via text message or where there is high employee turnover.'" *Goss*, 2019 U.S. Dist. LEXIS 175693, at *16 (citations omitted); *see also Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-1150-FB, 2017 U.S. Dist. LEXIS 218126, at *20 (W.D. Tex. 2017) (citing *Bhumithanarn*, 2015 U.S. Dist. LEXIS 90616, at *12)).

[68] *See, e.g., Black*, 2011 U.S. Dist. LEXIS 15493, at *16 (Kinkeade, J.) (authorizing plaintiff's counsel "to maintain an internet website for the purpose of informing similarly situated persons of their right to opt into this litigation"); *Knox v. Jones Group*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016) (permitting the posting of notice on a public website because "[o]pening a public website improves access to consent forms" and noting that "[a]s with email, communication through websites is common."); s*ee also White v. Integrated Electronic Technologies, Inc.*, Civil Action No. 11–2186, 12–359, 2013 WL 2903070, *8 (W.D. La. June 13, 2013) (permitting electronic signatures on consent forms from a dedicated website); *Beall v. Tyler Techs., Inc.*, Civil Action No. 2:08–CV–422, 2009 WL 1766141, *3-4 (E.D. Tex. June 23, 2009) (permitting plaintiff's counsel to maintain a website for the purpose of posting notice on website of the FLSA collective action).

[69] *See, e.g.*, 15 U.S.C. § 7001(a)(1) "[W]ith respect to any transaction in or affecting interstate or foreign commerce," a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."); TEX. BUS. & COM. CODE § 322.007(a), (d) ("signature may not be denied legal effect or enforceability solely because it is in electronic form" and "[i]f a law requires a signature, an electronic signature satisfies the law); *see also Joaquin*, 219 F. Supp. 3d at 587 (authorizing electronic signatures); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. Aug. 27, 2015) (permitting electronic signatures) (collecting sources).

notice forms via mail, e-mail, and text message.[70] After the passage of thirty (30) days, Plaintiffs'

counsel requests permission to send a reminder notice postcard (*attached as* Exhibit L) by mail

and the proposed notice, (Exhibit K), via e-mail and text message to all putative collective

members after the passage of thirty (30) days.[71]

## VI.   CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs respectfully request this Court to conditionally certify

the class and authorize counsel for the Plaintiffs to send the notices *attached as* Exhibits J through

L via the avenues requested above, to the following class of similarly situated individuals:

> **All individuals who work or worked as servers for Defendant in Texas at any time during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour.**

Plaintiffs additionally respectfully request the Court to award the relief outlined in the

proposed order submitted with this Motion. Finally, Plaintiffs request all such other relief to which

Plaintiffs may be justly entitled.

Respectfully submitted,

By: /s/ Drew N. Herrmann

Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
(817) 479-9229 – telephone
(817) 887-1878 – fax
ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS

---

[70] *See Arceo*, 296 F. Supp. 3d 818, 826 (permitting ninety (90) day opt in period) (citations omitted).
[71] *See, e.g.*, *Contreras*, 2017 U.S. Dist. LEXIS 22842, at *25 (permitting reminder notices); *Frazier*, 285 F. Supp. 3d at 979-80 (same).

<u>CERTIFICATE OF CONFERENCE</u>

I certify that counsel for Defendant, Lionel Schooler, stated that Defendant is opposed to conditional certification.

*/s/ Drew N. Herrmann*
Drew N. Herrmann