**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RIAN HELGASON and CAROLINE CRAWFORD, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>        *Plaintiffs,*<br><br>**v.**<br><br>**PERRY'S RESTAURANTS LTD; PERRY'S LLC; PBS HOLDINGS, INC.; and LEASING ENTERPRISES, LTD, collectively d/b/a Perry's Steakhouse and Grille; and CHRISTOPHER V. PERRY, individually.**<br><br>        *Defendants.* | **No. 3:20-cv-01573-S**<br><br><br><br>Plaintiffs' Motion in Support of Issuing Court-Authorized Notice to Similarly Situated Employees |

---

**PLAINTIFFS' MOTION IN SUPPORT OF ISSUING COURT-AUTHORIZED NOTICE TO SIMILARLY SITUATED EMPLOYEES**

---

Respectfully submitted,


By: _/s/ Drew N. Herrmann_
          Drew N. Herrmann
          Texas Bar No. 24086523
          _drew@herrmannlaw.com_
          Pamela G. Herrmann
          Texas Bar No. 24104030
          _pamela@herrmannlaw.com_
          **HERRMANN LAW, PLLC**
          801 Cherry St., Suite 2365
          Fort Worth, TX 76102
          Phone: 817-479-9229
          Fax: 817-840-5102
          Attorneys for Plaintiffs
          and Collective Members

1

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 7

II.  LEGAL BASES ............................................................................................. 8

III. FACTUAL BACKGROUND ............................................................................. 9

   A.   Plaintiffs and putative class members are all servers who were paid the same
        hourly rate of $2.13 and were all required to participate in a mandatory tip pool
        arrangement. ................................................................................................ 10

   B.   Perry's required its server to pay for uniforms and other business-related items. 11

   C.   Perry's servers are all paid $2.13 per hour to perform the same job duties,
        including non-tipped job duties. ..................................................................... 12

IV.  REQUEST FOR NOTICE OF A COLLECTIVE ACTION ..................................... 15

   A.   The purpose of the new *Swales* standard is not to restrict or limit the size of
        similarly situated plaintiffs who receive notice. .............................................. 16

   B.   The *Swales* Standard for Notice of a Collective Action. .................................... 19

   C.   The evidence shows that Plaintiffs and putative class members are similarly
        situated and therefore, entitled to receive notice under the *Swales* Standard. ....... 20

        1.   Plaintiffs and putative class members are all subject to the same pay rate
             and pay policies that give rise to the allegations in this lawsuit. ................. 21

        2.   Plaintiffs and putative class members have the same job descriptions and
             are all subject to the same policies requiring servers to perform the same
             job duties, including non-tipped job duties (i.e. side work) at a rate of $2.13
             per hour. .............................................................................................. 22

V.   PROPOSED NOTICE TO SIMILARLY SITUATED PUTATIVE CLASS MEMBERS ..................... 23

VI.  CONCLUSION AND PRAYER ....................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

Aguirre v. Tastee Kreme #2, Inc.,
No. H-16-2611, 2017 U.S. Dist. LEXIS 83944 (S.D. Tex. 2017) ............................................. 25

*Alverson v. BL Rest. Operations LLC*,
No. 5-16-CV-00849-OLG-RBF, 2018 U.S. Dist. LEXIS 43797 (W.D. Tex. 2018) .................. 25

*Arceo v. Orta*,
296 F. Supp. 3d 818 (N.D. Tex. 2017) ..................................................................................... 27

*Atkins v. Gen. Motors Corp.*,
701 F.2d 1124 (5th Cir. 1983) .................................................................................................. 24

*Beall v. Tyler Techs., Inc.*,
Civil Action No. 2:08–CV–422, 2009 WL 1766141 (E.D. Tex. June 23, 2009) ....................... 26

*Berger v. Perry's Steakhouse of Ill., LLC*,
No. 14 C 8543, 2018 U.S. Dist. LEXIS 39751 (N.D. Ill. Mar. 12, 2018) ................................. 21

Bhumithanarn v, 22 Noodle Mkt. Corp.,
2015 U.S. Dist. LEXIS 90616 (S.D.N.Y. July 13, 2015) ......................................................... 26

*Black v. SettlePou, P.C.*,
2011 WL 609884 (N.D. Tex. Feb. 14, 2011) ............................................................................ 25

*Butler v. TFS Oilfield Servs., LLC*,
No. SA-16-CV-1150-FB, 2017 U.S. Dist. LEXIS 218126 (W.D. Tex. 2017) ........................... 26

*Cervantez v. TDT Consulting, LLC*,
2019 U.S. Dist. LEXIS 142907 (N.D. Tex. July 22, 2019) ............................................. 24, 25, 26

*Clarke v. Pei Wei Asian Diner, LLC*,
Civil Action No. 3:20-CV-00800-N, 2020 U.S. Dist. LEXIS 227852 (N.D. Tex. 2020) ........... 24

Contreras v. Land Restoration,
2017 U.S. Dist. LEXIS 22842, (W.D. Tex. Feb. 17, 2017) ................................................. 25, 27

*Dyson v. Stuart Petroleum Testers, Inc.*,
308 F.R.D. 510 (W.D. Tex. 2015) ............................................................................................ 27

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................................. 18

*Eltayeb v. Deli Mgmt.*,
2021 U.S. Dist. LEXIS 3484 (E.D. Tex. 2021) ........................................................................ 25

*Escobar v. Ramelli Group, L.L.C.*,
No. 16- 15848, 2017 U.S. Dist. LEXIS 110361 (E.D. La. July 7, 2017) ..................................... 25

*Frazier v. Dall./Fort Worth Int'l Airport Bd.*,
285 F. Supp. 3d 969 (N.D. Tex. 2018) ................................................................ 24, 27

*Fulton v. Bayou Well Servs. Llc*,
208 F. Supp. 3d 798 (N.D. Tex. 2016) ....................................................................... 24

*Gilbreath v. Brookshire Grocery Co.*,
No. 6:17-CV-00618-RWS, 2018 U.S. Dist. LEXIS 159271 (E.D. Tex. 2018) .......................... 25

*Goss v. Tyler Traditions, Inc.*,
*2019 U.S. Dist. LEXIS 175693 (E.D. Tex. July 22, 2019)* .......................................... 26

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165 (1989)................................................................................. passim

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) .................................................................................... 17

*Joaquin v. Hinojosa*,
219 F. Supp. 3d 582 (W.D. Tex. 2016)................................................................ 25, 27

*Knox v. Jones Group*,
208 F. Supp. 3d 954 (S.D. Ind. 2016) ......................................................................... 26

Kucher v. Domino's Pizza, Inc.,
No. 16-cv-2492 (AJN), 2017 U.S. Dist. LEXIS 213961 (S.D.N.Y. 2017).................................. 26

*Lemmers v. Gary Pools, NC.*,
No. SA-15-CA-00828-OLG, 2016 U.S. Dist. LEXIS 181160 (W.D. Tex. 2016)........................ 25

*Long v. Wehner Multifamily, LLC*,
303 F. Supp. 3d 509 (N.D. Tex. 2017) ........................................................................ 24

*Lusardi v. Xerox Corp.*,
99 F.R.D. 89 (D.N.J. 1983)........................................................................................ 16

*Maynor v. Dow Chem. Co.*,
No. G-07-0504, 2008 U.S. Dist. LEXIS 42488 (S.D. Tex. 2008) ................................... 19

*Page v. Crescent Directional Drilling, L.P.*,
No. 5:15-CV-193-RP, 2015 U.S. Dist. LEXIS 182322 (W.D. Tex. 2015) ................................ 25

*Parrish v. Premier Directional Drilling, L.P.*,
SA-16-CA-00417-DAE, 2016 U.S. Dist. LEXIS 186288 (W.D. Tex. 2016)........................... 25

*Pedigo v. Austin Rumba, Inc.*,
722 F. Supp. 2d 714 (W.D. Tex. 2010)........................................................................... 9

*Quintanilla v. A & R Demolitina, Inc.*,
No. Civ. A. H-04-1965, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005) ..................................... 24

*Rendak v. Perry's Steakhouse of Ill., LLC*,
2020 U.S. Dist. LEXIS 182095 (N.D. Ill. Oct. 1, 2020)....................................................... 22, 23

*Roussell v. Brinker Int'l, Inc.*,
441 Fed. Appx. 222 (5th Cir. 2011).................................................................... 9

*Sandoz v. Cingular Wireless, LLC*,
553 F.3d 913 (5th Cir. 2008) ............................................................................ 24

*Shaffer v. Perry's Rests., Ltd.*,
No. SA-16-CA-01193-FB, 2017 U.S. Dist. LEXIS 225876 (W.D. Tex. 2017) .................. 12, 23

*Sperling v. Hoffman-La Roche, Inc.*,
862 F.2d 439 (3d Cir. 1988)............................................................................... 15

*Sperling v. Hoffmann-La Roche, Inc.*,
118 F.R.D. 392 (D.N.J. 1988)....................................................................... 16, 19

*Swales v. KLLM Transp. Servs., L.L.C.*,
No. 19-60847, 2021 U.S. App. LEXIS 827 (5th Cir. 2021) ......................................... 17

*Tillis v. Glob. Fixture Servs.*,
No. 4:19-CV-01059, 2020 U.S. Dist. LEXIS 49447 (S.D. Tex. 2020) ........................ 24, 27

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)......................................................................................... 18

*Vega v. Point Security., LLC*,
No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105 (W.D. Tex. 2017)......................... 25

*White v. Integrated Electronic Technologies, Inc.*,
Civil Action Nos. 11–2186, 12–359, 2013 WL 2903070 (W.D. La. June 13, 2013) ............ 26

*Williams v. Sake Hibachi Sushi & Bar, Inc.*,
Civil No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701 (N.D. Tex. 2020) .................... 9

*Wingo v. Martin Transp., Inc.*,
No. 2:18-cv-00141-JRG, 2018 U.S. Dist. LEXIS 205416,
2020 WL 6334312 (E.D. Tex. 2018) ................................................................... 25

*Woods v. New York Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) ........................................................................... 16

## Statutes

15 U.S.C. § 7001(a)(1)..................................................................................... 27

29 U.S.C. § 203(m) ..................................................................................... 8, 9

29 U.S.C. § 203(t) ............................................................................................ 9

29 U.S.C. § 206(a) ........................................................................................... 9

29 U.S.C. § 256 ............................................................................................. 24

## Other Authorities

93 Cong. Rec. 538, 2182 (1947) ...................................................................... 15

Oral Argument at 15:41, *Swales,*
2021 U.S. App. LEXIS 827 (No. 19 60847),
https://www.ca5.uscourts.gov/OralArgRecordings/19/19-60847_8-11-2020.mp3 ...................... 17

TEX. BUS. & COM. CODE § 322.007(a), (d) ............................................................ 27

**<u>Regulations</u>**

Portal-to-Portal Act of 1947,
Ch. 52, §§ 5(a), 6, 7, 61 Stat. 87-88 ............................................................................ 15

I.   INTRODUCTION

Defendant, Perry's Restaurants LTD., d/b/a Perry's Steakhouse and Grille ("Perry's") owns and operates a chain of restaurants with fourteen (14) locations in Texas commonly known as Perry's Steakhouse or Perry's.[1] Named Plaintiffs, Rian Helgason and Caroline Crawford; and Opt-in Plaintiffs, Dimitri Sebikal, Ian Dobelbower, Spencer Demoss, Anthony Ferracioli, Melina Adashefski, Katelyn Keefe, Sara Sharif, Josh Ramirez, Stephen Hunzelman, John Vilbig, Phylisha Martinez, Ryan Dickman, Evelyn Martinez, Daniel Elizondo, and Ashleigh Scott (collectively, "Plaintiffs") work, or worked, as servers for Perry's at one or more of its restaurant locations in Texas within the (3) years preceding the filing of this lawsuit.[2]

As servers, Plaintiffs were all paid a direct subminimum hourly wage of $2.13 per hour and, in violation of the Fair Labor Standards Act ("FLSA"), were illegally (1) required to contribute tips to a tip pool that was not fully distributed solely among customarily and regularly tipped employees; (2) required to perform non-tipped work unrelated to their tipped occupation (i.e., "dual jobs") before, during, and at the end of their shifts at a rate of $2.13 per hour; (3) required to perform non-tipped work that exceeded twenty percent (20%) of their time worked during each workweek at a rate of $2.13 per hour; and (4) deducted (from their wages) for mandatory uniforms and other-business related items.

---

[1]    *See* Def's Website, https://perryssteakhouse.com/locations/, (last accessed on February 25, 2021) (identifying and listing all of its restaurant locations, including fourteen (14) locations in Texas—Grapevine, Texas; Frisco, Texas; Dallas, Texas; Austin, Texas (Domain Northside and Downtown locations); San Antonio, Texas; and Houston, Texas (Baybrook, Champions, Katy, Memorial City, River Oaks, Sugar Land, and The Woodlands locations).

[2]    *See* Pls' Consents to Join, [Doc. 2 at p. 3] (Helgason, signed consent); [Doc. 2 at p. 4] (Crawford, signed consent); [Doc. 2 at p. 5] (Sebikal, signed consent); [Doc. 2 at p. 6] (Dobelbower, signed consent); [Doc. 6-1 at p. 1] (Demoss, signed consent); [Doc. 6-2 at p. 1] (Ferracioli, signed consent); [Doc. 6-3 at p. 1] (Keefe, signed consent); [Doc. 6-4 at p. 1] (Adashefski, signed consent); [Doc. 8-1 at p. 1] (Sharif, signed consent); [Doc. 8-2 at p. 1] (Ramirez, signed consent); [Doc. 8-3 at p. 1] (Hunzelman, signed consent); [Doc. 9 at p. 1] (Vilbig, signed consent); [Doc. 10 at p. 3] (P. Martinez, signed consent); [Doc. 10 at p. 4] (Dickman, signed consent); [Doc. 14 at p. 3] (E. Martinez, signed consent); [Doc. 28 at p. 2] (Elizondo, signed consent); [Doc. 29 at p. 2] (Scott, signed consent).

This action challenges Perry's company-wide policy that utilizes hundreds of similarly situated servers to perform both tipped work and non-tipped job duties at a rate of $2.13 per hour throughout its locations in Texas. Perry's practice of paying its servers $2.13 per hour for the time they spend performing non-tipped work (at the beginning and ending, but also during each servers' shift) is a violation of the FLSA's minimum wage provisions. Moreover, the same pay structure and pay policies are uniformly applied to Plaintiffs and every other server (i.e. putative class members) employed by Perry's to work at its restaurants in Texas. Perry's pays every one of its servers in Texas the same subminimum hourly wage of $2.13 plus tips—in reliance on the FLSA's tip credit provisions. Then, relying on the FLSA's tip credit provisions, Perry's utilizes the tips its servers receive from customers to supplement the $2.13 hourly rate its pays to its servers and bring their effective rate of pay up to the required minimum wage of $7.25 per hour. However, in violation of the FLSA's tips credit provisions, Perry's all of its server to contribute a fixed percentage of their tips (earned during each shift) to a mandatory tip pool, which in violation of the FLSA, was not fully distributed solely among customarily and regularly tipped employees.

As a result, Perry's is barred from utilizing the tip credit under § 203(m)—an affirmative defense—to supplement the Plaintiffs' and its other servers' $2.13 hourly wages with the tips they received from customers. Plaintiffs and the putative class members, therefore, are all entitled to recover their damages under the FLSA as a result of Perry's uniformly imposed policies that are in violation of the FLSA—including, charging servers for mandatory uniforms, requiring servers to contribute tips to an illegal tip pool, and paying servers the subminimum tipped wage of $2.13 per hour to perform non-tipped duties.

## II.   LEGAL BASES

The FLSA requires an employer to pay its employees a minimum wage of at least $7.25

per hour. 29 U.S.C. § 206(a). However, an employer is permitted to pay "tipped employees"[3] a subminimum hourly rate of $2.13 per hour, so long as the employer satisfies the requirements under § 203(m).[4] "This employer discount is commonly referred to as a 'tip credit.'"[5] "[T]he 'tip credit' exception can only be claimed if the employer shows: (1) the employer informed the employees of the provisions contained in § 203(m); and (2) the tipped employees retain all of their tips."[6] If an employer violates the FLSA's specific requirements regarding to tipped employees, the tip credit provision, or tip pooling, the employer loses its right to avail itself of the tip credit.[7] The tip credit under § 203(m) is an affirmative defense to the payment of minimum wage and the burden is on the employer "to establish[] its entitlement to the tip credit."[8]

## III.   FACTUAL BACKGROUND

Plaintiffs work, or worked, as servers for Perry's at one or more of its restaurant locations in Texas within the (3) years preceding the filing of this lawsuit.[9] Perry's also employs many other servers to work at each of its restaurants in Texas—all of these servers, regardless of location,

---

[3]   A "tipped employee" is defined as an "employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

[4]   *Williams v. Sake Hibachi Sushi & Bar, Inc.*, Civil No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701, at *7 (N.D. Tex. 2020) (citing 29 U.S.C. § 203(m); *Pedigo v. Austin Rumba, Inc*., 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010)).

[5]   *Id.* (citation omitted).

[6]   *Id.* (citing 29 U.S.C. § 203(m)).

[7]   29 U.S.C. §203(m); *see also Williams*, 2020 U.S. Dist. LEXIS 106701, at *8 (stating that "although the statute permits the 'pooling of tips among employees who customarily and regularly receive tips,'[ ]§ 203(m), '[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit.'")(citation omitted).

[8]   *Williams*, 2020 U.S. Dist. LEXIS 106701, at *8 (citing *Roussell v. Brinker Int'l, Inc*., 441 Fed. Appx. 222, 230 (5th Cir. 2011) (per curiam) (holding that a restaurant "had the burden to prove it operated a legal tip pool")).

[9]   *See* Pls' Ex. A (Helgason Decl. at App. 001 ¶ 2)(server and worked at the Dallas, Texas and Grapevine, Texas locations); Pls' Ex. B (Crawford Decl. at App. 006 ¶ 2)(server and worked at the Grapevine, Texas and Frisco, Texas locations); Pls' Ex. C (Sharif Decl. at App. 011 ¶ 2)(server and worked at the Grapevine, Texas location); Pls' Ex. D (Sebikal Decl. at App. 016 ¶ 2) (server and worked at the Frisco, Texas location); Pls' Ex. E (Martinez, P. Decl. at App. 020 ¶ 2)(server and worked at the Dallas, Texas and Grapevine, Texas locations); Pls' Ex. F (Martinez, E. Decl. at App. 025 ¶ 2) (server and worked at the Dallas, Texas, Grapevine, Texas, "Domain Northside" Austin, Texas, and "Downtown" Austin, Texas locations).

maintain identical job titles, job positions, and are required to perform the same job duties.[10] In fact, the online job positions posted for Perry's server position are identical across all fourteen (14) of its locations in Texas.[11]

**A.    Plaintiffs and putative class members are all servers who were paid the same hourly rate of $2.13 and were all required to participate in a mandatory tip pool arrangement.**

As servers, Plaintiffs and putative class members were paid the same subminimum hourly wage of $2.13 plus tips—in reliance on the FLSA's tip credit provisions. *See Def's Answer*, [Doc. 11, at 5 ¶ 31] (admitting "it utilized the statutorily provided so-called 'tip credit' pursuant to the provisions of the Fair Labor Standards Act").[12] Then, Perry's relied on the tips Plaintiffs and the other servers received from customers to supplement the $2.13 hourly rate it paid them in order to bring their effective rate of pay up to the required minimum wage of $7.25 per hour.[13]

Perry's also required its servers to participate in a mandatory tip pooling arrangement. Perry's required every server to contribute a portion—a fixed percentage (i.e. 4.5%) of the food and alcohol sales from the tips each server received from customers during each shift—to the tip pool to be shared with other employees.[14] However, in violation of the FLSA's tip credit provision,

---

[10]    *See* Pls' Ex. A (Helgason Decl. at App. 001-002, 004 ¶¶ 3, 14); Pls' Ex. B (Crawford Decl. at App. 006-007, 009 ¶¶ 3, 4, 14); Pls' Ex. C (Sharif Decl. at App. 011-012, 014 ¶¶ 3, 13); Pls' Ex. D (Sebikal Decl. at App. 016, 019 ¶¶ 3, 12); Pls' Ex. E (Martinez, P. Decl. at App. 020-021, 023 ¶¶ 3, 14); Pls' Ex. F (Martinez, E. Decl. at App. 025-026, 028-029 ¶¶ 3, 15); *see also* Pls' Ex. I (Perry's Server Job Postings at App. 043-086).

[11]    *See* Pls' Ex. I (Perry's Server Job Postings at App. 043-086) (reflecting the same job position and identical job duties for servers throughout Perry's restaurant locations in Texas).

[12]    *See also* Pls' Ex. A (Helgason Decl. at App. 001-002 ¶¶ 2, 3) (paid $2.13 per hour, plus tips); Pls' Ex. B (Crawford Decl. at App. 006-007 ¶¶ 2, 4) (paid $2.13 per hour, plus tips); Pls' Ex. C (Sharif Decl. at App. 011-012 ¶¶ 2, 3) (paid $2.13 per hour, plus tips); Pls' Ex. D (Sebikal Decl. at App. 016 ¶ 2) (paid $2.13 per hour, plus tips); Pls' Ex. E (Martinez, P. Decl. at App. 020-021 ¶¶ 2, 3) (paid $2.13 per hour, plus tips); Pls' Ex. F (Martinez, E. Decl. at App. 025-026 ¶ 3) ("…paid in the same manner—pursuant to the tip credit (i.e. $2.13 per hour, plus tips—as myself, Crawford, Helgason, and Opt-in Plaintiffs."); *see also* Pls' Ex. G (Combined Paystubs at App. 030-037) (paystubs reflecting the same hourly rate of $2.13 per hour); Pls' Ex. J (Server Paystubs at App. 087-091) (same).

[13]    *See Id*.

[14]    *See* Pls' Ex. A (Helgason Decl. at App. 003-004 ¶¶ 10, 11); Pls' Ex. B (Crawford Decl. at App. 008 ¶ 11); Pls' Ex. C (Sharif Decl. at App. 013 ¶ 10); Pls' Ex. D (Sebikal Decl. at App. 018 ¶ 10); Pls' Ex. E (Martinez, P. Decl. at App. 022-023 ¶ 11); Pls' Ex. F (Martinez, E. Decl. at App. 028 ¶¶ 11-12); Pls' Ex. G (Combined Paystubs at App. 030-037)(identifying "Tip Share Paid"); Pls' Ex. J (Server Paystubs at App. 087-091)(identifying "Tip Share Paid").

the tips pooled from Plaintiffs and the other servers during each shift were not fully distributed solely among customarily and regularly tipped employees.[15]

As one example, at the end of each shift, Perry's retains the pooled tips and either retains those tips for itself or distributes the tips to employees who are *not* entitled to share in the pooled tips.[16] Perry's policy required every server to contribute a fixed percentage of their tips to the tip pool at the end of every shift, of which a portion were earmarked for and allegedly distributed to bussers and food runners, even though there was no "busser" or "food runner" working during that particular shift.[17] Therefore, at the end of each shift, Perry's retained a portion of the tip pool, which Perry's did not distribute to other lawful tip pool participants.[18]

**B.    Perry's required its server to pay for uniforms and other business-related items.**

Perry's required its servers, including Plaintiffs to purchase specific mandatory uniforms, such as, shirts, aprons, and vests.[19] Perry's also required all its servers, including Plaintiffs, to purchase business-related items, such as ink pens, permanent markers, server books, wine openers, pepper mills and holsters, and crumb scraper (i.e. tool used to scoop bread crumbs off tables).[20]

Perry's did not pay for or bear the expense associated with the mandatory uniforms or business-related items (identified above). Instead, Perry's its servers' to pay for the mandatory

---

[15]    *See* Pls' Ex. A (Helgason Decl. at App. 004 ¶¶ 11-12); Pls' Ex. B (Crawford Decl. at App. 008 ¶¶ 11-12); Pls' Ex. C (Sharif Decl. at App. 013-014 ¶¶ 10-11);  Pls' Ex. D (Sebikal Decl. at App. 018 ¶¶ 10-11); Pls' Ex. D (Martinez, P. Decl. at App. 022-023 ¶¶ 11-12); Pls' Ex. E (Martinez, E. Decl. at App. 028 ¶¶ 12-13).

[16]    *See Id.*

[17]    *See* Pls' Ex. A (Helgason Decl. at App. 004 ¶ 12); Pls' Ex. B (Crawford Decl. at App. 008 ¶ 12); Pls' Ex. C (Sharif Decl. at App. 014 ¶ 11);  Pls' Ex. D (Sebikal Decl. at App. 018 ¶ 11); Pls' Ex. D (Martinez, P. Decl. at App. 023 ¶ 12); Pls' Ex. E (Martinez, E. Decl. at App. 028 ¶ 13).

[18]    *See* Pls' Ex. A (Helgason Decl. at App. 003-004 ¶¶ 10, 11); Pls' Ex. B (Crawford Decl. at App. 008 ¶¶ 11-12); Pls' Ex. C (Sharif Decl. at App. 013 ¶ 10); Pls' Ex. D (Sebikal Decl. at App. 018 ¶ 10); Pls' Ex. E (Martinez, P. Decl. at App. 022-023 ¶ 11); Pls' Ex. F (Martinez, E. Decl. at App. 028 ¶¶ 11-12).

[19]    *See* Pls' Ex. A (Helgason Decl. at App. 004 ¶ 13); Pls' Ex. B (Crawford Decl. at App. 009 ¶ 13); Pls' Ex. C (Sharif Decl. at App. 014 ¶ 12); Pls' Ex. D (Sebikal Decl. at App. 018 ¶ 9); Pls' Ex. E (Martinez, P. Decl. at App. 023 ¶ 13); Pls' Ex. F (Martinez, E. Decl. at App. 028 ¶ 14).

[20]    *See Id.*

uniforms and business-related items.[21] In fact, from 2003 to 2004, the Department of Labor ("DOL") investigated Perry's uniform deduction policy and determined that Perry's illegally required its servers to pay for mandatory uniforms in violation of the FLSA, and therefore, found Perry's liable for unpaid wages. *See* Pls' Ex. K (DOL Investigation Reports at App. 092-094, 096) (finding minimum wage violations under the FLSA – "MW-uniforms and illegal tip put" at Perry's "Bay Area" and "Woodlands" locations in Houston, Texas; and stating that "[v]iolations are a result of the employer requiring employees to…pay for uniforms.").

Yet, despite the DOL's findings, Perry's continued (and continues) to subject all its servers to unlawful deductions for uniforms in violation of the FLSA. *See* Perry's San Antonio New Hire Checklists, *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-01193-FB (W.D. Tex. 2017), Doc. 39-8; Doc. 39-9 (new hire checklists completed by servers on October 1, 2016 and October 13, 2016— identifying the San Antonio location and "Set 3: Deductions [] Completed Uniform Deduction Sheet");[22] *see also* Pls' Ex. G (Combined Server Paystubs at App. 030-032, 037) (uniform deductions reflected on a 2017, 2019, and 2020 paystub); Pls' Ex. J (Additional Server Paystubs at App. 091)(uniform deductions reflected on a 2019 paystub).

**C.    Perry's servers are all paid $2.13 per hour to perform the same job duties, including non-tipped job duties.**

Perry's required all servers to wait on customers, take food and beverage orders, answer questions about the menu, deliver food and beverages, provide checks and complete payment, remove dinnerware from tables, and perform other tasks as directed by Perry's.[23] In addition,

---

[21]    *See Id. see also*; Pls' Ex. G (Combined Paystubs at App. 030-032, 037) (identifying uniform deductions); Pls' Ex. J (Server Paystubs at App. 091)(identifying uniform deductions) *see also* Pls' Ex. K (DOL Investigation Reports at App. 093, 095-096) ("Violations are a result of the employer requiring employees to…pay for uniforms.").

[22]    The Perry's San Antonio New Hire Checklists, submitted in *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-01193-FB (W.D. Tex. 2017), Doc. 39-8; Doc. 39-9, are *attached as* Exhibit M to plaintiffs' motion for notice. *See* Pls' Ex. M (Perry's New Hire Checklists at App. 105-106).

[23]    *See* Pls' Ex. A (Helgason Decl. at App. 002 ¶ 4); Pls' Ex. B (Crawford Decl. at App. 006-007 ¶ 4); Pls' Ex. C

Perry's required ever server, including Plaintiffs, to perform non-tipped job duties—side work duties including, but not limited to, busser duties (i.e. resetting chairs and tables and cleaning tables); food runner duties (i.e. cleaning different areas of the restaurant and running food); dishwasher duties (i.e. polishing glassware and silverware and cleaning steak trays); and food expeditor duties (i.e. preparing bread for the oven and whipping butter to pipe into ramekins).[24]

Servers, including Plaintiffs spent a large amount of their work time performing various non-tipped side work duties,[25] including non-tipped duties performed at the beginning ("opening side work") or ending ("closing side work") of each server's shift,[26] and continuous side work duties performed during their shift ("running side work").[27]

In fact, Perry's server job duties and checklists ("opening checklist" and "closing checklist") identify the side work duties server are required to perform, *see* Pls' Ex. H at App. 038-042. For example, servers are required to:

- "Disinfect terminals and station with [p]eroxide cleaner; throw away trash[,] organize/restock all water coolers [,]disinfect outside of wine chillers with [p]eroxide cleaner" at the "Server Stations/Terminals"

- "Wipe inside and out of cooler; disinfect handles with [p]eroxide cleaner[,] [d]iscard any product with poor quality-inform Chef"

---

(Sharif Decl. at App. 011 ¶ 4);  Pls' Ex. D (Sebikal Decl. at App. 017 ¶ 4); Pls' Ex. D (Martinez, P. Decl. at App. 021 ¶ 4); Pls' Ex. E ( Martinez, E. Decl. at App. 026 ¶ 4).

24      *See* Pls' Ex. A (Helgason Decl. at App. 002 ¶ 5); Pls' Ex. B (Crawford Decl. at App. 007 ¶ 6); Pls' Ex. C (Sharif Decl. at App. 012 ¶ 5);  Pls' Ex. D (Sebikal Decl. at App. 017 ¶ 5); Pls' Ex. D (Martinez, P. Decl. at App. 021 ¶ 5); Pls' Ex. E (Martinez, E. Decl. at App. 026 ¶ 5); Pls' Ex. H (Server Job Duties and Checklists at App. 038-042).

25      *See* Pls' Ex. A (Helgason Decl. at App. 002 ¶ 6); Pls' Ex. B (Crawford Decl. at App. 007 ¶ 7); Pls' Ex. C (Sharif Decl. at App. 012 ¶ 6);  Pls' Ex. D (Sebikal Decl. at App. 017 ¶ 5-6); Pls' Ex. D (Martinez, P. Decl. at App. 021 ¶ 6); Pls' Ex. E (Martinez, E. Decl. at App. 026 ¶ 6); Pls' Ex. H (Server Job Duties and Checklists at App. 038-042).

26      *See* Pls' Ex. A (Helgason Decl. at App. 002-003 ¶¶ 7-8); Pls' Ex. B (Crawford Decl. at App. 006-007 ¶ 4); Pls' Ex. C (Sharif Decl. at App. 011 ¶ 4);  Pls' Ex. D (Sebikal Decl. at App. 017 ¶ 4); Pls' Ex. D (Martinez, P. Decl. at App. 021 ¶ 4); Pls' Ex. E ( Martinez, E. Decl. at App. 026 ¶ 4).

27      *See* Pls' Ex. I (Perry's Server Job Postings at App. 043-44, 46-47, 49-50, 52-53, 55-56, 58-59, 61-62, 66-67, 69-70, 72-73, 75-76, 78-79, 81-82, 84-85) (job postings for fourteen (14) different locations in Texas all stating that servers are required to "Complete opening, running and closing side work related to job duties: cleaning, stocking, setting and breaking down tables, etc….")

- "Polish and restock all types of wine glasses in Server Stations[,] [c]lean coffee and tea brewers…[,] [c]lean hot towel station[,] [w]rap, label and store garnishes[,] [c]lean & detail cappuccino machine…[,] [c]lean and polish wine buckets…[,] [r]stock to go boxes with stickers, bags and portion cups with lids[,] [r]estock all soap dispensers and hand towel stations[,] [c]lean water coolers…"

*see* Pls' Ex. H (Server Job Duties and Checklists at App. 039) (closing checklist section).[28]

All servers are required to perform side work duties at the beginning or end of their shift, regardless of the area (bar area or main dining area) they were assigned to work during a shift.[29] Like the "Server Shift Checklist," *see* Pls' Ex. H at App. 038-041, Perry's also maintains a "Cocktail Checklist" identifying side work servers are required to complete in the bar area, *see* Pls' Ex. H at App. 042.

Servers, including Plaintiffs, are also required to perform a set number of tasks for each shift including, cleaning and filling a total of 12 sugar caddies and 12 sets of salt and pepper shakers; cleaning and polishing a total of 12 steak knife plates, 4 fork and butter knife plates; 2 plates (approximately 15-30) of spoons (serving, tea, dessert), 6 stacks (approximately 25-30) of bread and butter plates and 5 stacks (approximately 25-30) of appetizer plates; polishing and rolling a total of 230 rolls of silverware (and a total of 280 rolls of silverware on Sunday, Monday, Tuesday, and Wednesday); and cleaning, polishing, and placing 10 rock glasses in fridge and 3 snifters, 20 white wine stems, 3 decanters and 30 carafes in the wine tower.[30]

---

[28]   *See* Pls' Ex. I (Perry's Server Job Postings at App. 043-44, 46-47, 49-50, 52-53, 55-56, 58-59, 61-62, 66-67, 69-70, 72-73, 75-76, 78-79, 81-82, 84-85) (job postings for fourteen (14) different locations in Texas all stating that servers are required to: "Clean section: floors, glassware, plateware, silverware and furniture in server's assigned section.").

[29]   *See* Pls' Ex. H (Server Job Duties and Checklists at App. 042 (Cocktail Checklists- "opening checklist" and closing checklist").

[30]   *See* Pls' Ex. A (Helgason Decl. at App. 003 ¶ 9); Pls' Ex. B (Crawford Decl. at App. 008 ¶ 10); Pls' Ex. C (Sharif Decl. at App. 013 ¶ 9); Pls' Ex. D (Sebikal Decl. at App. 018 ¶ 8); Pls' Ex. D (Martinez, P. Decl. at App. 022 ¶ 10); Pls' Ex. E ( Martinez, E. Decl. at App. 027 ¶ 10).

However, Perry's only paid its servers, including Plaintiffs a subminimum hourly rate of $2.13 per hour wage for all hours worked, including time spent performing tasks when the restaurant was closed or there was no opportunity to earn tips. Servers were always paid the same subminimum hourly wage regardless of the type of job duties performed and the amount of time spent performing non-tipped job duties. [31]

## IV.    REQUEST FOR NOTICE OF A COLLECTIVE ACTION

Prior to 1947, Congress gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA," *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 173 (1989). Then, in 1947, Congress made changes to § 216(b) by adding the "written consent" requirement to join as a party plaintiff, therefore limiting the "right to bring actions...under the FLSA" to employees. *see Id. at* 173. Congress amended § 216(b) in response "to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome..." and to free "employers of the burden of representative actions....by plaintiffs not themselves possessing claims." *see Id.* (citing 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell);[32] Portal-to-Portal Act of 1947, Ch. 52, §§ 5(a), 6, 7, 61 Stat. 87-88))).

Section 216(b) therefore "expressly authorizes employees to bring [a] collective...action '[o]n behalf of...themselves and other employees similarly situated[,]" *Hoffmann-LaRoche*, 493 U.S. at 170, "against any employer" who violates the FLSA in order to recover the damages

---

[31]    *See* Pls' Ex. A (Helgason Decl. at App. 002 ¶¶ 5-6); Pls' Ex. B (Crawford Decl. at App. 007 ¶¶ 6-7); Pls' Ex. C (Sharif Decl. at App. 012-013 ¶¶ 5-7);  Pls' Ex. D (Sebikal Decl. at App. 017 ¶¶ 5-6); Pls' Ex. D (Martinez, P. Decl. at App. 021 ¶¶ 5-6); Pls' Ex. E ( Martinez, E. Decl. at App. 026 ¶¶ 5-6).

[32]    Senator Donnell further stated that "'[Congress] [saw] no objection' in the collective action, *i.e.*, 'a suit by one or more employees for himself and all other employees similarly situated.'" *Sperling v. Hoffman-La Roche, Inc.*, 862 F.2d 439, 446 (3d Cir. 1988), (citing 93 Cong. Rec. 538, 2182). Therefore, in amending 216(b), "Congress left intact the 'similarly situated' language providing for collective actions, such as the one [in *Hoffmann-La Rocuhe v. Sperling*][,]" 493 U.S. 165, 170, and the one in this case—brought by Plaintiffs against Perry's.

prescribed for each specified violation,[33] however, only an employee who consents in writing may join the action as a party-plaintiff, 29 U.S.C. § 216(b).

Moreover, collective actions provide "plaintiffs [with] the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170 (stating that "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity"). However, benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so [] they can make informed decisions about whether to participate." *Id.* Therefore, "[§]216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated  must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or [] provisions of the Federal Rules of Civil Procedure." *Id.*, at 170.

As the district court noted in *Sperling v. Hoffmann-La Roche, Inc.*, "[i]f courts refrain from facilitating notice to missing class members, the enforcement of ADEA remedies for violations which victimize a group of people will be limited only to those victims who are already known to their 'champion,' (citing *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 581 (7th Cir. 1982)), or who are fortunate enough to hear and heed 'the vagaries of rumor and gossip,' (*Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 93 (D.N.J. 1983)), or who are courageous enough to recognize the wrong done them and sue on their own." 118 F.R.D. 392, 403 (D.N.J. 1988).

A.     **The purpose of the new *Swales* standard is not to restrict or limit the size of similarly situated plaintiffs who receive notice.**

---

[33]     For instance, any employer who violates—

the minimum wage "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages…."  29 U.S.C. § 216(b)

the tip credit "shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer…." *Id.*

Instead, as the Fifth Circuit stated, the court's purpose is to ensure that notice is sent to putative class members who are similarly situated, a determination that should be made at the onset of the collective action. *See Swales v. KLLM Transp. Servs., L.L.C.*, No. 19-60847, 2021 U.S. App. LEXIS 827, at \*19-20 (5th Cir. 2021)(citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019) (stating that "[i]n sum, *Hoffmann-La Roche* does not give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements.")). Therefore, the Fifth Circuit in *Swales* stated that "[j]ust as we held it was improper to ignore evidence of the arbitration agreements in *JPMorgan*, it's improper to ignore evidence of other threshold matters, like whether the plaintiffs are 'employees' such that they can bring an FLSA claim." *Swales*, 2021 U.S. App. LEXIS 827 at \*21; *see also* Oral Argument at 15:41, *Swales,* 2021 U.S. App. LEXIS 827 (No. 19 60847), https://www.ca5.uscourts.gov/OralArgRecordings/19/19-60847_8-11-2020.mp3          ([15:41] "…determining whether a group of people are [15:49] independent contractors or employees is a somewhat [15:54] different situation under the Fair Labor Standards Act [15:58] than determining whether they are donning [16:02] and doffing at the same time or taking sufficient [16:05] lunch breaks or not being allowed to go in the [16:09] shade when its hot and that kind of thing. [16:12] In other words, this is a fundamental divide [16:15] between whether they are covered or not [16:17] at all by the law is it not?" [16:21]) (Jones, J.)).

Unlike *Swales* and *In re JP Morgan*, in this case, the similarly situated determination does not involve "potentially dispositive, threshold matters" that if ignored until after notice is issued, would result in "alerting those who cannot ultimately participate in the collective 'merely stir[ring] up litigation,' [] [] what *Hoffmann-La Roche* flatly proscribes." *In re JPMorgan*, 916 F.3d at 502 (citing *Hoffmann-La Roche*, 493 U.S. at 174). Here, there is no "fundamental divide" between the

servers—in fact, Plaintiffs and proposed class members are all "employees" who are, or were, employed by Perry's as servers, paid $2.13 per hour, contributed tips to a mandatory tip pool, and performed side work while being compensated at the tipped hourly rate of $2.13 per hour, regardless of the type of side work and amount of time spent performing side work. *See* Section III (Factual Background).

Moreover, the focus is not on whether there has been an actual violation or whether Plaintiffs can meet their burden for summary judgment, rather, under *Swales*, the issue is whether Plaintiffs and putative class members are similarly situated—such, that "facilitating notice is [] need[ed] for [the] 'efficient resolution in one proceeding of common issues' of law and fact arising from the same alleged discriminatory activity." *See Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 170, 172-173)). This is further exemplified under Rule 23—a more rigorous standard that does not require the party seeking class certification "to prove the merits of the class claim or even to establish a probability that the action will be successful." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

Even under the more rigorous Rule 23 standard, here, whether defendant's policies— uniform deductions, mandatory tip pool and tip share, and non-tipped job duties at $2.13—violate the tip credit provision under the FLSA are common to all servers such that "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ("[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses

peculiar to some individual class members.").[34]

## B.     The *Swales* Standard for Notice of a Collective Action.

The Fifth Circuit, in rejecting *Lusardi's* two-step certification rubric, "hope[d] to provid[e] a workable, gatekeeping framework for assessing, at the outset of litigation, *before* notice is sent to potential opt-ins, whether putative plaintiffs are similarly situated—not abstractly but actually." *Swales*, 2021 U.S. App. LEXIS 827 at *3 (emphasis in original). Instead of adopting *Lusardi* or another "certification" standard, the Fifth Circuit instead, "embrace[d] interpretive first principles: (1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may 'facilitate[e] notice to potential plaintiffs' for case management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id*. at *4 (holding that "[t]hese are the only binding commands on district courts.")).

Therefore, "a district court should identify, at the onset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at *21. In line with *Hoffman-La Rouche*,[35] the Fifth Circuit in *Swales* provided a "workable" sliding-scale framework to determine, on a case-by-case basis, whether plaintiffs and proposed class members are similarly situated; and notice should be issued—

> "For example, in a donning and doffing case, notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job. So, a district court will not likely need mountains of discovery to decide whether notice is appropriate." *Id.*, at *22.

---

[34]    *See also Maynor v. Dow Chem. Co.,* No. G-07-0504, 2008 U.S. Dist. LEXIS 42488, at *1, 24-26 (S.D. Tex. 2008) ("arguments appear[ed] to relate to the potential damages owed to each class member, not to whether the proposed class members are similarly situated with respect to the employment policy alleged to violate the FLSA[.]").

[35]    *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 405 (D.N.J. 1988) ("A determination as to whether class members are similarly situated is always fact-specific."), *aff'd in part and appeal dismissed in part,* 862 F.2d 439 (3d Cir. 1988), *aff'd Hoffmann-La Rouche, Inc.*, 493 U.S. 165).

"In another case, such as this one [i.e., independent contractor case], where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery to determine whether notice is going out to those 'similarly situated.'" *Id.*

Under *Swales*, notice of a collective action to other potential opt-in plaintiffs may be "justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Id.* at *22. Like the donning and duffing example provided by the Fifth Circuit in *Swales*, here Plaintiffs and opt-in plaintiffs "all have the same job description, and the allegations revolve around the same aspect of that job." *Id.*

As discussed in further detail below, the pleadings and preliminary evidence show sufficient similarity between Plaintiffs and potential opt-in plaintiffs employment situations, with respect to their job requirements, job duties, and rate of pay—all of which give rise to the allegations in this lawsuit—for this Court to find that Plaintiffs and plaintiffs' proposed class of servers are similarly situated, and therefore, are entitled to notice of this collective without the need for more discovery. *See, e.g.*, *Id.* at *22.

**C.    The evidence shows that Plaintiffs and putative class members are similarly situated and therefore, entitled to receive notice under the *Swales* Standard.**

To satisfy their burden for issuing notice under *Swales*, Named Plaintiffs Helgason and Crawford submit their own declarations, the declarations of other servers, and other documentary evidence such as paystubs and server checklists. *See* Section III (Factual Background). Plaintiffs also attach job postings from Perry's own website—all of which show identical job descriptions, job duties, and job responsibilities—for all Perry's servers throughout its fourteen (14) restaurant locations in Texas. *See* Section III (Factual Background). Here, Plaintiffs' declarations and the additional evidence submitted demonstrate that Plaintiffs and putative class members worked for Perry's as servers; they were paid pursuant to the tip credit (i.e., $2.13 per hour, plus tips); all

subjected to uniformly enforced policies, including contributing tips to a mandatory tip pool; all were required to pay for mandatory uniforms and other business-related items; and all were paid the subminimum tipped hourly wage of $2.13 for all hours worked even when performing work when the restaurant was closed or there was no opportunity to earn tips.

1.   **Plaintiffs and putative class members are all subject to the same pay rate and pay policies that give rise to the allegations in this lawsuit.**

The evidence shows that Plaintiffs and putative class members are similarly situated—all are paid an hourly wage of $2.13 per hour plus tips, all are required to contribute to a mandatory tip pool, all are required to perform the same job duties for Perry's including side-work, at a rate of $2.13 per hour, and all are required to pay for mandatory uniforms and other business-related items. *See* Section III (Factual Background). Moreover, Perry's online job postings shows that all servers, regardless of location, are all subject to the same job duties and are all required to perform the same non-tipped side work duties as set forth in Perry's own server job checklists and further described by Plaintiffs in their declarations.  *See* Section III. C. (Factual Background) (discussing job duties). The evidence further shows that Plaintiffs and putative class members are all subject to the same job requirements, job duties, and pay policies; therefore, are all similarly situated for purposes of permitting notice without the need for additional discovery. *See, e.g.*, *Berger v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2018 U.S. Dist. LEXIS 39751, at *11-12 (N.D. Ill. Mar. 12, 2018) (finding declarations from plaintiffs "stating that Defendants required them to perform sidework are sufficient evidence to show a common question of law[;]" and that plaintiffs " ha[d] identified a common question of law, i.e., the legality of Defendants' sidework policy. It will certainly simplify the litigation to certify a class [under Rule 23] for the purpose of answering this question.").

Notably, a similar class of Perry's servers (servers employed at the Illinois Perry's

restaurant location), in the *Rendak v. Perry's Steakhouse of Ill* case,[36] survived defendant's motion

for decertification after the completion of full discovery and the court—under the more rigorous

Rule 23 standard—certified a class of Perry's servers with almost identical side work claims to

those asserted by Plaintiffs in this case.[37]

       **2.**     **Plaintiffs and putative class members have the same job descriptions and are all subject to the same policies requiring servers to perform the same job duties, including non-tipped job duties (i.e. side work) at a rate of $2.13 per hour.**

Plaintiffs and putative class members are subject to the same job description and job duties

that give rise to the allegations in this collective action, and therefore, are all similarly situated.

The job requirements and job duties for all Perry's servers are the same regardless of location. For

example, similar to the evidence Plaintiffs submitted in this case, in the *Rendak v. Perry's*

*Steakhouse of Ill* case, the plaintiffs (servers employed at the Perry's Illinois location) submitted

evidence reflecting the same "opening and closing job duties." *Compare* Perry's Opening and

Closing Side Work Checklists, *Rendak v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2020

U.S. Dist. LEXIS 182095 (N.D. Ill. Oct. 1, 2020), Doc. 313-28, pp. 1-2; Doc. 313-26, p. 5; Doc.

313-29, pp. 1-2,[38] *with* Pls' Ex. H (Server Job Duties and Checklists at App. 038-042) *and* Pls' Ex.

I (Perry's Server Job Postings at App. 043-44, 46-47, 49-50, 52-53, 55-56, 58-59, 61-62, 66-67,

69-70, 72-73, 75-76, 78-79, 81-82, 84-85) (server job postings for Texas locations stating that

servers are required to: "Clean section: floors, glassware, plateware, silverware and furniture in

server's assigned section." Complete opening, running and closing side work related to job duties:

---

[36]    *Berger v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2018 U.S. Dist. LEXIS 39751 (N.D. Ill. Mar. 12, 2018) is the same case presently styled as *Rendak v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095 (N.D. Ill. Oct. 1, 2020).

[37]    *See Rendak v. Perry's Steakhouse of Ill., LLC*, 2020 U.S. Dist. LEXIS 182095, at*18 (N.D. Ill. Oct. 1, 2020).

[38]    The Perry's Opening and Closing Side Work Checklists submitted in, *Rendak v. Perry's Steakhouse of Ill., LLC*, No. 14 C 8543, 2020 U.S. Dist. LEXIS 182095 (N.D. Ill. Oct. 1, 2020), Doc. 313-28, pp. 1-2; Doc. 313-26, p. 5; Doc. 313-29, pp. 1-2, are combined and, for the Court's convenience, are *attached as* Exhibit L to Plaintiffs' motion for notice. *See* Pls' Ex. L (Perry's Server Duties and Checklists at App. 100-104).

cleaning, stocking, setting and breaking down tables, etc…."). *See, e.g.*, *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-01193-FB, 2017 U.S. Dist. LEXIS 225876, at *18 (W.D. Tex. 2017) (finding that "prior litigation concerning Perry's Tip-Fee Policy reveals that Perry's likely implemented the policy nationwide"). Here, Plaintiffs' evidence and prior litigation in *Rendak* concerning the same allegations[39] and side work policies demonstrates a common policy uniformly applied to all servers employed by Perry's.

Moreover, in *Rendak*, even after the completion of full discovery, the court rejected defendant's argument that "individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification[;]" and denied—for a second time—Perry's motion to decertify or preclude certification of the class of server employed by Perry's at its location in Illinois. *Id.*, at *12-13 (finding the evidence, "checklists setting forth the various tasks servers may be asked to perform at opening and closing" and plaintiffs declarations, sufficient to show that plaintiffs and class of servers were similarly situated under Rule 23).

Like in *Rendak*, here, as discussed above and in Section III (Factual Background), plaintiffs in addition to their own declarations submit "…checklists setting forth the various tasks servers may be asked to perform at opening and closing…." 2020 U.S. Dist. LEXIS 182095, at *12-13.

V.   **PROPOSED NOTICE TO SIMILARLY SITUATED PUTATIVE CLASS MEMBERS**

"Federal judges have the power to authorize the sending of notice to potential FLSA class member to inform them of the action and to give them opportunity to participate by opting in….[,]" after determining, at the onset of a case, that potential opt-in plaintiffs are similarly situated to plaintiffs. *See Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-01059, 2020 U.S. Dist. LEXIS 49447,

---

[39]   Like in *Rendak*, here, Plaintiffs' also allege that Perry's "unlawfully pay [its] servers less than minimum wage for untipped opening and closing 'sidework' that is either: (1) unrelated to their tipped server duties; or (2) related to those duties but in excess of 20% of their total workweek hours in violation of the so-called '80/20 rule.'" *Rendak*, 2020 U.S. Dist. LEXIS 182095, at *11.

at *18 (S.D. Tex. 2020) (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169-70). "It is well settled that courts have wide discretion in deciding the content of the notice and how notice is distributed." *Tillis*, 2020 U.S. Dist. LEXIS 49447, at *18-19 (citation omitted).[40]

Moreover, "[n]otice is particularly important [in] FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his [or her] consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Tillis*, 2020 U.S. Dist. LEXIS 49447, at *18 (citations omitted).[41] Plaintiffs therefore respectfully request the Court to authorize counsel for Plaintiffs to promptly send the notices *attached as* **Exhibits N through P**, via the avenues requested below, to the class defined as:

> **All individuals who worked as a server at any of Defendants restaurants located in Texas during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour.**

Plaintiffs request the Court to order Perry's to produce, within fourteen (14) days of the granting of this Motion, an Excel (.xls) file containing the names, all known addresses, all email addresses, all telephone numbers (home, mobile, etc.), and beginning and ending dates of employment for all putative class members.[42] Telephone numbers will be used only for text

---

[40]    *See also Clarke v. Pei Wei Asian Diner, LLC*, Civil Action No. 3:20-CV-00800-N, 2020 U.S. Dist. LEXIS 227852, at *4 (N.D. Tex. 2020)(citing *Hoffmann-La Roche Inc.*, 493 U.S. at 165.

[41]    The statute limitations period is not tolled with respect to other potential plaintiff's until he or she files a consent with the court opting-in. 29 U.S.C. § 256; *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp*., 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983); *Quintanilla v. A & R Demolitina, Inc*., No. Civ. A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. 2005). As a result, each day that goes by before other similarly situated servers are notified of this collective action and file a consent to opt-in is one less day the putative class members may be able to recover his or her unpaid wages owed by Defendant.

[42]    *See Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142907 at *22-23, 30 (N.D. Tex. 2019) (ordering "to produce within ten (10) days of the granting of this [m]otion an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs…" and stating that "[m]obile phones, too, fall within the scope of what courts have found these to be acceptable forms of notice communication."); *see also Long v. Wehner Multifamily, LLC*, 303 F. Supp. 3d 509, 514 (N.D. Tex. 2017)(Defendant ordered to produce a list with the name, last known mailing address, email address, and telephone number within ten (10) days of the date of the court's Order); *Frazier v. Dall./Fort Worth Int'l Airport Bd.*, 285 F. Supp. 3d 969, 975 (N.D. Tex. 2018) (same); *Fulton v. Bayou Well Servs. Llc*, 208 F. Supp. 3d 798, 803 (N.D. Tex. 2016); *Gilbreath v. Brookshire Grocery Co.*, No. 6:17-CV-00618-RWS, 2018 U.S. Dist. LEXIS 159271, at *11

message notice and to verify contact information for Class Members in the event that the initial notice is returned undeliverable. *See Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 587 (W.D. Tex. 2016) (ordering disclosure of phone numbers); *Parrish v. Premier Directional Drilling, L.P.*, SA-16-CA-00417-DAE, 2016 U.S. Dist. LEXIS 186288 (W.D. Tex. 2016).

Plaintiffs request leave to send the Notice and Consent (**Exhibit N**) by mail, and the proposed notice (**Exhibit P**) via email[43] and text message[44] to all identified class members.

Plaintiffs request leave for their counsel to be permitted to maintain a website that is limited to posting the content of the approved Notice and Consent Form (**Exhibit N**) that counsel is requesting the Court to approve for dissemination.[45]

---

(E.D. Tex. 2018).

[43]   "Courts have held that 'distribution via email is appropriate.'" *Eltayeb v. Deli Mgmt.*, 2021 U.S. Dist. LEXIS 3484, at *11 (E.D. Tex. 2021)(stating that "....email has become a necessary and routine means of communication. Thus, it necessarily follows that it is appropriate for Plaintiffs to obtain the last known email address for those employees who fall within the collective action definition.")(citing *Wingo v. Martin Transp., Inc.*, No. 2:18-cv-00141-JRG, 2018 U.S. Dist. LEXIS 205416, 2020 WL 6334312, at *9 (E.D. Tex. 2018) (explaining the state of ever-changing technology and the growing reliance on email as a source of communication)); *see also Lemmers v. Gary Pools, NC.*, No. SA-15-CA-00828-OLG, 2016 U.S. Dist. LEXIS 181160, at *7 (W.D. Tex. 2016) (finding that "e-mail is a traditional and commonly used method to provide notice of class actions"*); Contreras v. Land Restoration*, 2017 U.S. Dist. LEXIS 22842, at *25 (W.D. Tex. Feb. 17, 2017); Cervantez, 2019 U.S. Dist. LEXIS 142409, at *2 (granting "[plaintiff's request to distribute Notice through mail, email, text message…"); *Alverson v. BL Rest. Operations LLC*, No. 5-16-CV-00849-OLG-RBF, 2018 U.S. Dist. LEXIS 43797, at *7 (W.D. Tex. 2018); *Page v. Crescent Directional Drilling, L.P.*, No. 5:15-CV-193-RP, 2015 U.S. Dist. LEXIS 182322, at *10-11 (W.D. Tex. 2015) ("[n]umerous courts have found that notice via email is appropriate in FLSA collective actions" and explaining that "[e]mail is not the wave of the future; [it] is the wave of the last decade and a half").

[44]   "In the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate." *Vega v. Point Security.*, LLC, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *12 (W.D. Tex. 2017). Based on this observation, Judge Austin recommended that the district court order plaintiff's counsel to "send a text message to the Class Members with a link to the Notice of Rights and Consent Form." *Id.* at *14-15; *see also Eltayeb*, 2021 U.S. Dist. LEXIS 3484, at *12 ("….the current state of technology, text message notification is a proper means of effectuating notice to the potential plaintiffs."); *Escobar v. Ramelli Group, L.L.C.*, No. 16- 15848, 2017 U.S. Dist. LEXIS 110361, at *8 (E.D. La. July 7, 2017) ("Courts have approved of the use of text messages because it facilitates notice to class members who may have changed addresses before the opt-in period."); *but see Aguirre v. Tastee Kreme #2, Inc.*, No. H-16-2611, 2017 U.S. Dist. LEXIS 83944, at *23-24 (S.D. Tex. 2017) (denying requested text notice because it did not provide a full picture of the nature of the lawsuit, the class members' rights, and the seriousness of the communication; and it might therefore be misleading). Here, Plaintiffs' proposed text notice directs class members to a stand-alone website where the content is the Notice and Consent Form that Plaintiffs propose mailing to the proposed class. As a result, here, Plaintiffs' proposed text message and hyperlink contained in that message addresses the *Aguirre* court's concerns. In addition, Plaintiffs' proposal is the approach that Magistrate Judge Austin recommended, and the district court approved in *Vega* 2017 U.S. Dist. LEXIS 148105, at *14-15.

[45]   *See, e.g., Black v. SettlePou, P.C.*, 2011 WL 609884, at *6 (N.D. Tex. Feb. 14, 2011) (Plaintiff's counsel "is

The methods of notice requested by Plaintiffs are deemed appropriate and reasonable, where other methods of notice would be insufficient, such that alternative proposed notice methods—email and text message—are necessary to ensure timely notice is effectuated.[46] Courts routinely find text messaging to be an appropriate means of notice especially when there is evidence that text messaging is a form of communication previously used by the employer to communicate with its employees.[47] Here, text message is a form of communication previously used by Perry's to communicate with its servers during their employment.[48] Plaintiffs, therefore, respectfully request this Court to authorize notice to be sent via text message with a link to the website where the proposed notice and consent form will be posted.[49] Plaintiffs request that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms

---

authorized to maintain an internet website for the purpose of informing similarly situated persons of their right to opt into this litigation."); *Knox v. Jones Group,* 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016) (permitting the posting of notice on a public website because it "improves access to consent forms" and noting that "communication through websites is common"). *See also, White v. Integrated Electronic Technologies, Inc.*, Civil Action Nos. 11–2186, 12–359, 2013 WL 2903070, *8 (W.D. La. June 13, 2013) (permitting electronic signatures on consent forms from a dedicated website); *Beall v. Tyler Techs., Inc.*, Civil Action No. 2:08–CV–422, 2009 WL 1766141, *3-*4 (E.D. Tex. June 23, 2009) (permitted the posting of notice on a website, "to be maintained by the plaintiffs' counsel" in a FLSA collective action).

[46] Courts permit dissemination of notice via text message in cases where "the nature of the employer's business facilitated a high turnover rate among employees," a category of business that includes the restaurant industry. *Kucher v. Domino's Pizza, Inc.*, No. 16-cv-2492 (AJN), 2017 U.S. Dist. LEXIS 213961, at *21-22 (S.D.N.Y. 2017) (citing *Bhumithanarn v, 22 Noodle Mkt. Corp*., 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *Goss v. Tyler Traditions, Inc.*, 2019 U.S. Dist. LEXIS 175693, at *16-17 (E.D. Tex. July 22, 2019) ("courts have found there is high employee turnover in the restaurant industry, which counsels in favor of allowing text messages here.")(citations omitted).

[47] "Courts have [also] found text-message notification appropriate 'when the employer has previously communicated with the employees via text message or where there is high employee turnover.'" *Goss*, 2019 U.S. Dist. LEXIS 175693, at *16 (citations omitted); *see also Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-1150-FB, 2017 U.S. Dist. LEXIS 218126, at *20 (W.D. Tex. 2017) (citing *Bhumithanarn*, 2015 U.S. Dist. LEXIS 90616at *12)))*.

[48] *See* Pls' Ex. A (Helgason Decl. at App. 005 ¶¶ 16-17); Pls' Ex. B (Crawford Decl. at App. 009-010 ¶¶ 16-17); Pls' Ex. C (Sharif Decl. at App. 014 ¶¶ 15-16); Pls' Ex. D (Sebikal Decl. at App. 019 ¶¶ 14-15); Pls' Ex. E (Martinez, P. Decl. at App. 023-024 ¶¶ 16-17); Pls' Ex. F (Martinez, E. Decl. at App. 029 ¶¶ 17-18).

[49] *See Cervantez,* 2019 U.S. Dist. LEXIS 142907, at *34 (granting "request to distribute the Notice through mail, email, text message and granting [Plaintiff's] request that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms on the proposed website.").

from that website.[50]

Plaintiffs request a sixty (60) day opt-in period from the initial date of transmitting the notice forms via mail, email, and text. *See Arceo v. Orta*, 296 F. Supp. 3d 818, 826 (N.D. Tex. 2017) (permitting ninety (90) day opt in period) (citations omitted).[51] After the passage of thirty (30) days, Plaintiffs' counsel requests permission to send a reminder notice (Exhibit O) by mail and resending the approved notice via email and text message to all Class Members whose initial notice is returned undeliverable after the passage of thirty (30) days. *See, e.g., Contreras,* 2017 WL 663560, *9 (permitting reminder notices)*; Frazier*, 285 F. Supp. 3d at 979-80 (permitting reminder notice within the thirty (30) days after the initial mailing).

## VI.   CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs respectfully request this Court to grant Plaintiffs' motion for notice of an FLSA collective action, to authorize counsel for Plaintiffs to send the notices *attached as* Exhibits N through P to this motion via the avenues requested above, to the following class of similarly situated individuals defined as:

> **All individuals who worked as a server at any of Defendants restaurants located in Texas during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour.**

Plaintiffs additionally respectfully request the Court to award the relief outlined in the proposed Order submitted with this Motion. Finally, Plaintiffs' request all such other relief to

---

[50]    *See* 15 U.S.C. § 7001(a)(1) ("[W]ith respect to any transaction in or affecting interstate or foreign commerce," a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."); TEX. BUS. & COM. CODE § 322.007(a), (d) ("signature may not be denied legal effect or enforceability solely because it is in electronic form" and "[i]f a law requires a signature, an electronic signature satisfies the law."); *see also Joaquin*, 219 F. Supp. 3d at 587 (authorizing electronic signatures); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (permitting electronic signatures on consent forms)(collecting sources).

[51]    *Tillis*, 2020 U.S. Dist. LEXIS 49447, at *22 ("…most district courts in the Fifth Circuit default to a 60-day opt-in notice period.").

which Plaintiffs may be justly entitled.

Respectfully submitted,


By: _/s/ Drew N. Herrmann_
   Drew N. Herrmann
   Texas Bar No. 24086523
   _drew@herrmannlaw.com_
   Pamela G. Herrmann
   Texas Bar No. 24104030
   _pamela@herrmannlaw.com_

   **HERRMANN LAW, PLLC**
   801 Cherry St., Suite 2365
   Fort Worth, TX 76102
   Phone: 817-479-9229
   Fax: 817-887-1878

   ATTORNEYS FOR PLAINTIFFS
   AND COLLECTIVE MEMBERS