# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| RIAN HELGASON, et al. | § § § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-1573-S |
| PERRY'S RESTAURANTS, LTD | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs' Motion in Support of Issuing Court-Authorized Notice to Similarly Situated Employees ("Motion") [ECF No. 42], in which Plaintiffs seek to certify a Fair Labor Standards Act ("FLSA") collective action. Having considered the Motion, Defendant's Response to Plaintiffs' Motion in Support of Issuing Court-Authorized Notice to Similarly Situated Employees ("Response") [ECF No. 44], Plaintiffs' Reply in Support of Motion to Issue Court-Authorized Notice to Similarly Situated Employees [ECF No. 45], the relevant law, and the pleadings, the Court **DENIES** the Motion.

### I.   BACKGROUND

Rian Helgason and Caroline Crawford (collectively, "Plaintiffs") worked as servers at Perry's Steakhouse and Grille ("Perry's"), a restaurant chain owned and operated by Perry's Restaurants, LTD ("Defendant").[1] Compl. [ECF No. 1] ¶¶ 8-9, 13. According to Plaintiffs, Defendant has a policy and practice of paying its servers less than the federal minimum wage. *Id.* at ¶ 30-31. Defendant denies this allegation, asserting that it lawfully utilized the so-called "tip credit" pursuant to the FLSA. Answer [ECF No. 11] ¶ 31.

Plaintiffs filed this lawsuit on behalf of themselves and all other Perry's servers who are "similarly situated." Compl. ¶ 1. The Court ordered Plaintiffs to file a motion for conditional

---

[1] Plaintiffs initially sued Defendant along with other affiliated entities, all of whom were voluntarily dismissed. *See* ECF No. 7. Perry's Restaurants, LTD is the only remaining defendant.

certification and stayed all discovery except discovery pertaining to certification. ECF No. 16. Plaintiffs had 60 days to conduct discovery prior to filing their motion for conditional certification, which they filed on August 20, 2020. *See* ECF Nos. 16, 17. After the parties' briefing concluded, the Fifth Circuit published its opinion in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), which established the standard that district courts must follow in this Circuit when determining whether an FLSA case can proceed on a collective basis. As a result, the Court denied without prejudice Plaintiffs' motion for conditional certification and instructed the parties that any future motion on the issue of certification should address the new standard under *Swales*. *See* ECF Nos. 39, 40; Feb. 12, 2021 Hearing Tr. [ECF No. 41] at 6.

Plaintiffs then filed the instant Motion, seeking to certify a collective action consisting of "[a]ll individuals who worked as a server at any of Defendant[']s restaurants located in Texas during the three (3) year period preceding the filing of this lawsuit and who were paid a direct cash wage of less than $7.25 per hour." Mot. 24. In support of certification, Plaintiffs assert that Perry's pays every one of its servers in Texas the same subminimum hourly wage in reliance on the FLSA's tip credit provisions, and all servers maintain identical job titles, job positions, and are required to perform the same job duties. Mot. 8-10 & n.10.

## II.   LEGAL STANDARD

An employee may bring an action for violation of the minimum wage provisions of the FLSA either individually or as a "collective action" on behalf of herself and other employees "similarly situated." 29 U.S.C. § 216(b). As noted above, the Fifth Circuit in *Swales* recently announced a new framework for assessing whether potential collective action members in FLSA suits are "similarly situated." 985 F.3d 430. That decision rejected the long-standing *Lusardi* two-

step approach[2] in which the district court would first decide whether a collective should be conditionally certified at the outset of the case, and then make a second and final determination at the conclusion of discovery. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *see also Swales*, 985 F.3d at 434 ("*Lusardi* has no anchor in the FLSA's text or in Supreme Court precedent interpreting it. Indeed, the word 'certification,' much less 'conditional certification,' appears nowhere in the FLSA. We therefore reject *Lusardi*'s two-step certification rubric."). The Fifth Circuit now requires that a district court "*rigorously scrutinize* the realm of 'similarly situated' workers," and "do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" *Id.* (emphasis added). To do so, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Id.* at 441 (quotations omitted). Then, a district court "should authorize preliminary discovery accordingly." *Id.*

The ultimate inquiry is "whether merits questions can be answered collectively." *Id.* at 442. The Fifth Circuit held that "the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Id.* at 440. Importantly, the district court must "consider all of the available evidence" in making this determination. *Id.* at 441-43. If answering the merits questions requires a "highly individualized inquiry into each opt-in's circumstances," certification is inappropriate. *Id.* at 442.

Two interpretive principles guided the Fifth Circuit in adopting this new approach: "(1) the FLSA's text, specifically [29 U.S.C.] § 216(b) which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while

---

[2] While some district courts in this Circuit followed the *Lusardi* approach, the Fifth Circuit never formally adopted it. *See Swales*, 985 F.3d at 439 ("We have 'carefully avoided adopting' *Lusardi*, and our avoidance should not be misconstrued as acquiescence.").

a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* These principles, however, are the only limitations on the otherwise "broad, litigation-management discretion" of the district court. *Id.* at 443.

The Fifth Circuit clarified that the plaintiff bears the burden to establish that employees in a proposed collective action are similarly situated. *See id.* at 443 & n.65 ("While the text of [the FLSA] is not explicit on this point, we hold that such a burden follows from the general burden that a plaintiff bears to prove her case. This makes sense as a practical matter as well, as a plaintiff should not be able to simply dump information on the district court and expect the court to sift through it and make a determination as to similarity."). If the plaintiff fails to meet this burden, the court may decide that the case cannot proceed on a collective basis, that additional discovery is needed to make the certification determination, or that only certain subcategories of employees should receive notice. *See id.* at 443.

### III.     ANALYSIS

The FLSA requires employers to pay their employees the federal minimum wage. 29 U.S.C. § 206(a). Tipped employees must be paid at least $7.25 per hour, but the tips they receive can count towards that wage if they are paid by employers a minimum of $2.13 per hour. 29 U.S.C. § 203(m); 29 C.F.R. § 531.50(a). The employer, however, must allow tipped employees to keep the tips they received. *Id.* The statute provides an exception to this rule, permitting "the pooling of tips among employees who customarily and regularly receive tips." *Id.* But "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 188 (5th Cir. 2015).

The parties in this case disagree over whether: (1) the tip pool was distributed solely among customarily and regularly tipped employees; (2) servers had to pay for their own mandatory uniforms and other business-related items; and (3) servers had to do non-tipped "side work" related and unrelated to their tipped occupation but were paid below minimum wage. Mot. 7; Resp. 6, 11-13, 15-16. Plaintiffs argue that Defendant is precluded from claiming the tip credit because servers were prevented from keeping the tips they received. *See, e.g.*, Compl. ¶ 34. Plaintiffs contend that they have satisfied their burden of showing that all Perry's servers in Texas are similarly situated. In support of their Motion, Plaintiffs offer six nearly identical declarations from Perry's servers,[3] server paystubs, server job duties and checklists, online job postings for Perry's servers for Texas locations, and a Department of Labor investigation report. *See id.* at 10-15; *see also* ECF Nos. 43, 43-1. In refuting Plaintiffs' assertions, Defendant offers the declarations of (1) Perry's Senior Vice President of Operational Analysis and Quality Control, and former Comptroller; (2) the former General Manager of the Grapevine and Dallas locations; and (3) the current General Manager, and former Assistant General Manager, of the Frisco location. *See* ECF 44-1.

### A. *Tip Pool Claim*

Plaintiffs' first contention is that Defendant does not qualify for the tip credit because "Perry's policy required every server to contribute a fixed percentage of their tips to the tip pool at the end of every shift, of which a portion were [sic] earmarked for and allegedly distributed to bussers and food runners, even though there was no busser or food runner working during that particular shift." Mot. 11 (internal quotations omitted). In response, Defendant argues that

---

[3] In total, these six declarants worked at five different Perry's locations in Texas: Dallas, Grapevine, Frisco, "Domain Northside" Austin, and "Downtown" Austin. *See, e.g.*, Mot. 9 n.9 (citing declarations).

5

Plaintiffs fail to meet their burden because the declarations are not based on personal knowledge and there is insufficient evidence of a policy. *See* Resp. 20-21.

Plaintiffs have not met their burden here. In support of their allegation, Plaintiffs offer only their own declarations and the declarations of four opt-in plaintiffs. *See* Mot. at 11 n. 17; *see also* ECF No. 43-1 at 4, 8-9, 13-14, 18, 22-23, 28. But all six declarations rely on "conversations with other co-workers" in claiming that the tip pool was distributed to employees who were not working during the particular shift. ECF No. 43-1 at 4, 9, 13, 18, 22, 28. Courts in this District have held that even under the lenient conditional certification standard, declarations submitted by employees must be based on personal knowledge. *See, e.g., Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) (citing cases). And the current *Swales* standard is even more demanding, as courts are instructed to "rigorously scrutinize the realm of 'similarly situated' workers." *Swales*, 985 F.3d at 434. Despite having the opportunity to conduct discovery on this issue, and with 15 opt-in plaintiffs and two named plaintiffs in this case when the Motion was filed, Plaintiffs rely on little more than hearsay beyond their own allegations contained in the complaint and declarations. This is insufficient even at the more lenient pre-*Swales* conditional certification stage. *See Valcho v. Dall. Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 622-23 (N.D. Tex. 2008) (denying motion for conditional certification where plaintiff did not produce any evidentiary support beyond bare allegations contained in complaint and personal declaration after three months of discovery).

### B. *Uniform Deduction Claim*

Plaintiffs also contend that Perry's servers were required to purchase mandatory uniforms and other business-related items and equipment. Mot. 11. Plaintiffs claim that Perry's did not pay

6

or reimburse its servers for these expenses, which effectively allowed Perry's to retain its servers' tips. *Id.* at 11-12.

Plaintiffs have also not met their burden here. In support of their allegation, Plaintiffs submit copies of 13 paystubs from a total of 11 Perry's servers. *See* ECF No. 43-1 at 30-37, 87-91. But of those 13 paystubs, only four indicate a "uniform" deduction. *See id.* at 30-32, 37. Of these four, three are from the same opt-in plaintiff Phylisha Martinez. *See id.* at 30-32. Thus, out of the 17 total named and opt-in plaintiffs at the time the Motion was filed, Plaintiffs rely on uniform deductions from the paystubs of just two servers. This is woefully insufficient to show that the uniform deductions were part of a mandatory policy. *See Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex.) (observing that at the conditional certification stage a plaintiff must provide "substantial allegations" that the potential class members were together victims of a "single decision, policy or plan"). Instead, it shows that answering this question requires a highly individualized inquiry into each server's circumstances.

### C. *Side Work Claims*

Finally, Plaintiffs contend that Defendant violated the FLSA by enforcing a policy or practice of paying Perry's servers below minimum wage for the time they were required to spend on non-tipped "side work" both related[4] and unrelated to their tipped occupation. Compl. ¶¶ 34, 42-43, 45, 61-62. According to Plaintiffs such related side work included wiping down tables, stocking and setting tables, running food, and rolling silverware. *Id.* ¶ 45. And unrelated side work included polishing glasses, silverware, and plates; cleaning windows; setting up and taking

---

[4] Plaintiffs' Motion alludes to, but does not cite, the Department of Labor's so-called "80/20 Rule," which permits an employer to use the tip credit for an employee's time spent on duties related to the tipped occupation. The employer cannot use the tip credit (*i.e.*, must pay the employee the full minimum wage rate and cannot use tips to make up the difference) if the employee spent more than 20% of their workweek performing such non-tipped work. *See, e.g.*, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011).

down patio furniture; assisting in kitchen preparation and food preparation; setting up the cocktail lounge; and setting up the bread stations. *Id.* ¶ 43.

In support of these allegations, Plaintiffs cite their own declarations and the declarations of four opt-in plaintiffs. *See* Mot. 13-14. Plaintiffs also offer four "Server Shift" checklists, all of which list the same duties; one "Cocktail" checklist; and online job postings for servers from several different Perry's locations across Texas, all of which list the same job duties and responsibilities. *See id.* at 10 & n.11; ECF No. 43-1 at 43-86.

Here, too, Plaintiffs fail to meet their burden. Plaintiffs' main contention is that the "Server Shift" checklists and online job posts show that all servers "are subject to the same job description and job duties that give rise to the allegations in this collective action, and therefore, are all similarly situated." *Id.* at 22 (citing checklists and online job posts). But the checklists reveal the individualized nature of Plaintiffs' claim. Those checklists set forth particular tasks that servers must complete on any given day. *See* ECF 43-1 at 38-42. Instead of each server having the same list of tasks, it appears that servers handwrite their names on a single checklist next to the tasks that they complete for that day. *See id.* This shows that on any given day, each server may complete different tasks, negating Plaintiffs' allegation that all servers were required to complete the same tasks. Determining the identity of the server who worked on a particular task and the underlying circumstances would require a highly individualized inquiry. Additionally, Plaintiffs have offered only four checklists. Plaintiffs have also not identified which Perry's locations these four checklists are from. And it appears that three of the four checklists are from the same restaurant, as several of the same names appear on all three of these checklists.

8

## IV.     CONCLUSION

Considering all of the available evidence, the Court finds that Plaintiffs failed to meet their burden to show that all Perry's servers in Texas were similarly situated as to the tip pool claim, uniform deduction claim, and side work claims. Accordingly, the Court **DENIES** Plaintiffs' Motion in Support of Issuing Court-Authorized Notice to Similarly Situated Employees. Having had the opportunity to conduct discovery on the issue of certification, it is not clear to the Court that additional discovery will help Plaintiffs demonstrate that they and members of the proposed collective are similarly situated. Therefore, the opt-in plaintiffs are **DISMISSED WITHOUT PREJUDICE**, and Plaintiffs will proceed on their individual claims. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

**SO ORDERED.**

SIGNED November 10, 2021.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**