**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RIAN HELGASON and CAROLINE CRAWFORD**<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**PERRY'S RESTAURANTS LTD d/b/a Perry's Steakhouse and Grille**<br><br><br>    *Defendant.* | No. 3:20-cv-01573-S<br><br><br>**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**PLAINTIFFS' BRIEF IN RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# <u>Table of Contents</u>

I.  SUMMARY OF THE TIP CREDIT DEFENSE ..................................................... 8

II. DEFENDANT'S RECORD CITATIONS ......................................................... 9

    A.  Defendant primarily relies on records that its corporate representatives testified are not business records, but instead were specially created for this lawsuit. ....... 9

    B.  Defendant cannot rely on declarations from witnesses to provide facts on topics that its designated corporate representatives disclaimed knowledge about. ......... 11

III. FACTS IN SUPPORT OF PLAINTIFFS' RESPONSE ......................................... 12

    A.  Plaintiffs were paid less than minimum wage .......................................... 12

    B.  Defendant did not allow Plaintiffs to retain all their tips because it required Plaintiffs to pay for uniforms and incur other expenses. ................................. 13

    C.  Plaintiffs' tips were used to fund the wages of employees who were not present at the restaurant and not involved in serving the customer who left the tip. ........... 13

    D.  Defendant used tips to fund the wages of its employees who were required to perform nontipped duties unrelated to serving customers. ............................. 16

        1.  The job-title nomenclatures of the purported tip pool recipients are not consistent with nor indicative of the job duties they performed. ................ 16

        2.  Defendant used tips to pay the "service well" who did not interact with customers and worked in the back-of-the house. ..................................... 18

        3.  Defendant used tips to pay "bussers" while they were engaged in nontipped occupations .................................................................................. 19

        4.  Defendant used tips to pay "barbacks" while they were engaged in nontipped occupations .................................................................................. 20

        5.  Defendant used tips to pay "food runners" who were engaged in nontipped occupations .................................................................................. 21

        6.  Defendant used tips to pay "hostesses" while they were engaged in nontipped occupations .................................................................................. 22

    E.  Defendant paid Plaintiffs $2.13 for nontipped work assigned to them each shift, including nontipped work before and after each shift when the restaurant was closed. ........................................................................................ 22

IV. THE TIP CREDIT DEFENSE .................................................................... 27

    A.  An employer must prove compliance with the tip credit and even then, an employer may only use the tip credit during limited times and for limited purposes. ...................................................................................... 27

B.  Defendant "has the burden to prove its entitlement to the tip credit." .............. 27

V.  DEFENDANT'S TIP CREDIT DEFENSE FAILS AS MATTER OF LAW ............................... 28

A.  Plaintiffs did not retain all their tips ........................................................... 28

B.  Defendant failed to show that its tip pool was fully distributed solely among customarily and regularly tipped employees. ................................................. 30

1.  Whether a tip is to be given, and its amount, are matters determined solely by the customer. .................................................................................. 32

2.  Contrary to Defendant's suggestion, it is a tip pool recipient's job duties "during the shifts in question" that matter. ............................................. 34

3.  The test for whether an employee may properly be paid using tips is fact-intensive and "a restaurant's job-title nomenclature is not dispositive." ..... 35

C.  Defendant argues that Plaintiffs did not and could not know how their tips were being distributed because Defendant unilaterally controlled the distribution of their tips. ................................................................................................. 39

VI.  DEFENDANT EXPLOITED THE TIP CREDIT TO PAY FOR NONTIPPED WORK ................. 41

A.  Defendant used the tip credit to pay Plaintiffs less than minimum wage to complete various nontipped work assignments. ............................................... 41

B.  Plaintiffs are entitled to the full minimum wage for all time spent performing unrelated sidework duties. ......................................................................... 43

C.  Plaintiffs were required to perform substantial nontipped side work in violation of the 80/20 Rule. ........................................................................................ 48

1.  Defendant primarily relies on the O*NET job listing, which courts have universally rejected in favor of applying the 80/20 Rule........................... 49

2.  Defendant incorrectly proclaims Plaintiffs cannot recover without "evidence" showing the precise amount of time spent performing sidework 50

3.  Defendant suggests that Plaintiffs must have been "lollygagging," were too slow and did not work fast enough to complete their nontipped sidework assignments. ............................................................................... 54

# Table of Authorities

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) .......................................................................................... 50, 51

*Auer v. Robbins*,
  519 U.S. 452 (1997) ................................................................................................ 50

*Austin v. Colonial Wiliamsburg Hotel Props., Inc.*,
  1996 U.S. Dist. LEXIS 11607, 1996 WL 406671 (E.D. Va. June 14, 1996).................................32

*Barcellona v. Tiffany English Pub, Inc.*,
  597 F.2d 464 (5th Cir. 1979) ................................................................................. 40

*Barrera v. MTC, Inc.*,
  No. SA-10-CA-665 XR, 2011 U.S. Dist. LEXIS 83468 (W.D. Tex. July 29, 2011) ....... 35, 36, 38

*Brazos River Auth. v. GE Ionics, Inc.*,
  469 F.3d 416 (5th Cir. 2006) ................................................................................. 11

*Brennan v. Haulover Shark and Tarpon Club, Inc.*,
  No. 74-1276, 1986 WL 587 (S.D. Fla. Jan. 27, 1996) .................................................41

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 28

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*,
  2007 U.S. Dist. LEXIS 62105 (N.D. Tex. 2007) ................................................... 28

*Cross v. 440 Corp.*,
  No. 2:06-CV-0191-WCO, 2008 U.S. Dist. LEXIS 144933 (N.D. Ga. 2008)............................41

*Davis v. B & S, Inc.*,
  38 F. Supp. 2d 707 (N.D. Ind. 1998) ..................................................................... 40

*Dole v. Bishop*,
  740 F. Supp. 1221 (S.D. Miss. 1990) ..................................................................... 44

*Driver v. AppleIllinois, LLC*,
  739 F.3d 1073 (7th Cir. 2014) ............................................................................... 44

*Driver v. AppleIllinois, LLC*,
  890 F. Supp. 2d 1008 (N.D. Ill. 2012) ................................................... 42, 43, 45, 46

*Ettorre v. Russos Westheimer, Inc.*,
  No. 21-20344, 2022 U.S. App. LEXIS 7295 (5th Cir. Mar. 18, 2022)........................8, 9, 28, 29

*Fast v. Applebee's Int'l, Inc.*,
  502 F. Supp. 2d 996 (W.D. Mo. 2007) ..................................................................41

*Fast v. Applebee's Int'l, Inc.*,
   638 F.3d 872 (8th Cir. 2011) .................................................................... passim
*Flores v. HMS Host Corp.*,
   No. 8:18-cv-03312, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019) ............................ 50
*Fontenot v. Upjohn Co.*,
   780 F.2d 1190 (5th Cir. 1986) ............................................................................ 28
*Gionfriddo v. Jason Zink, LLC*,
   769 F. Supp. 2d 880 (D. Md. 2011) ...................................................................... 40
Guillory v. PF&B Mgmt., LP,
   2013 U.S. Dist. LEXIS 39484, 2013 WL 1181439 (S.D. Tex. Feb. 27, 2013) ............................ 31
*Hackett v. Housing Auth.*,
   750 F.2d 1308 (5th Cir. 1985) ............................................................................ 10
*Ierardi v. Lorillard, Inc.*,
   1991 U.S. Dist. LEXIS 11887 (E.D. Pa. 1991) ............................................................ 11
*Lopez v. Fun Eats & Drinks, LLC*,
   No. 3:18-cv-1091-X, 2021 U.S. Dist. LEXIS 132407 (N.D. Tex. July 15, 2021), *report and recommendation adopted*, 2021 U.S. Dist LEXIS 148389 (N.D. Tex. 2021) .................... 33, 35, 37
*Lu v. Jing Fong Rest., Inc.*,
   503 F. Supp. 2d 706 (S.D.N.Y. 2007) .................................................................... 41
*Marsh v. J. Alexander's LLC*,
   905 F.3d 610 (9th Cir. 2018) (en banc) ........................................................ 43, 46, 48
*Marshall v. Krystal Co.*,
   467 F. Supp. 9 (E.D. Tenn. 1978) ........................................................................ 40
*Montano v. Montrose Rest. Asscs., Inc.*,
   800 F.3d 186 (5th Cir. 2015) ................................................................... passim
*Myers v. Copper Cellar Corp.*,
   192 F.3d 546 (6th Cir. 1999) ................................................................ 33, 35, 36, 37
*Nail v. Shipp*,
   2019 U.S. Dist. LEXIS 132072 (S.D. Ala. 2019) .......................................................... 29
*O'Donnell v. Diaz*,
   No. 3:17-cv-1922-S, 2019 U.S. Dist. LEXIS 38659 (N.D. Tex. Mar. 11, 2019) ................... 28, 30
*Pedigo v. Austin Rumba, Inc.*,
   722 F. Supp. 2d 714 (W.D. Tex. 2010) .............................................................. 35, 37
*Powell v. Penhollow*,
   260 F. App'x 683 (5th Cir. 2007) ........................................................................ 10
*Rafferty v. Denny's, Inc.*,
   13 F.4th 1166 (11th Cir. 2021) ................................................................. passim
*Rainey v. Am. Forest & Paper Asss'n, Inc.*,
   26 F. Supp. 2d 82 (D.D.C. 1998) ..................................................................... 11, 12

*Reich v. Priba Corp.*,
    890 F. Supp. 586 (N.D. Tex. 1995) ............................................................................ 40

*Rest. Law Ctr. v. United States DOL*,
    2022 U.S. Dist. LEXIS 30368 (W.D. Tex. Feb. 22, 2022) ................................. 48, 50

*Reyes v. Topgolf Int'l, Inc.*,
    No. 3:17-CV-0883-S, 2018 U.S. Dist. LEXIS 141736 (N.D. Tex. Aug. 2, 2018) .......... 34, 36, 38

*Roussell v. Brinker Int'l, Inc.*,
    441 F. App'x 222 (5th Cir. 2011) ...................................................................... passim

*Shultz v. Hinojosa*,
    432 F.2d 259 (5th Cir. 1970) ............................................................................... 29

*Steele v. Leasing Enters., Ltd.*,
    826 F.3d 237 (5th Cir. 2016) ............................................................................ 8, 9

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
    No. 3:06-cv-0271-B, 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. Dec. 14, 2007) ........................ 11

Turner v. Republic Waste Servs. of Tex.,
    2016 U.S. Dist. LEXIS 169746 (N.D. Tex. 2016) ................................................ 28

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................................... 50

Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.,
    No. H-18-0852, 2020 U.S. Dist. LEXIS 130083 (S.D. Tex. July 23, 2020) .............................. 11

*United States Dep't of Labor v. Five Star Automatic Fire Prot., LLC*,
    987 F.3d 436 (5th Cir. 2021) ............................................................................ 51

*United States v. Conforte*,
    624 F.2d 869 (9th Cir. 1980) ............................................................................32

*United States v. Kim*,
    595 F.2d 755 (D.C. Cir. 1979) ...........................................................................10

*United States v. Miller*,
    771 F.2d 1219 (9th Cir. 1985) ...........................................................................10

*Whitehead v. Hidden Tavern, Inc.*,
    765 F.Supp.2d 878 (W.D. Tex. 2011) ................................................................ 28

Williams v. Sake Hibachi Sushi & Bar, Inc.,
    No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701 (N.D. Tex. June 18, 2020) .................. 31

*Wintjen v. Denny's, Inc.*,
    No. 2:19-CV-00069, 2021 U.S. Dist. LEXIS 35199 (W.D. Pa. Feb. 25, 2021) .................... 51, 52

*Wright v. U-Let-Us-Skycap Servs., Inc.*,
    648 F. Supp. 1216 (D. Colo. 1985) ...............................................................40, 41

**Statutes**

29 U.S.C. § 203(m) .................................................................................................. 27, 28, 30, 55

29 U.S.C. § 203(t) ........................................................................................................ 27, 42, 55

**Regulations**

29 C.F.R. § 516.28 ...................................................................................................................52

29 C.F.R. § 531.27 ................................................................................................................... 8

29 C.F.R. § 531.3 ................................................................................................................... 29

29 C.F.R. § 531.51 ..................................................................................................................43

29 C.F.R. § 531.52 ..................................................................................................... 30, 31, 32

29 C.F.R. § 531.54 .....................................................................................................30, 40, 41

29 C.F.R. § 531.56 ........................................................................................................ passim

## I.    SUMMARY OF THE TIP CREDIT DEFENSE

In its motion for summary judgment, Defendant does not dispute that it paid Plaintiffs $2.13 per hour for all hours worked. *See Def's Br.,* [Doc. 78 at p. 6[1]]. Instead, Defendant argues, it is entitled to rely on tips Plaintiffs earned from customers to supplement the $2.13 per hour wage it paid to Plaintiffs. *Id.* If all preconditions are satisfied, Defendant may take a credit in limited circumstances against its minimum wage obligation by relying on tips pursuant to the FLSA's tip credit provisions. *See* 29 U.S.C. § 203(m); 29 U.S.C. § 206(a)(1)(C) (requiring employers to pay employees no less than minimum "wage" currently set at $7.25 per hour); *see also e.g., See Montano v. Montrose Rest. Assocs., Inc.,* 800 F.3d 186, 188 (5th Cir. 2015); 29 C.F.R. § 531.27 ("Tips may be credited or offset against the wages payable under the Act in certain circumstances, [pursuant to tip credit regulations including recordkeeping requirements].").

"To claim this discount, however, employers must comply with several mandates." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022) (unpublished). If an employer fails to comply with any of Section 203(m)'s requirements, it "must be divested of its statutory tip credit for the relevant time period." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016). The tip credit is an affirmative defense—Defendant "bears the burden to prove it is entitled to the tip credit." *See Ettorre*, 2022 U.S. App. LEXIS 7295, at *6 (citing *Montano*, 800 F.3d at 189).

Here, Defendant failed to prove compliance with the tip credit. Specifically, Defendant did not comply with the tip credit and has otherwise failed to carry its burden to prove: (1) it allowed

---

[1]    Page references to Defendant's brief refer to the ECF page numbers generated by the ECF filing system.

Plaintiffs to retain all their tips; (2) its tip pool was fully distributed pool was distributed solely among other tipped employees; (3) it only took a tip credit while Plaintiffs were performing their jobs as servers and during the limited time periods that the tip credit permits an employer to pay an employee subminimum wages; and (4) it informed Plaintiffs of the tip credit notice provisions. *See Steele*, 826 F.3d at 242; *Montano*, 800 F.3d at 188; *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9; *Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021). Defendant did not move for summary judgment on two of the tip credit issues: (1) Defendant's failure to comply with the FLSA's notice requirements to inform Plaintiffs of the tip pool credit; and (2) Defendant's practice of requiring Plaintiffs to pay for uniforms, tools, and other items which plainly violate the FLSA's tip credit. *See* Def's Br., [Doc. 78 at p. 6] (expressly limiting its motion for summary judgment to two issues: the tip pool and sidework issues). Therefore, Defendant's motion for summary judgment should be summarily denied because even a single violation—including those not addressed in its motion—will divest Defendant of the tip credit. *See Steele*, 826 F.3d at 246 (an employer failing to comply Section 203(m) "must be divested of its statutory tip credit for the relevant time period.").

## II.   DEFENDANT'S RECORD CITATIONS

### A.   Defendant primarily relies on records that its corporate representatives testified are not business records, but instead were specially created for this lawsuit.

Defendant relies on "summaries" and "recaps" that were specially created for this lawsuit that it then produced, modified, and reproduced again. *See* Def's App. [Doc. 81 at pp. 207, 244, 283, 285, 287, 289, 313, 339, 369, and 371]. It is undisputed these records are not business records, were not kept in the ordinary course of Defendant's business, and the documents used to create the purported summaries were never produced. *See e.g., Henderson 30(b)(6) Corp Rep Depo,* Pls Ex

7 at App. 266-67 [109:3-22, 110:8-18]; *Id.* at App. 267 [110:17-18] ("Q. . . .[Deposition Exhibit 10[2], PERRYS-001867] was created for this lawsuit? A. Yes."); *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 a at App. 299 [44:24-45:13] ("Q. . . .Can you identify [PERRYS-006199] A. I don't know the name of the report. Q. Have you seen this report before? A. No. Q. . . .[P]rior to right now, you had never seen a document that looks like this? A. No."); *Id.* at App. 299-300 [45:25-46:4, 46:13-18] ("Q. Have you seen a document that looks similar to [PERRYS-006428]? A. No. Q. And do you see where it says: "Sum of TIP SHARE EARN" [as read]? A. Yes. Q. Do you have any guess as to what the numbers in that column represent? A. I don't.").

Because the "recaps" and "summaries" are not business records, cannot be authenticated, and are otherwise inadmissible, they should be stricken as lacking any evidentiary support. *See, e.g., Powell v. Penhollow*, 260 F. App'x 683, 688 (5th Cir. 2007) ("We have previously held that the failure to make the original or duplicate copies of the evidence underlying a summary available for inspection renders the summary inadmissible.") (citing *Hackett v. Housing Auth.*, 750 F.2d 1308, 1312 (5th Cir. 1985)). "Other circuit courts follow the same rule." *Powell*, 260 F. App'x at 688 (citing *United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985); *United States v. Kim*, 193 U.S. App. D.C. 370, 595 F.2d 755, 764 (D.C. Cir. 1979) ("When the underlying documents are not subject to examination by the opposing parties, the summary should not be admitted into evidence.") (internal citations omitted).

---

[2]   The document introduced as Exhibit 10 during Henderson's deposition is the same document *attached as* Defendant's Attachment GG, [Doc. 81 at p. 285] (Grapevine 2019 Recap of Tip Pool Distributions, (PERRYS-001867)).

**B.      Defendant cannot rely on declarations from witnesses to provide facts on topics that its designated corporate representatives disclaimed knowledge about.**

Rule 30(b)(6) "aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." *Rainey v. Am. Forest & Paper Asss'n, Inc.,* 26 F. Supp. 2d 82, 95 (D.D.C. 1998). These principles prevent a "30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject." *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, No. 3:06-cv-0271-B, 2007 U.S. Dist. LEXIS 91947, at *27-29 (N.D. Tex. Dec. 14, 2007) (citing *Ierardi v. Lorillard, Inc.,* 1991 U.S. Dist. LEXIS 11887 (E.D. Pa. 1991)); *see also Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.*, No. H-18-0852, 2020 U.S. Dist. LEXIS 130083, at *7 (S.D. Tex. July 23, 2020).

In *Rainey,* a case similar to this one, the defendant's 30(b)(6) corporate representative testified that he did not know the percentage of time the plaintiff spent on exempt functions. *See Rainey,* 26 F. Supp. 2d at 92. However, in response to the plaintiff's motion for summary judgment, the defendant filed an affidavit of a former employee quantifying the plaintiff's work. *Id.* at 93-94. The Court excluded this affidavit reasoning that Rule 30(b)(6) required the defendant to prepare its designee to give binding answers. *Id.* at 94.

Here, Defendant designated two witnesses to testify on its behalf regarding the topics set forth in Plaintiffs' Rule 30(b)(6) Deposition Notice. *See Rule 30(b)(6) Depo. Notice and Topic List*, Pls Ex 1 at App. 001-007; *see also E-mails with Schooler re 30(b)(6) Designees*, Pls Ex 2 at App. 008-013.[3] However, in response to many of the questions posed during the 30(b)(6) depositions, both

---

[3]      "When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

corporate representatives testified that they did not know. Now, Defendant attempts to introduce and rely on declarations to support facts Defendant testified—through its corporate representatives—it did not know and disclaimed its knowledge. Here, like the defendant in *Rainey*, Defendant cannot now "proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey,* 26 F. Supp. 2d at 94.

### III.  FACTS IN SUPPORT OF PLAINTIFFS' RESPONSE

**A.  Plaintiffs were paid less than minimum wage**

1.     Although Defendant does not clearly state the dates and the corresponding locations Plaintiffs worked during their employment, [Doc. 78 at p. 8], Helgason worked at the Dallas and Grapevine locations and Crawford worked at Frisco and Grapevine locations.

2.     Plaintiff Helgason began working for Defendant as a server in November 2017 at the Dallas location. *See Helgason Depo*, Pls Ex 3 at App. 040-41 (27:23-28:1). Ms. Helgason worked at the Dallas location from November 2017 until February 2018 when she was transferred to the Grapevine location. *See Id.* Ms. Helgason worked at the Grapevine location from February 2018 until June 2018. *See Id.,* at App. 042 (29:15-17). After a brief hiatus, Ms. Helgason returned to work at the Grapevine location in September 2018 and worked there until she submitted her resignation in March 2020. *See id.,* at App. 042-43 (29:21-23, 30:12-16).

3.     Plaintiff Crawford—who was not deposed in this lawsuit—worked as a server for Defendant from September 2017 until March 2020, with a break in her employment from January 15, 2019 to April 20, 2019. *See Crawford Decl.,* Pls Ex 5 at App. 204 ¶¶ 2-3; Ms. Crawford worked for Defendant at its Frisco and Grapevine locations. *Id.*, at App. 204 ¶ 3.

4.     Moreover, Plaintiffs agree with Defendant's assertion that Plaintiffs were paid $2.13 per hour for all hours worked (other than during their initial training period). *See Def's Br.,*

[Doc. 78 at p. 9]; *see also Henderson 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 246 [26:18-28:9]; *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 294 [23:10-16 and 25:8-11]; *Helgason Paychecks,* Pls Ex. 9 at App. 330-37; *Crawford Paychecks,* Pls Ex. 10 at App. 338-41; *Helgason and Crawford Labor Job Code*, Pls Ex. 21 at 430-44.

**B.    Defendant did not allow Plaintiffs to retain all their tips because it required Plaintiffs to pay for uniforms and incur other expenses.**

5.    Defendant asserts, without support, that "[o]ther than for governmentally required deductions, the only deduction from the Plaintiffs' tips was an amount representing 4.5% of their sales." *Def's Br.,* [Doc. 78 at p. 9]. However, in its Brief, Defendant specifically excludes seeking summary judgment regarding "the charges for uniforms and equipment allegedly imposed by [Defendant]." *Def's Br.,* [Doc. 78 at p. 6 n. 1].

6.    Nevertheless, Defendant's own evidence shows Plaintiffs were required to purchase for various uniform items and other tools to perform their jobs as Defendant required. *See Helgason Depo*, Pls Ex 3 at App. 099-102 [86:24-89:25]. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 316-17 [66:6-69:23]; *Henderson 30(b)(6) Corp Rep Depo,* [Pls Ex 7 at App. 255 [63:1-65:2]; *Deduction Forms*, Pls Ex 6 at App. 209-38; *Helgason Decl.,* Pls Ex 4 at App. 203 ¶¶ 22-24; *Crawford Decl.,* Pls Ex 5 at App. 207-08 ¶¶ 22-24; *Helgason Paychecks,* Pls Ex. 9 at App. 330-37; *Crawford Paychecks,* Pls Ex. 10 at App. 338-41.

**C.    Plaintiffs' tips were used to fund the wages of employees who were not present at the restaurant and not involved in serving the customer who left the tip.**

7.    Defendant required Plaintiffs (along with all its other servers) to contribute a portion of their tips to a tip pool. At all times during their employment, Plaintiffs were required to fund the tip pool with their tips at a rate of 4.5% of their sales for every shift they worked. *See Def's Resp to Pls Interrog.*, Pls Ex. 12 at App. 360 [Interrog. No. 9] ("tip pool contributions are determined

by a formula of 4.5% of the sales of each individual server.").

8.      Defendant used the tips it collected from its servers to fund its obligation to pay fixed hourly "wage commitments" guaranteed to its other employees—without regard to whether the employee worked with Plaintiffs or whether they worked the shift in which the customer who left the tip was dining at the restaurant. *See e.g.,* Def's Br., [Doc. 78 at pp 9-10]; *Def Resp to Pls Interrog.*, Pls Ex. 12 at App. 359-40, Interrog. No. 8].

9.      In its Motion, Defendant relies on the following conclusory statement to support its proposition that "no tip pool contributions from one location have ever been credited to, or distributed to, eligible tip pool recipients at any other location." *Def's Br.,* [Doc. 78 at p. 9] (citing *Def's App.*, Ex D [Pearson Decl. at p. 1] (D. Appx. 13)). Notwithstanding the conclusory proposition offered in its brief, Defendant's corporate representative testified that Defendant did in fact use tips from one location to pay employees working at a different location. *See Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 300 [47:16-49:20] (testifying an employee working at Grapevine location was paid using tips from Location 21 (i.e. Frisco location)).

10.     Moreover, as its designated corporate representative testified, Defendant has no evidence to show all individuals who received Plaintiffs' tips were working at the same location as Plaintiffs. *See Helgason Depo*, Pls Ex 3 at App. 068 [552-24]; *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 300 [47:16-49:20] (testifying an employee working at Grapevine location was paid using tips from Location 21 (i.e. Frisco location)); *Id.,* at App. 319 [78:17-25]; *Crawford Decl.,* Pls Ex 5 at App. 204-05 ¶¶ 5, 11; *see also Helgason Decl.,* Pls Ex 4 at App. 199-200 ¶¶4, 9; *see also Henderson 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 267 [112:3-8].

11.     Defendant also used Plaintiffs' tips to fund the wages of employees who Plaintiffs

never worked with nor ever met. *See Helgason Depo*, Pls Ex 3 at App. 068 [55:2-24[4]]; *Helgason Decl.,* Pls Ex 4 at App. 199-200 ¶¶4, 9; *Crawford Decl.,* Pls Ex 5 at App. 204-05 ¶¶ 5, 11.

12.     Plaintiffs were always required to contribute tips at a rate of 4.5% of sales to the tip pool, regardless of whether all positions were staffed or whether Defendant sent staff home early and required Plaintiffs to take on and complete their job duties. *See Helgason Depo*, Pls Ex 3 at App. 134 [121:12-13] (Plaintiff had to bus her own tables and scrape her own dishes); *id.* at App. 135 [122:18-21] (testifying that Defendant "would frequently [not have] bussers"); *id.* at App. 137-38 [124:16-125:13] (testifying that they bussed their own tables when no busser was working); *Helgason Clock Out Receipts*, Pls Ex 11 App. 342-54; *id.* at App. 345, 348] (noting no help and "very low busser help pall day" "no busser"); *see also Helgason Decl.,* Pls Ex 4 at App. 200 ¶ 10; *Crawford Decl.,* Pls Ex 5 at App. 204-05 ¶ ¶ 5, 11. Yet, Defendant still used Plaintiffs' tips to pay these nonexistent bussers for their time when working a different shift or performing nontipped duties.

13.     Finally, Defendant relies on tip share "recaps" and "summaries" that Defendant created for this lawsuit to support its contention that all tips collected were distributed from its tip pool. However, these records are inaccurate, cannot be authenticated, and otherwise inadmissible. *See e.g., Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 a at App. 299-300 [44:24-45:13, 45:25-46:4, 46:13-18]; *Henderson 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 266-67 [109:3-22, 110:8-18].

14.     Despite Defendant creating these "recaps" and "summaries" specifically for this lawsuit and putting aside the fact that these records are inadmissible, the "recaps" and "summaries" still show weeks where Defendant did **not** distribute all tips from its tip pool.

---

[4]     Defendant intentionally omits several pages from Helgason's deposition showing her testimony that she did not know several of the employees who Defendant purports were tip pool recipients. *Compare* Def's Br., [Doc. 78 at p. 16] (citing *Helgason Depo,* [Doc. 81 at pp. 100-101], *with Helgason Depo,* Pls Ex 4 at App. 068 [55:2-24] (testifying she did not know several of the purported tip pool recipients listed on Defendant's "recap").

*Compare 3/2/2018 Recap,* Pls Ex 23 at App. 448 (showing tips of **$9,453.14** *distributed* from the tip pool), *with 2018 Summary,* Pls Ex. 24 at App. 449 (**$9,588.94** total "Tipshare Collected" for the week of 3/2/2018).

**D.    Defendant used tips to fund the wages of its employees who were required to perform nontipped duties unrelated to serving customers.**

15.    In addition, Defendant fails to identify the job *duties* of the employees Defendant purports were "eligible tip pool recipients." In fact, other than a passing mention of some of the limited duties performed by the busser and the service well, [Doc. 78 at pp. 12 and 31], Defendant fails to offer any evidence of the job duties performed by other purported tip pool recipients.

16.    Notwithstanding Defendant's lack of evidence, several of the job-titles Defendant identified as tip pool recipients are assigned to employees who are engaged in nontipped occupations and required to perform nontipped duties such as cleaning bathrooms, scrubbing floors, plate scraping, and other nontipped or back-of-the-house duties. *See e.g., Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 320 [80:9-25] (used tips to pay employees who were cleaning bathrooms); *E-mails re Nontipped Duties*, Pls Ex 15 at App. 386, 389; *see also Suppl. E-mails re Nontipped Duties,* Pls App, Ex 22 at App. 446 [Email 6709] ("busser" added for plate scraping and cleaning); *Helgason Decl.,* Pls Ex 4 at App. 200 ¶¶ 7-11 (listing duties performed by bussers, food runners, etc.); *id.* at App. 199-200 ¶¶ 5-11; *Crawford Decl.,* Pls Ex 5 at App. 205-06 ¶¶ 6-11.

***1.   The job-title nomenclatures of the purported tip pool recipients are not consistent with nor indicative of the job duties they performed.***

17.    Defendant consistently makes the general, conclusory assertion that Plaintiffs' tips were distributed to "eligible tip pool recipients." However, when pressed to identify specifics, Defendant is unable to identify the job titles of the purported "eligible tip pool recipients." *Compare Recap for 12/27/19*, Def's App. 207, Ex Z [Doc. 81 at p. 207] (separately identifying the

16

purported tip pool recipient positions as "busser," "service well," "food runner," "bartender," and "host."), *with Def Resp to Pls Interrog.*, Pls Ex 12 at App. 359-60 [Interrog. No. 8] ("PRL responds that the job positions held by tip pool recipients were bussers, runners, server assistants, bartenders, and hosts/hostesses."); *also compare, Helgason Payroll Action Sheet*, Def's App. 7, Ex A [Doc. 81 at p. 7] (identifying the following positions that Defendant pays with tips bartender, busser, flambee, food runner, hostess, server assistant, cashier, barback, and service well), *with Tip Pool Guide*, Def's App. 43, Ex I [Doc. 81 at p. 43] (stating that servers tips are used to pay "Hostesses, Food Runners, Bussers, Bartenders").

18.    More specifically, for example, Defendant purports to use Plaintiffs' tips to pay a position Defendant refers to the "barback." However, the "barback" position is lumped together with and clocks in as a "busser" despite being a different position with different job duties. *See Freeman 30(b)(6) Corp Rep Depo*, Pls Ex 8 at App. 293 [19:10-22]; *Id.* at App. 296-97 [33:5-34:1]; *Recap for 12/27/19*, Def's App. 207, Ex Z [Doc. 81 at p. 207] (identifying "bussers" but not "barbacks"); *Helgason Payroll Action Sheet*, Def's App. 7, Ex A [Doc. 81 at p. 7] (identifying "busser" and "barback" as separate and distinct positions that Defendant pays with tips).

19.    As another example, Defendant purportedly uses Plaintiffs' tips to pay a position Defendant refers to as "server assistants" but who are lumped together with and clocked-in as "bussers" even though they perform different duties. *See Henderson 30(b)(6) Corp Rep Depo*, Pls Ex 7 at App. 258-59 [77:23-78:6]; *Freeman 30(b)(6) Corp Rep Depo*, Pls Ex 8 at App. 295 [29:10-22]; *Greg Grady Decl.*, Def's App. 20, Ex E [Doc. 81 at p. 20] (stating that "bussers" are "referred to as 'Server Assistants'"); *Recap for 12/27/19*, Def's App. 207, Ex Z [Doc. 81 at p. 207] (identifying "bussers" but not "server assistants"); *Helgason Payroll Action Sheet*, Def's App. 7, Ex A [Doc. 81

at p. 7] (identifying "busser" and "server assistant" as separate and distinct positions that Defendant pays with tips).

20.     Defendant's inconsistent and arbitrary reference to the job-title nomenclatures has only been exacerbated with the filing of Defendant's Brief, where, on summary judgment, Defendant now refers to the "service well" as "service well *assistants.*" *Compare Def's Br.,* [Doc. 78 at p. 30], *with Freeman 30(b)(6) Corp Rep Depo*, Pls Ex 8 at App. 293 [19:6-9] (identifying tip pool recipients to separately include "server assistant, . . . [**and**] service well."), *and Id.* Pls Ex 8 at App. 296 [32:5-8] (acknowledging "service well" means the same thing as "service bartender"), *and Recap for 12/27/19*, Def's App. at 207, Ex Z [Doc. 81 at p. 207] (separately identifying purported tip pool recipient positions to separately include "service well," and "bartender").

21.     Defendant not only fails to consistently identify the job-titles of the purported tip pool recipients, but any job-titles it does identify are not indicative of the job duties actually performed by the employee. *See e.g., E-mails re Nontipped Duties*, Pls Ex 15 at App. 386 [Email 6683] (noting busser working as "dish scraper"); *Suppl. E-mails re Nontipped Duties*, Pls Ex 22 at App. 447 [Email 006698] (eight individuals clocked in as "bussers" for "situational/roleplay scenarios"); *Id.* at App. 446 [Email 6709] ("busser" added for "plate scraping" and deep cleaning); *Id.* at App. 445 [Email 6719] (email requesting employee's job codes be modified for payroll); *Freeman 30(b)(6) Corp Rep Depo*, Pls Ex 8 at App. 293 [19:3-19] (". . .the barback position generally clocks in as busboy.").

   *2.  Defendant used tips to pay the "service well" who did not interact with customers and worked in the back-of-the house.*

22.     Defendant used Plaintiffs' tips to pay the "service well" (a/k/a service bartender) who did not interact with or serve customers, but instead were confined to working in the kitchen.

```
 9      Q.     Now, was there ever a time when the
10  service bartender or service well was paid more than
11  2.13 an hour in a direct wage?
12      A.     Not that I recall.
13      Q.     So had service bartenders always
14  received tips from the tip pool?
15      A.     I believe they have, yes.
16      Q.     At the Perry's in Grapevine, where is
17  the service well located?
18      A.     It's in the kitchen near the beverage
19  station.
20      Q.     Can customers walk in there and order a
21  drink from the service well?
22      A.     No.
```

*Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 296 [31:23-32:22]; *Helgason Depo*, Pls Ex 3 at App. 075-76 (62:23-63:16); *Helgason Decl.,* Pls Ex 4 at App. 199-200 ¶¶5-6; *Crawford Decl.,* Pls Ex 5 at App. 205 ¶¶ 6-7.

23.     Unlike bartenders, the service well did not have *any* contact with customers. *Helgason Depo*, Pls Ex 3 at App. 075-76 (62:23-63:16) (testifying "guests cannot access the service well" . . . "[a]gain, [service bartenders] don't have any contact with guests."); *see Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 296 [32:23-33:4] (bartender position is a promotion up from the service well position); *Crawford Decl.,* Pls Ex 5 at App. 205 ¶¶ 6-7.

### *3. Defendant used tips to pay "bussers" while they were engaged in nontipped occupations*

24.     Defendant used Plaintiffs' tips to pay bussers while they performed various non-tipped tasks such as cleaning the restaurant. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 320 [80:9-15]. Defendant paid bussers using Plaintiffs' tips to clean the restrooms.

```
16      Q    Okay.  And are bussers responsible for
17  cleaning the restrooms?
18      A    Yes.
```

*Id.,* Pls Ex 8 at App. 320 [80:16-18]; *see also Id.,* Pls Ex 8 at App. 295 [29:10-12] (bussers are paid $2.13 per hour).

25.     The bussers were engaged in dual jobs performing nontipped work including cleaning duties, kitchen duties, and back-of the house maintenance duties. Specifically, the bussers were responsible for job duties that included prep duties, removing bus tubs with dirty dishware from specific landing spots throughout the restaurant and preformed bathroom checks, emptied the trash, vacuumed and mopped all floors, and scrapped dirty dishes. *Helgason Decl.,* Pls Ex 4 at App. 200 ¶ 8; *Crawford Decl.,* Pls Ex 5 at App. 205 ¶ 9; *see also E-mails re Nontipped Work Assignments and Duties*, Pls Ex 15 at App. 382-390.

### 4.   *Defendant used tips to pay "barbacks" while they were engaged in nontipped occupations*

26.     Defendant used Plaintiffs' tips to pay barbacks to perform various non-tipped tasks. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 293 [19:10-13]; *Id.,* at App. 296 [33:5-34:1]. The barbacks job was to assist the bartenders, not the servers—yet Defendant paid the barbacks using tips that servers (and only servers) contributed to the tip pool. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 320 (80:9-15); *Henderson 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 259-60 [81:13-83:5].

27.     In its brief, Defendant fails mention that it used Plaintiffs' tips to pay "barbacks." Defendant simply failed to provide any evidence of the job duties performed by its barbacks.

28.     The barbacks were responsible for completing nontipped job duties such as, loading and unloading the bar dishwasher, refiling the bar ice bins, and emptying and taking out the bar garbage. *See Helgason Decl.,* Pls Ex 4 at App. 200 ¶ 9; *Crawford Decl.,* Pls Ex 5 at App. 205 ¶ 11.

29.     During several of Plaintiffs' shifts, Defendant did not schedule a barback to work and no barback was working. However, even when no barback was present, Defendant still deducted the entire 4.5% of sales from Plaintiffs' tips, and used Plaintiffs' tips to pay the barbacks who did not work with or support Plaintiffs because they were not working that shift. *See Id.,* Pls Ex 4 at App. 200 ¶ 9; *Id.,* Pls Ex 5 at App. 205 ¶ 11.

30.     Oftentimes, Defendant did not schedule a barback to work and no barback was working during Plaintiffs' shifts. However, even when no barback was present, Defendant still always deducted the entire 4.5% of sales from Plaintiffs' tips, and then used their tips to pay the barbacks who did not provide *any* service to the customer who left the tip because the barback was not even present at the restaurant working that shift. *See Id.,* Pls Ex 4 at App. 200 ¶ 9; *Id.,* Pls Ex 5 at App. 205 ¶ 11.

31.     The same was true for other positions (e.g. bussers and food runners)—Defendant deducted the entire 4.5% of sales from Plaintiffs' tips even though there were no bussers or food runners working that shift. Yet, Defendant used Plaintiffs' tips to pay the food runners and bussers despite Plaintiffs not having a food runner and/or busser.  *Id.,* Pls Ex 4 at App. 200 ¶ 10; *Id.,* Pls Ex 5 at App. 204-05 ¶ ¶ 5, 11.

### 5.   *Defendant used tips to pay "food runners" who were engaged in nontipped occupations.*

32.     Defendant paid food runners $2.13 for all hours worked, which was then supplemented using Plaintiffs' tips from the tip pool. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 296 [30:14-16] (food runners are paid $2.13 per hour).

33.     Food runners worked primarily in the kitchen. The chef assigned the food runners their job duties. The food runners worked in the kitchen area from "the line" (also known as the expo line, which was located in the kitchen) and were responsible for setting up "the line" and preparing "the line" with garnishes and sauces, cutting porkchops, and prepping for flambee orders and restocked flambee carts, setting up and cleaning the bread station, bread cutting, and cleaning and scrubbing the floors. *See Helgason Decl.,* Pls Ex 4 at App. 200 ¶ 7; *Crawford Decl.,* Pls Ex 5 at App. 205 ¶ 8; *E-mails re Nontipped Work Assignments and Duties*, Pls Ex 15 at App. 382-390.

34.     In addition, food runners were responsible for scrubbing floors at the restaurant. *See*

*E-mails re Nontipped Work Assignments and Duties*, Pls Ex 15 at App. 389.

### 6. *Defendant used tips to pay "hostesses" while they were engaged in nontipped occupations*

35.      Defendant used tips to pay hosts/hostesses who "were responsible for making sure that bathrooms had been cleaned[.]" *Anthony Garcia Decl.,* Def's App. 384-85, Ex. VV [Doc. 81 at pp. 384-85] ("Typically, the hosts/hostesses were responsible for making sure that bathrooms had been cleaned[.]").

36.      Indeed, Defendant paid hostesses using tips for all their time, including times when they were required to engage in nontipped duties such as: bathroom checks, reservations, answering phones, cleaning menus and bar books, cleaning coat closet, and vacuuming the restaurant. *See Helgason Decl.,* Pls Ex 4 at App. 200 ¶ 11; *Crawford Decl.,* Pls Ex 5 at App. 205 ¶ 10; *see also Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 320 [80:19-22]; *id.,* at App. 296 [30:10-12] (hostesses paid $2.13 per hour); *see also E-mails re Nontipped Work Assignments and Duties*, Pls Ex 15 at App. 385-86.

### E.      Defendant paid Plaintiffs $2.13 for nontipped work assigned to them each shift, including nontipped work before and after each shift when the restaurant was closed.

37.      Plaintiffs were always paid $2.13 per hour, regardless of the time spent performing non-tipped job duties or the type of job duties performed. *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 294 [23:10-16 and 25:8-11]; *Id.,* at App. 297 [37:3-5]; *see also Helgason Paychecks,* Pls Ex. 9 at App. 330-337; *Crawford Paychecks,* Pls Ex. 10 at App. 338-341; *Helgason and Crawford Labor Job Code*, Pls Ex. 21 at 430-44.

38.      Plaintiffs spent approximately 35% to 55% of their time each shift performing non-tipped job duties before, during, and after their shift at a rate of $2.13 per hour. *See Helgason Decl.,* Pls Ex 4 at App. 201 ¶ 15; *Crawford Decl.,* Pls Ex 5 at App. 206 ¶ 17.

39.    Plaintiffs were required to perform a number of non-tipped duties, both, *related* and *unrelated* to their tipped occupation as servers including resetting chairs and tables, cleaning tables, and taking back to the kitchen and emptying buss tubs filled with cast iron plates, pork chop boards, and a myriad of other plate ware; cleaning different areas of the restaurant; dishwasher duties (i.e. polishing glassware and silverware and cleaning steak trays, pork chop boards, and other plate ware); and preparing bread for the oven and whipping butter to pipe into ramekins. *See Id.,* Pls Ex 4 at App. 201-03 ¶¶ 12-21; *Id.,* Pls Ex 5 at App. 206-07 ¶¶ 12-21; *Anthony Garcia Decl.,* Def's App. 384, Ex. VV [Doc. 81 at p. 384] ("During the time I have worked as a Manager at the Grapevine location, I understood that there was side work to be done that was not related to being a server.").

40.    Plaintiffs were also responsible for wiping down tables and booths, placing candles on tables, organizing and aligning chairs and tables, cleaning and arranging menus, setting up and filling tea and water pitchers, ensuring that linens were properly placed on tables, and various other non-tipped job duties as required. *See Id.,* Pls Ex 4 at App. 201-03 ¶¶ 12-21; *Id.,* Pls Ex 5 at App. 206-07 ¶¶ 12-21; *Anthony Garcia Decl.,* Def's App. 384, Ex. VV [Doc. 81 at p. 384] ("During the time I have worked as a Manager at the Grapevine location, I understood that there was side work to be done that was not related to being a server.")

41.    At the beginning and ending of each shift, Plaintiffs also performed and completed a set number of non-tipped job duties listed on the "item count list" "opening checklist" and "closing checklist." *See Id.,* Pls Ex 4 at App. 201-03 ¶¶ 12-21; *Id.,* Pls Ex 5 at App. 206-07 ¶¶ 12-21; *see also Helgason Email Re Checklists*, Pls Ex 14 at 378-381; *Nontipped Duties and Checklists*, Pls' Ex 16 at App. 391-395.

42.    During an opening shift, Defendant required Plaintiffs to perform and complete all

"opening checklist" items before their first table could be seated. *See Helgason Decl.,* Pls Ex 4 at App. 201 ¶ 15; *Crawford Decl.,* Pls Ex 5 at App. 206 ¶ 17; *Helgason Email Re Checklists*, Pls Ex 14 at 378-381; *Nontipped Duties and Checklists*, Pls' Ex 16 at App. 391-395 [opening duties checklist].[5] This included, organizing chairs, aligning stools around the bar, placing candles on tables, cleaning and arranging books (i.e. bar menus), aligning and leveling tables, setting up patio tables with books and center pieces, setting up ice buckets, wiping down barstool legs, completing pork chop folds, setting up and filling tea and water pitchers, dusting the piano, dusting TV's, dusting ledges, verifying all plates and glassware were polished and stocked, checking the linens on tables for proper placement, and any other non-tipped duties as Defendant directed and required. *Id.,* Pls Ex 4 at App. 201-03 ¶¶ 12-21; *Id.,* Pls Ex 5 at App. 206-07 ¶¶ 12-21; *see also Clock Out Receipts*, Pls Ex. 11 at App. 342-345; *Helgason Email and Checklists*, Pls Ex 14 at 378-381; *Nontipped Duties and Checklists*, Pls' Ex 16 at App. 391-395.

43.     During the closing shift, Defendant required Plaintiffs to perform and complete all items on the "closing checklist," such as polishing and restocking burgundy, white wine, and champagne stems, cleaning and restocking water coolers, polishing and restocking glasses, stocking and polishing dessert spoons, serving spoons, and tea spoons, stocking and polishing steak knives and dinner forks, pumping ports (i.e. pumping air out of wine towers), restocking the to-go station, filling and wiping salt and pepper shakers, stocking and polishing plates, completing daily clean up duties, cleaning and polishing ice buckets, polishing and restocking magnum decanters, snifters, white wine stems, carafes, highballs, and rocks glasses in the wine bar, removing candles from

---

[5]     *See Clock Out Receipts*, Pls Ex. 11 at App. 342-345; *Helgason Depo*, Pls' Ex 3 at App. 117-18, 120 [104:23-105:4, 107:1-6; 107:12-18]; *E-mails re Nontipped Duties*, Pls' Ex 15 at App. 382-390.

tables, wiping down booths, ensuring that patio is broken down and cleaned, and any other closing job duties as Defendant directed and required. *Id.,* Pls Ex 4 at App. 201-03 ¶¶ 14-17, 21; *Id.,* Pls Ex 5 at App. 206-07 ¶¶ 12, 15, 17-18, 20-21; *see also Nontipped Duties and Checklists*, Pls' Ex 16 at App. 391-395 [closing duties checklist].

44.    Plaintiffs were also required to complete all tasks (i.e. non-tipped job duties) on the "item count checklist." [6] These nontipped tasks included cleaning and filling a total of 12 sugar caddies and 12 sets of salt and pepper shakers; cleaning and polishing a total of 12 steak knife plates, 4 fork and butter knife plates; 2 plates (approximately 15-30) of spoons (serving, tea, dessert), 6 stacks (approximately 25-30) of bread and butter plates and 5 stacks (approximately 25-30) of appetizer plates; polishing and rolling a total of 230 rolls of silverware (50 extra – for a total of 280 rolls of silverware on Sunday, Monday, Tuesday, and Wednesday); and cleaning, polishing, and placing 10 rock glasses in fridge and 3 snifters, 20 white wine stems, 3 decanters and 30 carafes in the wine tower. *Id.,* Pls Ex 4 at App. 202 ¶¶ 21; *Id.,* Pls Ex 5 at App. 207 ¶ 21; *see also Nontipped Duties and Checklists*, Pls' Ex 16 at App. 391-95; *Helgason Email and Checklists*, Pls Ex 14 at 378-81 [item count list]; *see also Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 320 [82:8-18] (does not know if Helgason or Crawford were required to roll silverware).

45.    Plaintiffs were also assigned all opening, closing, and running duties when assigned to open and close. *Helgason Depo*, Pls Ex 3 at App. 108 [95:1-8]; App. 112 [99:19-22]; App. 116 [103:6-9]; App. 120 [107:1-6]; *Greg Grady Decl.*, Def's App. at 19, Ex. E [Doc. 81 at p. 19] (stating that "**One** (or *sometimes* two) individual servers would be designated to be the 'opener' at each

---

[6]    *See Helgason Depo*, Pls' Ex 3 at App. 156, 158 [143:21-23; 145:10-13; 145:15-16]; *see also Helgason Email and Checklists*, Pls Ex 14 at 378-81.

shift."); *Anthony Garcia Decl.,* Def's App. 385, Ex. VV [Doc. 81 at p. 385] ("At the Grapevine location, Perry's required that **one** server be designated to be the 'opener' on weeknight shifts, and *one to two* servers be designated as the 'opener' on weekend night shifts.") (emphasis added).

46.     Plaintiff Crawford estimates she spent approximately 35% to 45% of her time performing non-tipped job duties. *See Crawford Decl.,* Pls Ex 5 at App. 206 ¶ 17. Plaintiff Helgason estimates that she spent approximately 45% to 50% of her time performing non-tipped job duties. *See Helgason Decl.,* Pls Ex 4 at App. 201 ¶ 15; *see also Helgason Depo*, Pls Ex 3 at App. 120 [107:1-6] (every shift, with the exception of Saturdays, was required to arrive at 3:00 p.m. and could not leave until all closing duties were complete—between midnight and 2:00 a.m.); *see also Helgason Clock Out Receipts*, Pls Ex 11 App. 344-45; 348-49; 353-54; *Greg Grady Decl.*, Def's App. 19, Ex. E [Doc. 81 at p. 19] (openers arrived one hour before the restaurant opened); *Anthony Garcia Decl.,* Def's App. 385, Ex. VV [Doc. 81 at p. 385] (stating openers arrived one hour before the restaurant opened); cf. *E-mails re Nontipped Duties*, Pls Ex 15 at App. 385 [Email 006682] (requiring *all* servers to come in early at 9:30 a.m., and noting all sidework was completed one and one-half hours later when restaurant opened at 11 a.m.); *Id.,* Pls Ex 15 at App. 386 [Email 006683] (stating host stopped seating openers at around 3-3:15 p.m. who were then required, in addition to the opening duties they completed, to complete closing duties until 4:30 p.m.).

47.     Plaintiffs were required to perform non-tipped work on the expo line in the kitchen area (for 30 to 45 minutes each shift), including polishing serving spoons and dessert spoons stored and located in the kitchen across the expo line, and preparing and filling ramekins with applesauce, butter, ketchup. *See Helgason Decl.,* Pls' Ex 4 at App. 202 ¶ 19; *Crawford Decl.,* Pls' Ex 5 at App. 206 ¶ 17; *see also Helgason Email and Checklists*, Pls Ex 14 at 378-81; *E-mails Discussing Nontipped*

*Assignments and Duties*, Pls' Ex 15 at App. 382-390; *id.,* at App. 384 [Email 006680] (servers responsible for polishing all ramekins, serving utensils, and additional silverware needed); *id.,* at App. 389 [Email 006695] (servers responsible for polishing serving spoons and dessert spoons stored across expo line).

48.     Finally, Plaintiffs were paid $2.13 to attend required meetings. *Helgason Depo*, Pls Ex 3 at App. 130 [117:18-23] (required to attend meetings); Also, throughout their employment on an ongoing basis, Plaintiffs were required to attend meetings and participate in training including taking and passing written tests throughout their employment. *See Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 8 at App. 294-95 [25:8-26:19].

## IV.     THE TIP CREDIT DEFENSE

### A.  An employer must prove compliance with the tip credit and even then, an employer may only use the tip credit during limited times and for limited purposes.

Employers may pay tipped employees—employees who receive tips from customers— as little as $2.13 per hour by utilizing customer's tips to make up the difference between the full minimum wage of $7.25 and $2.13. *See* 29 U.S.C. §§ 203(m), (t).  The use of tips to supplement an employee's wages is known as the "tip credit." *See Montano*, 800 F.3d at 188 (citing 29 U.S.C. § 203(m)). Under the tip credit payment scheme, an employer may only take a tip credit "for hours worked by [an] employee in an occupation in which the employee qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59.

### B.  Defendant "has the burden to prove its entitlement to the tip credit."

Defendant baldly asserts—without *any* legal support—that Plaintiffs "have the burden to show improper processing of these tip pool distributions[.]" *Def's Br.*, [Doc. 78 at p. 7]. Contrary to Defendant's unsupported assertion, the Fifth Circuit has made it clear the employer "has the

burden of establishing its entitlement to the tip credit." *Montano*, 800 F.3d at 189 (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (holding that a restaurant "had the burden to prove it operated a legal tip pool"); *Ettorre*, 2022 U.S. App. LEXIS 7295, at *6 ("[defendant] has the burden to prove its entitlement to the tip credit") (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'. . . Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.")).

In addition, as the party holding the burden of proof, Defendant "must satisfy a higher standard to obtain summary judgment." *Turner v. Republic Waste Servs. of Tex.,* 2016 U.S. Dist. LEXIS 169746, *6 n.2 (N.D. Tex. 2016). It must establish "beyond peradventure" all the essential elements of its defense. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986)); *O'Donnell v. Diaz*, No. 3:17-cv-1922-S, 2019 U.S. Dist. LEXIS 38659, at *2-3 (N.D. Tex. Mar. 11, 2019) (Scholer, J.). The "beyond peradventure" standard is "heavy." *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 2007 U.S. Dist. LEXIS 62105, *32 (N.D. Tex. 2007).

## V.    DEFENDANT'S TIP CREDIT DEFENSE FAILS AS MATTER OF LAW

### A.    Plaintiffs did not retain all their tips

Section 203(m) of the FLSA requires that an employee be permitted to retain <u>all</u> their tips with one exception: tips contributed to a valid and lawful tip pool. *See* 29 U.S.C. § 203(m); *Whitehead v. Hidden Tavern, Inc.*, 765 F.Supp.2d 878, 883 (W.D. Tex. 2011) (granting summary judgment where restaurant failed to prove that it met the requirements of the tip credit provision and stating "[t]he language in Section 203(m) is clear that 'all tips' received by tipped employees

28

must be retained by the tipped employees. Accordingly, an employer cannot keep the tips of a tipped employee as such constitutes a violation of the FLSA.").

Here, although excluded from Defendant's motion for summary judgment, Plaintiffs did not retain all tips because Plaintiffs were required to purchase uniforms, tools, and other items, which destroy Defendant's ability to assert the tip credit. Indeed, there is no dispute that Plaintiffs did not retain all tips because they were required to purchase[7] uniforms, tools, and other items needed in their jobs and required by Defendant. Pls SOF ¶¶ 5-6. The FLSA is clear, an employer may not pay an employee using the tip credit and require them to pay for uniforms or any other item that is not a "facility." *See Ettorre*, 2022 U.S. App. LEXIS 7295, at *9 ("any facility provided that is 'primarily for the benefit or convenience of the employer' is not a reasonable cost. [29 C.F.R.] § 531.3(d)(1); *see also Shultz v. Hinojosa*, 432 F.2d 259, 266 (5th Cir. 1970) (citing 29 C.F.R. § 531.3(d)(1) and (d)(2)); *Nail v. Shipp*, 2019 U.S. Dist. LEXIS 132072, at *22 (S.D. Ala. 2019).").

Accordingly, viewing the facts (the only facts in the record) in the light most favorable to Plaintiffs, there is only one possible outcome: Defendant's summary judgment must be denied because Plaintiffs were required to pay for items that were not "facilities." Pls SOF ¶¶ 5-6 Defendant chose to shift these costs to Plaintiffs, and in doing so, Defendant violated the FLSA's tip credit and anti-kickback provisions. *See Ettorre*, 2022 U.S. App. LEXIS 7295, at *9 (Any deduction "violates § 203(m) unless the 'facilities' it covers counts as a 'wage.'"); 29 C.F.R. § 531.3(d)(2) (the cost of furnishing uniforms and of their laundering is an expense that is "primarily for the benefit or convenience of the employer [and] will not be recognized as reasonable.").

---

[7] For purposes of complying with the tip credit, it makes no difference whether the deduction was taken from Plaintiffs' wages or tips, because either way the deduction violates the tip credit because it either reduces their hourly wage below $2.13 or is a retention of tips. *See Mayhue's Super Liquor Stores, Inv. V. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

In addition to paying for items that were not "facilities," it is also undisputed that Defendant required Plaintiffs to contribute a portion of their tips (4.5% of each Plaintiff's sales) to a tip pool.  Although the FLSA does permit the lawfully pooling of tips, Section 203(m) makes clear that the tip credit shall not apply unless "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customily and regularly receive tips." 29 U.S.C. 203(m); *see also* 29 C.F.R. § 531.54(c) ("The employer may require an employee for whom the employer takes a tip credit to contribute tips to a tip pool ***only if*** *it is limited to employees who customarily and regularly receive tips.*") (emphasis added); 29 C.F.R. § 531.52(a) ("An employer . . . is prohibited from using an employee's tips *for **any** reason* other than . . . in furtherance of a *tip pool limited to employees who customarily and regularly receive tips.*") (emphasis added).

Defendant has no evidence and otherwise failed to prove—beyond peradventure—that it distributed all tips from the tip pool solely among customarily and regularly tipped employees. *See Montano*, 800 F.3d at 189; *Roussell*, 441 F. App'x at 230 (employer has "the burden to prove it operated a legal tip pool"); *O'Donnell*, 2019 U.S. Dist. LEXIS 38659, at *2-3 ("If the movant bears the burden of proof on a . . . defense . . . it must come forward with evidence that establishes 'beyond peradventure all of the essential elements of the . . . defense.'") (citation omitted).

## B. Defendant failed to show that its tip pool was fully distributed solely among customarily and regularly tipped employees.

Despite Defendant's attempt to reframe the issue, the issue is not whether Defendant actually "retained" any portion of the tip pool for "itself." *See* Def's Br., [Doc. 78 at p. 32]; cf. Pls Complaint, [Doc. 1 at p. 3 ¶ 5]. Instead, the issue is whether Defendant allowed Plaintiffs to retain all tips other than tips contributed to a tip pool that was fully distributed solely among customarily

and regularly tipped employees. *See Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D, 2020 U.S. Dist. LEXIS 106701, at *9 (N.D. Tex. June 18, 2020) (invalidating tip credit where employer had no evidence its tip pool was fully distributed solely among customarily and regularly tipped employees); *Guillory v. PF&B Mgmt., LP*, 2013 U.S. Dist. LEXIS 39484, 2013 WL 1181439, at *5 (S.D. Tex. Feb. 27, 2013) ("If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA."), *rec. adopted*, 2013 U.S. Dist. LEXIS 38434, 2013 WL 1182061 (S.D. Tex. Mar. 20, 2013).

Therefore, it is irrelevant—and Plaintiffs are certainly not required to show—how Defendant used the tip pool funds (e.g., to pay for inventory or supplies, to pay the wages of non-tip eligible employees, or for any purpose other than in furtherance of a valid tip pool). *See* 29 C.F.R. § 531.52(a) ("An employer . . . is prohibited from using an employee's tips for any reason other than [ . . . ] in furtherance of a tip pool limited to employees who customarily and regularly receive tips."). The only relevant inquiry is whether Defendant can show that it fully distributed all tip pool monies solely among customarily and regularly tipped employees—beyond that, whether Defendant affirmatively "retained" tips from the tip pool is wholly irrelevant.

To support its contention that all tips collected were distributed from its tip pool, Defendant relies solely on tip share "recaps" and "summaries" it created for this lawsuit. *See* Section II. A, supra. However, these records are inaccurate, cannot be authenticated, and are otherwise inadmissible. *Id.* Because Defendant relies solely on three-weeks of inadmissible records, Defendant cannot show and otherwise has no admissible evidence to prove all tips contributed to the tip pool were distributed from the tip pool. *Id.*; cf. Pls SOF ¶ 14. Despite the inadmissibility of

these records, Defendant only attaches a three-weeks of "recaps" purportedly showing the distribution of tips for a three-week period, and although inadmissible, would still be insufficient to support Defendant's burden to prove it fully distributed the tip pool <u>every</u> week during Plaintiffs' employment. *But see,* Pls SOF ¶¶ 16, 21. Finally, as discussed in detail below, Defendant failed to show evidence that it fully distributed the tip pool each week solely among lawful tip pool recipients (i.e. among customarily and regularly tipped employees).

### 1. *Whether a tip is to be given, and its amount, are matters determined solely by the customer.*

A "tip" within the meaning of the FLSA is defined as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him . . . . Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity." *Montano*, 800 F.3d at 190 (quoting 29 C.F.R. § 531.52) ("Whether a tip is to be given, and its amount, are matters determined solely by the customer."); *see also United States v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980) (defining a "tip" as "a voluntary payment in an amount, and to a person, designated by the customer"). Unlike tips that are given directly to a recipient—e.g., a parking attendant or bellhop—restaurant tips are left on the table, and are usually "undesignated." *See Austin v. Colonial Wiliamsburg Hotel Props., Inc.*, No. 4:95CV130, 1996 U.S. Dist. LEXIS 11607, 1996 WL 406671, at *1 (E.D. Va. June 14, 1996) ("The tips which are left after a meal are ordinarily undesignated. That is, the customer will ordinarily leave one tip and not designate to whom any portion of the tip should be given.").

In *Montano* the court stated, "[e]ven without direct evidence of the intended recipients of the tips, we can employ several tools to infer who the recipients are." *Montano*, 800 F.3d at 190. The Fifth Circuit then established the following rule – "in determining whether an employee customarily and regularly receives tips, a court — or a factfinder — must consider the extent of an

employee's customer interaction," as well "whether the employee is engaging in customer service functions." *Montano*, 800 F.3d at 193.

"This rule," the Fifth Circuit held, "is faithful to the goal of the inquiry: determining the customer's intent. A customer is more likely to tip someone with whom he has contact, or at least sees assisting in the service." *Montano*, 800 F.3d at 193. It is axiomatic that a customer could only intend to tip an employee who is present during the shift when the customer was dining at the restaurant. Indeed, it is the employee's job *duties* "during the shifts in question" that matter. *See Montano*, 800 F.3d at 192 n.11 (relying on the holding in *Myers* where "[t]he [Sixth Circuit] found it irrelevant that the 'salad preparers' were waiters who were assigned to prepare salads for certain shifts. What mattered was their *job duties* during the shifts in question, *not* their titles.") (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999)) (emphasis added); *Roussell*, 441 F. App'x 222, 233 ("servers working an occasional QA shift are, just like QAs, ineligible to participate in mandatory tip pools during those shifts."); *see also Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091-X, 2021 U.S. Dist. LEXIS 132407, at *3-4 (N.D. Tex. July 15, 2021) (finding employer violated the tip credit where "an employee... was tipped out as a *busser* while clocked in as a *dishwasher*."), *report and recommendation adopted*, 2021 U.S. Dist LEXIS 148389 (N.D. Tex. 2021).

Here, Defendant concedes it used customer's tips to pay the wages of its other employees who were not present at the restaurant—much less engaged in a tipped occupation—when the customer who left the tip was dining, and therefore, employees who received the tips were not involved *whatsoever* in serving the customer who left the tips. And using tips to pay employees who were not working at the restaurant when the customer who left the tip was dining, violates the clear

rule set forth by the Fifth Circuit. *See Montano*, 800 F.3d at 193. To hold otherwise would violate "the goal of the inquiry: determining the customer's intent." *Id.*

A customer simply could not have interacted with, and therefore, could not intend to tip one of Defendant's employees who was not present, at all, at the restaurant—much less engaged in a tipped occupation—during the shift in question. *Id.* ("A customer is more likely to tip someone with whom he has contact, or at least sees assisting in the service."). By using tips to pay its employees who were not working during the shift in question—much less engaged in a tipped occupation—Defendant violated the tip credit as a matter of law.

### 2. Contrary to Defendant's suggestion, it is a tip pool recipient's *job duties "during the shifts in question"* that matter.

Despite Defendant's reliance on *Montano* to support its proposition, [Doc. 78 at p. 31, n. 11], in *Montano* the court did *not* address the period over which an employee's activities are to be examined to determine whether they customarily and regularly received tips in their occupation. *See Reyes v. Topgolf Int'l, Inc.*, No. 3:17-CV-0883-S, 2018 U.S. Dist. LEXIS 141736, at *9 n.6 (N.D. Tex. Aug. 2, 2018) ("Defendants also cite to the 5th Circuit's decision in *Montano*, but they note in their reply that the *Montano* court did not address whether allegations about duties over the 'course of a workweek' are necessary because that court 'was not required to address the period over which an employee's activities are to be examined in order to determine whether he or she "customarily and regularly received tips" in his or her occupation.'").

In fact, contrary to Defendant's proposition, courts uniformly hold that it is a tip pool recipient's job duties "during the **shifts** in question" that matter. *See Montano*, 800 F.3d at 192 n.11 (relying on the holding in *Myers* where "[t]he [Sixth Circuit] found it irrelevant that the 'salad preparers' were waiters who were assigned to prepare salads for certain **shifts**. What mattered was

34

their *job duties* during the **shifts** in question, *not* their titles.") (citing *Myers*, 192 F.3d at 548, 550-51) (emphasis added); *Roussell*, 441 F. App'x 222, 233("servers working an occasional QA **shift** are, just like QAs, ineligible to participate in mandatory tip pools during those **shifts**."); s*ee also, e.g., Lopez,* 2021 U.S. Dist. LEXIS 132407, at *3-4 (finding employer violated the tip credit where "an employee... was tipped out as a **busser** while clocked in as a **dishwasher**.")(emphasis added).

### 3. *The test for whether an employee may properly be paid using tips is fact-intensive and "a restaurant's job-title nomenclature is not dispositive."*

Although Defendant baldly asserts that Plaintiffs have the burden of proof, [Doc. 78 at p. 32], this assertion is nothing more than a bungled attempt to shift the burden and avoid its burden to "prove it operated a legal tip pool[.]" *Roussell*, 441 F. App'x at 230 (employer has "the burden to prove it operated a legal tip pool").

Also contrary to Defendant's assertion, [Doc. 78 at p. 31], the determination of whether an employee is a proper tip pool participant "is necessarily fact intensive because restaurants vary on the type of duties assigned to each of their employees." *Barrera v. MTC, Inc.*, Civil Action No. SA-10-CA-665 XR, 2011 U.S. Dist. LEXIS 83468, at *14-15 (W.D. Tex. July 29, 2011) (citing *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 730 (W.D. Tex. 2010)). "The legal test, therefore, requires an assessment of the actual duties performed by the particular employee in question." *Id*. Indeed, "[t]he fact that he or she is part of a group which has a record of receiving more than $30 a month in tips will not qualify him or her." 29 C.F.R. § 531.56.

In *Montano*, the Fifth Circuit held that, "whether an employee is one who 'customarily and regularly receives tips' is a fact-intensive inquiry that requires a case-by-case analysis of the employee's duties and activities." Montano, 800 F.3d at 194. Critical to the analysis is the job duties the employee performed during the shifts in question*, not* their title. *See Montano*, 800 F.3d

186, 192 n.11 (citing *Myers*, 192 F.3d at 548, 550-51); *Reyes*, 2018 U.S. Dist. LEXIS 141736, at \*11 n.7 ("The fact that these employees were called 'muckers' and not 'dishwashers' is not dispositive in characterizing them as tipped or non-tipped employees because 'a restaurant's job-title nomenclature is not dispositive.'" quoting *Barrera*, 2011 U.S. Dist. LEXIS 83468, at \*4-5) (citation omitted).

Indeed, while the generic job title "busser" is an example of an employee permitted to receive tips, "[t]he [DOL] opinion letters make clear that one's status as an employee who 'customarily and regularly receives tips' is 'determined on the basis of his or her activities,' not on the employee's job title." *See Montano*, 800 F.3d 186, 191 (citing U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1997 DOLWH LEXIS 55, 1997 WL 998047, at \*2 (Nov. 4, 1997); 29 C.F.R. § 531.56 (recognizing that some employees have dual jobs and an employee is only a 'tipped employee' when engaged in that job in which he is tipped.)).

Recognizing that employers could misuse the tip credit to pay dual job employees who have may have a title such as busser "but who function in actuality as bussers, janitors, and chefs at least part of the time, the DOL promulgated the dual jobs regulation and issued an interpretative guidance. Together, these two provisions clarify the boundaries of acceptable tip credit use and ensure that a server's tips serve as a gift to the server, as opposed to a cost-saving benefit to the employer." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 633 (9th Cir. 2018) (en banc); *see also, e.g.,* 29 C.F.R. § 531.56 (recognizing that some employees have dual jobs and an employee is only a 'tipped employee' when engaged in that job in which he is tipped); DOL FOH 30d00(d) ("When an individual is employed in a tipped occupation and a non-tipped occupation(dual jobs), the tip credit is available only for the hours spent in the tipped occupation.").

In *Pedigo*, the defendant included dishwashers in its tip pool but argued it was acceptable because they also bussed tables, ran food to tables, or sometimes performed bar back duties. *Pedigo*, 722 F. Supp. at 732. The court was not convinced because "the unconverted evidence reveal[ed] that dishwashers' primary duties including washing dishing, shucking oysters and peeling shrimp." *Id.* Given this evidence, the court held that the defendant "has failed to carry its burden of proving that [the restaurant's] dishwashers regularly and customarily receive tips as required in order to maintain a valid tip pool under section 203(m). Thus, Plaintiffs are entitled to summary judgment on this issue." *Id.*

Similarly, in *Lopez,* the court held where an employee performs nontipped and tipped duties, the employer may only pay that employee from the tip pool for the time spent in the tipped occupation. *Lopez*, 2021 U.S. Dist. LEXIS 132407, at *25-26. The court rejected the employer's argument that because an employee worked in both a tipped occupation and in a nontipped occupation, it could use tips to pay the employee for all work performed. *Id.* Instead, the court held, the defendant was prohibited from using plaintiffs' tips to pay employees "employed in both tipped and non-tipped occupations." *Id.* ("when a person is employed in both tipped and non-tipped occupations, 'no tip credit can be taken for his hours of employment in his occupation [as a non-tipped employee].'" (quoting 29 C.F.R. § 531.56(e)). Therefore, the court held the employer could not utilize the tip credit to pay its servers who contributed tips to the tainted tip pool. *Id.*

In *Myers*, a restaurant assigned one of its servers, during busy shifts, to act as a salad maker. *Myers*, 192 F.3d at 548. During this "salad shift" the server stayed in the kitchen for the duration of the shift and performed no customer facing duties. *Id.* Despite the fact that these employees

were servers during every other shift except for this one shift where they worked as salad makers, the Sixth Circuit held that the inclusion of the salad makers violated the tip credit. *Id.* at 550-51.

In *Roussell*, a restaurant assigned its servers to work as "QAs" during some shifts. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 233 (5th Cir. 2011). During the shifts the restaurant assigned its servers to work as QAs, they were paid using the server's tips. *Id.* Despite the fact that these QAs also worked shifts as servers, the Fifth Circuit held that they were ineligible to participate in the tip pool during their QA shifts. *Roussell*, 441 F. App'x at 233 ("It follows that servers working an occasional QA shift are, just like QAs, ineligible to participate in mandatory tip pools during those shifts.").

Other courts have reached similar conclusions. *See, e.g., Reyes*, 2018 U.S. Dist. LEXIS 141736, at *11 n.7 ("The fact that these employees were called 'muckers' and not 'dishwashers' is not dispositive in characterizing them as tipped or non-tipped employees because 'a restaurant's job-title nomenclature is not dispositive.'" quoting Barrera, 2011 U.S. Dist. LEXIS 83468, at *4-5(citation omitted)); *see also Rafferty*, 13 F.4th at 1173 ("By its terms, the dual-jobs regulation observes that, in some situations, despite performing work for only one employer, an employee works in two occupations. When that happens and only one of the duties is a tipped occupation, the regulation explains, the employer can take the tip credit for only the hours the employee performs her tipped occupation.").

a. **Defendant arbitrarily and inconsistently identifies the job titles of the employees who purportedly receive tips**

Putting aside for the moment the lack of evidentiary support and Defendant's limited discussion of the job duties performed by the busser and service well, Defendant fails to consistently identify the job-titles, and altogether fails to identify the job *duties*, of any other

purported tip pool recipient. Pls SOF ¶¶ 7-21. Indeed, Defendant changes at whim the job-title nomenclatures it uses to reference employees. For instance, Defendant interchangeably refers to barbacks as bussers. Pls SOF ¶ 18. Also, Defendant interchangeably refers to "server assistants" as bussers. Pls SOF ¶ 19. Now on summary judgment, Defendant refers to its service bartenders as "service well assistants." Pls SOF ¶¶ 20, and 22-23.

### b. Defendant fails to provide any evidence of the job *duties* performed by the purportedly "eligible" tip pool recipients

In the absence of any evidence of their job duties, Defendant seeks to discharge its burden of proof by asking this Court to assume, based on job-titles alone, that all purported tip pool recipients were lawfully entitled to be paid with tips. *See Def's Br.*, [Doc. 78 at 29-32]. In other words, Defendant asks this Court to avoid engaging in the necessary "<u>fact-intensive inquiry</u> . . . of the employee's duties and activities." *Montano*, 800 F.3d at 194.

Defendant not only fails to consistently identify the job-titles assigned to the purported tip pool recipients, but the job-titles it has identified are not indicative of the job *duties* performed by the employee. *See* Pls SOF ¶¶ 22-26; *see also* Pls SOF ¶¶ 27-43. In addition, Defendant's "service well" worked in the kitchen, had no customer interaction, and therefore, was an unlawful recipient of Plaintiffs' tips. Pls SOF ¶¶ 22-23. In addition, employees who were engaged in nontipped occupations worked under the job-titles assigned to purported tip pool recipients. Pls SOF ¶¶ 21-36. The nontipped employees who were working under job-titles assigned to tip pool recipients, were paid using Plaintiffs' tips, despite the fact they were engaged in nontipped occupations. *Id*.

### C. Defendant argues that Plaintiffs did not and could not know how their tips were being distributed because Defendant unilaterally controlled the distribution of their tips.

In its Motion, Defendant argues that Plaintiffs did not know and could not know how their tips were being handled. *See* Def's Br.*,* [Doc. 78 at pp. 13-14]. Indeed, Defendant's corporate

representative testified that he did not know what the purpose would be to tell Plaintiffs where their tips were being distributed. *See Henderson 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 261 [86:20-89:21]; (no purpose to inform Plaintiffs how their tips are being used); *Freeman 30(b)(6) Corp Rep Depo,* Pls Ex 7 at App. 297 [35:9-36:11]; App. 317 [70:10-15]; *Helgason Depo*, Pls Ex 3 at App. 164-65 [151: 19-152:2] (did not know service well was paid with tips).

However, "[t]he tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid." *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); see also 29 C.F.R. § 531.54 (2007) (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"). Courts have held that an employer is not eligible to take the tip credit and will be liable for reimbursing an employee the full minimum wage that employee would have earned, "if the employer exercises control over a portion of the employee's tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions); *Wright v. U-Let-Us-Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217 (D. Colo. 1985) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m); *Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received); *Brennan v. Haulover*

*Shark and Tarpon Club, Inc.*, No. 74-1276, 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1996) (employer violated tip credit by diverting a portion of employee's tips to a "vacation fund").

In *Cross,* the court held employees who are paid flat hourly wages are not proper tip pool recipients. *Cross v. 440 Corp.*, No. 2:06-CV-0191-WCO, 2008 U.S. Dist. LEXIS 144933, at *13 (N.D. Ga. 2008). Specifically, the court held that "440 Corp. made a business determination with the hope that offering fixed salaries would attract high-quality food runners and hostesses. (Defs.' Statement of Material Facts ¶ 6). In doing so, 440 Corp. removed these employees from the statutory definition of tipped employees, rendering them ineligible to participate in a valid tip-pool arrangement." *Id.* at *13.

Other courts have found violations of the tip credit where an employer, like Defendant, unilaterally decided how to use tip pool funds to pay flat hourly wages to its other employees. *See Wright*, 648 F. Supp. 1216 (using tips to pay employees fixed wages violates the FLSA's tip credit); *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) (a permissible "pooling arrangement" is one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves") (citing 29 C.F.R. § 531.54. By unilaterally deciding how and to who Plaintiffs' tips would be distributed, Defendant unlawfully controlled Plaintiffs' tips in violation of the tip credit. Def's Br., [Doc. 78 at p. 10].

## VI.  DEFENDANT EXPLOITED THE TIP CREDIT TO PAY FOR NONTIPPED WORK

### A.  Defendant used the tip credit to pay Plaintiffs less than minimum wage to complete various nontipped work assignments.

"[A]n employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation." *Fast v. Applebee's Int'l, Inc.*, 502 F. Supp. 996, 1003 (W.D. Mo. 2007) (citing  29 C.F.R. § 531.56(e)). Here, Defendants used the tip credit to pay Plaintiffs for nontipped

labor in violation of the FLSA. First, Defendant required Plaintiffs to perform non-tipped labor *unrelated* to their primary tip generating occupation as a server. Second, Defendant required Plaintiffs to perform nontipped labor that, even if related, to Plaintiffs' primary tip generating occupation as a server, was performed for excessive amounts of time (35% to 55% of their time).

The Eleventh Circuit recently observed, "even the best servers with the most magnanimous customers cannot earn tips during the periods their employers require them to engage in non-tipped work. So the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the regulations the Department of Labor has promulgated to effectuate it impose rules to ensure that tipped employees—who receive subminimum hourly wages with the expectation that tips will be high enough to bring their hourly rates to at least the minimum wage—spend the bulk of their time working in tip-producing tasks." *Rafferty*, 13 F.4th at 1169

"The tip credit does not apply to just any employee who ever received a tip . . . an employee is a tipped employee if two things occur: 1) [the employee] is engaged in an occupation, and 2) the occupation is one in which he regularly and customarily receives at least $30 in tips per month." *Fast*, 638 F.3d at 876 (citing 29 U.S.C. § 203(t)). The threshold question is whether an employee is "engaged in" customarily tipped job duties. The Department of Labor has always interpreted 29 U.S.C. § 203(t) as permitting an employer to take a tip credit against a server's wages in some instances, and prohibiting an employer from taking a tip credit against a server's wages in other instances. *See* 29 C.F.R. § 531.56(e) ("Dual Jobs regulation").

Additionally, under the Dual Jobs regulation, an employer may not take a tip credit in lieu of paying a full minimum wage employee for *any* time a server spends performing *unrelated* tasks. *See, e.g., Driver v. AppleIllinois*, LLC, 890 F. Supp. 2d 1008, 1030 (N.D. Ill. 2012) (holding that

employees were engaged "in dual jobs because it is undisputed that AppleIllinois employed tipped workers to do the duties of [other] workers when those workers were not scheduled."); *Rafferty*, 13 F.4th 1166. In sum, with respect to nontipped work, the following rules apply:

> (1)   An employer cannot take the tip credit for time an employee spent performing duties that were *unrelated* to the tipped occupation.
>
> (2)   An employer can take the tip credit for time an employee performed duties related to her tipped occupation, provided that those duties were not performed by that employee for more than twenty percent of her working hours.

*Rafferty*, 13 F.4th at 1175 (quoting *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 619-20 (9th Cir. 2018) (en banc). An employer has burden to demonstrate an employee is a "tipped employee" for all hours paid using the tip credit. *See* 29 C.F.R. § 531.51.

### B.   Plaintiffs are entitled to the full minimum wage for all time spent performing unrelated sidework duties.

An employee may work for an employer in both a tipped and a non-tipped capacity. 29 C.F.R. § 531.56(e). An employee working in "dual jobs" is, however, a "tipped employee" only during the time spent performing in the tipped position. *Id.*; *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011). Courts consistently hold that an employer must pay the full minimum wage for all time an employee spends working in a nontipped occupation. *See e.g., Rafferty*, 13 F.4th at 1175 ("a dual job employee entitled to the full minimum hourly wage for her unrelated work.") (quoting *Marsh*, 905 F.3d at 620).

There is no dispute that Plaintiffs were, at times, paid $2.13 while engaged in an occupation which does not customarily and regularly receive tips. Pls SOF ¶ 37; *Id.* ¶¶ 38-48; *cf. Driver,* 890 F. Supp.2d at 1030 (holding that employees were engaged "in dual jobs because it is undisputed [the restaurant] employed tipped workers to do the duties of [other] workers when those workers were not scheduled."); *Marsh*, 905 F.3d at 616 (finding employer owed full minimum wage for any

time spent on nontipped work such as cutting and stocking fruit, cleaning the soft drink dispenser and nozzles, replacing soft drink syrups, stocking ice, taking out the trash, scrubbing the walls, and cleaning the restrooms, stock ice, brew tea, and cut and stock fruit every opening shift and to wipe down tables and collect and take out the trash every closing shift.); *Rafferty*, 13 F.4th at 1169 (holding employer must pay full minimum wage for any unrelated nontipped work such as wiping down microwave and stoves; washing and scrubbing walls; cleaning and scrubbing refrigerators, sinks, trays, and bins; and detail cleaning the expediter line.); *Dole v. Bishop*, 740 F. Supp. 1221, 1228 (S.D. Miss. 1990) (finding no tip credit could be taken for time restaurant servers spent performing cleaning and food preparation duties before the restaurant opened, including "cleaning bathrooms and other general areas of the restaurant, chopping vegetables, and making puddings and ice cream."

In *Driver v. AppleIllinois, LLC*, 739 F.3d 1073 (7th Cir. 2014), the Seventh Circuit held a restaurant could not use the tip credit to pay tipped employees for nontipped duties such as washing dishes, preparing food, or cleaning. *Id.* at 1075. Therefore, the court held, tipped employees are entitled to the full minimum wage for all time they spend performing such nontipped work. *Id.*

In *Dole*, a restaurant required its servers to arrive before the restaurant opened to perform several pre-shift preparation duties before the restaurant opened. 740 F. Supp. 1221 (S.D. Miss. 1990). The court found that preparation duties performed before the restaurant opened, however, were not incidental to a restaurant server's tipped duties. *Id.* at 1228. Therefore, the court held, no tip credit could be taken and the servers were entitled to the full minimum wage during these times. *Id.*

Here, like the employees in *Dole*, there is no dispute Plaintiffs were required to arrive at least one hour before the restaurant opened to perform various nontipped duties before the restaurant opened. *See* Pls SOF ¶ 46; *Id.* ¶¶ 37-48. Plaintiffs were likewise required to perform closing duties late at night, several hours after the restaurant had already closed. *See Id.* ¶¶ 37-48. Like the servers in *Dole*, Plaintiffs are therefore entitled to the full minimum wage for their time performing nontipped job duties when the restaurant was closed.

In addition, Defendant often failed to fully staff the restaurant including, for example, Defendant often failed to schedule a busser to work during Plaintiffs' shifts. Pls SOF ¶ 12; *Id.* ¶¶ 38-48. Therefore, with an understaffed restaurant, Plaintiffs were forced to complete the duties normally assigned to the absent non-server staff. Pls SOF ¶ 12; *see also Id.,* ¶¶ 25, 29, 37-48; cf *Driver,* 890 F. Supp.2d at 1030 (holding that employees were engaged "in dual jobs because it is undisputed [the restaurant] employed tipped workers to do the duties of [other] workers when those workers were not scheduled.").

More specifically, Plaintiffs were required to complete duties that were normally assigned to and should have been completed by non-server staff including duties such as scraping dishes, carrying their own food and drinks, taking out the trash, resetting chairs and tables, cleaning tables, taking back to the kitchen and emptying buss tubs—over filled with cast iron plates, pork chop boards, and a myriad of other plate ware; cleaning different areas of the restaurant; dishwasher duties (i.e. polishing glassware and silverware and cleaning steak trays, pork chop boards, and other plate ware); and preparing bread for the oven and whipping butter to pipe into ramekins. *See* Pls SOF ¶¶ 37-48; cf. *Driver,* 890 F. Supp.2d at 1030 (holding that employees were engaged "in dual jobs because it is undisputed [the restaurant] employed tipped workers to do the duties of [other]

workers when those workers were not scheduled.").

In addition, Plaintiffs were routinely required to wash and polish plate ware and glassware, perform kitchen work, perform maintenance work such as fixing barstools, and many other nontipped tasks that are not directly related to earning tips. *See* Pls SOF ¶¶ 37-48; cf. *Marsh*, 905 F.3d at 616 (finding employer owed full minimum wage for any time spent on nontipped work such as cutting and stocking fruit, cleaning the soft drink dispenser and nozzles, replacing soft drink syrups, stocking ice, taking out the trash, scrubbing the walls, and cleaning the restrooms, stock ice, brew tea, and cut and stock fruit every opening shift and to wipe down tables and collect and take out the trash every closing shift.).

Plaintiffs were further required to complete extensive deep cleaning throughout the restaurant including, for example, fixing chairs and barstools, vacuuming, scrubbing the patio, setting up and breaking down the patio, cleaning and polishing trays, glassware, and plates, among other cleaning duties. *See Id.;* cf *Rafferty*, 13 F.4th at 1169 (holding employer must pay full minimum wage for any unrelated nontipped work such as wiping down microwave and stoves; washing and scrubbing walls; cleaning and scrubbing refrigerators, sinks, trays, and bins; and detail cleaning the expediter line.). Plaintiffs performed also performed 30 to 45 minutes of nontipped work on the expo line in the kitchen area each shift, including polishing serving spoons and dessert spoons stored and located in the kitchen across the expo line, and preparing and filling ramekins with applesauce, butter, ketchup. Pls SOF ¶ 47; cf *Driver,* 890 F. Supp. 2d at 1033 n.15 ("silverware rolling is a not a 'related' duty" when "it is done in the expo area of the kitchen next to the expo line.").

46

Defendant elected to pay Plaintiffs $2.13 per hour to perform such work in lieu of fully staffing the restaurant with minimum wage employees to perform these tasks. Plaintiffs are therefore entitled to be paid the full minimum wage for *any* time spent performing *unrelated* nontipped jobs assigned to them as discussed above (e.g., scrubbing the patio, replacing broken stools, general cleaning of the restaurant, attending meetings, training, taking quizzes, and the plethora of other *unrelated* nontipped duties assigned to them (discussed above)). Because the facts show Plaintiffs performed unrelated nontipped duties, Plaintiffs are entitled to the full minimum wage for all time spent performing them.

Defendant fails to cite to a single case defining and analyzing sidework requirements under the FLSA. Instead, Defendant attempts to define sidework through a hearsay definition provided by one Defendant's employees who was purportedly told constitute unrelated sidework. *Grady Decl.*, Def's App., Ex E [Doc. 81 at p. 18] ("I have been informed that certain kinds of side work are referred to as "unrelated" to server duties, such as cleaning toilets, cooking food or taking out trash."). Notwithstanding the hearsay and an improper legal conclusion, Defendant attempts to extrapolate this statement into supporting the proposition that because Mr. Grady says Plaintiffs did not do any of the stuff he defines as unrelated sidework, Plaintiffs did not perform any unrelated sidework as a matter of law.

Assuming *arguendo* that Plaintiffs did only perform the nontipped sidework duties Defendant says they performed, many of these tasks are *unrelated* duties—as a matter of law—and therefore, must be compensated at the full minimum wage. *See* Pls SOF ¶¶ 39-40, 42-44, and 47; *see also e.g., Grady Decl.*, Def's App., Ex F [Doc. 81 at pp. 25-27]. ("wipe down legs of barstools" "setup ice buckets" "polish and distribute wine plates" "Dust piano and ledges/Wipe windows

and doors" "Restock to go station" "clean and fill sugar caddies: 6 per station" "Patio is broken

down and cleared" "pump and date all wines and ports" "polish and restock all snifters").

**C.  Plaintiffs were required to perform substantial nontipped side work in violation of the 80/20 Rule.**

An employer cannot take a tip credit for nontipped work that occupies more than 20% of

the server's time—even if such work is related to the server's tipped occupation. *Id.; see also* U.S.

Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985) (finding violation

where only one server assigned to perform "all preparatory duties . . . [that] extend[ed] to the

entire restaurant rather than the specific area or customers which they serve.").

"The [80/20 Rule] Guidance also clearly lays out that a server is a dual job employee if her

related tasks occupy more than 20% of her hours in a workweek." *Rafferty*, 13 F.4th at 1170. The

Eighth, Ninth, and Eleventh Circuits have all endorsed the 80/20 rule and held the DOL's pre-

2018 guidance was within the agency's discretion and not inconsistent with the dual jobs

regulation. *See Marsh*, 905 F.3d at 625; *Fast*, 638 F.3d at 879-81; *Rafferty*, 13 F.4th at 1170. Indeed,

despite assertions of its challenged status, "[the party challenging the 80/20 Rule] could identify

no cases that called into question the 80/20 rule's validity or declined to follow it." *Rest. Law Ctr.*

*v. United States DOL*, 2022 U.S. Dist. LEXIS 30368, at *8 (W.D. Tex. Feb. 22, 2022).

Plaintiffs spent excessive time—far more than the 20% limitation—each shift performing

non-tipped job duties. *See* Pls SOF ¶¶ 38-48; *Id.* at ¶ 38 (Crawford estimates 35% to 45% of her time

and Helgason estimates 45% to 55% of her time was spent performing nontipped duties); cf.

*Rafferty*, 13 F.4th at 1190-91 (reversing district court for "denying a claim simply because the

employee cannot produce records of her time worked would reward an employer's failure to

comply with its statutory duty to maintain proper records.").

Although not required to have records, Plaintiff Helgason provided some records that are instructive to show the amount and extent of nontipped work Defendant assigned. For instance, on May 21, 2019,[8] during an almost nine-hour shift, Plaintiff Helgason arrived at 3:06 p.m. and performed nontipped work until her first table arrived at 4:32 p.m. (1 hour 26 minutes of nontipped work). Plaintiff Helgason's last table was at 9:42 p.m., yet she did not finish her closing duties until she clocked out at 12:03 a.m. (2 hours and 21 minutes after her last table). *See Helgason Clock Out Receipts*, Pls Ex 11 at App. 345 [PRLTX 000184]. In addition, Plaintiffs submit substantial evidence including sworn declarations, deposition testimony, clock out receipts, as well as Defendant's own sidework policies and checklists, opening duties, closing duties, and item count checklists—all showing the extensive nontipped work Plaintiffs were required to complete each shift. *See* Pls SOF ¶¶ 38-48. Because Plaintiffs performed nontipped work that, even if related to their occupation as servers, exceeded 20% of their time, Defendant must pay Plaintiffs the full minimum wage for all nontipped work.

### 1. *Defendant primarily relies on the O*NET job listing, which courts have universally rejected in favor of applying the 80/20 Rule.*

In the absence of a single case citation to support its assertions, Defendant instead attempts to discharge its summary judgment burden by implying, albeit wrongly, that the O*NET job listing was adopted by the 2018 regulation, 29 C.F.R. § 531.56(e) (2018 version). *See Def's Br.,* [Doc. 78 at p. 19]. Despite Defendant's representations, the O*NET job listing was *never* adopted by any prior regulation, but instead merely adopted by an opinion letter the DOL issued in 2018. *See Rafferty*, 13 F.4th at 1176-77.

---

[8]   The Clock Out Receipt is dated May 22, 2019 because Ms. Helgason did not complete her shift on May 21, 2019 until the next day, at 12:03 a.m.

Despite these pronouncements, courts have universally rejected the 2018 DOL guidance in favor of the 80/20 Rule and the Dual Jobs regulation. *See e.g., Rest. Law Ctr.*, 2022 U.S. Dist. LEXIS 30368, at *4 (noting the 2018 Opinion Letter has been "met with near-universal rejection" by courts across the country); *Rafferty*, 13 F.4th at 1176-77 ("Despite these changes, district courts nearly unanimously concluded that the 2018 Opinion Letter was not entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997)"); *Flores v. HMS Host. Corp.*, No. 8:18-cv-03312, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019) (collecting cases rejecting the 2018 guidance); *see also Table of Cases Rejecting Challenges to 80/20 Rule,* Pls Ex. 26 at App. 451-55.

Defendant not only chose to ignore all the cases from around the country rejecting the 2018 opinion letter, but Defendant also failed to address any basis or reason the 2018 Opinion Letter should be entitled to deference.

### 2. *Defendant incorrectly proclaims Plaintiffs cannot recover without "evidence" showing the precise amount of time spent performing sidework*

Despite its obligation to maintain time records under the FLSA, Defendant failed to keep any records, much less accurate records, showing the time Plaintiffs spent performing nontipped duties. Because it did not maintain the required time records, Defendant contends Plaintiffs sidework claim must fail because they purportedly lack "evidence" of the precise amount of time they spent performing nontipped work. However, under longstanding Supreme Court precedent, courts must apply a relaxed standard in cases where an employer fails to maintain proper and adequate records burden. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

The Supreme Court recently reaffirmed the application of *Mt. Clemens* in FLSA cases where an employer failed to maintain proper records. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). In *Tyson* the Supreme Court stated, the "remedial nature of [the FLSA] and the great

public policy which it embodies . . . militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee." *Id.* (quoting *Mt. Clemens*, 328 U.S. at 687-88). Where an employer fails to maintain time records, the employee may discharge their burden by showing the amount of work performed by a just and reasonable inference. The Supreme Court held, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Numerous other courts have consistently applied *Mt. Clemens* in cases where an employer fails to maintain proper records. *See e.g., United States Dep't of Labor v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 442, 445-46 (5th Cir. 2021) ("[the employer] mainly contests that the damages award was an approximated number. But that's what *Mt. Clemens* allows when, as here, FLSA-required time records are incomplete."); *Fast*, 638 F.3d at 882 (holding "district court properly applied the *Mt. Clemens* burden of proof" because employer "did not maintain sufficient records from which the employees can differentiate between when they performed tipped duties and when they performed related but nontip-producing duties within the meaning of the dual jobs regulation, then the employees can use the relaxed *Mt. Clemens* standard by 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'") (quoting *Mt. Clemens*, 328 U.S. at 687); *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069, 2021 U.S. Dist. LEXIS 35199, at *24-25 (W.D. Pa. Feb. 25, 2021) ("with respect to tipped employees, '[e]mployers are...required to keep records of the hours in which an employee receives tips, and the hours in which they do not—regardless of whether the Dual Jobs regulation applies.'")(citations omitted).

The Eleventh Circuit recently applied *Mt. Clemens* in a sidework case. In *Rafferty*, the court held where an employer failed to maintain records the employee may satisfy its burden by producing "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Rafferty*, 13 F.4th at 1191 (citing *Anderson*, 382 U.S. at 687). "The burden then shifts to the employer to produce either evidence of the specific amount of work the employee performed or evidence that tends to refute the reasonableness of the inference the employee seeks for the factfinder to draw from her evidence." *Id.* (citation omitted). If the employer does not satisfy this production burden, the court may award damages even if the award represents an estimation. *Id.*

In *Wintjen* the court reached a similar conclusion where a restaurant required its employees to perform non-tip-generating side-work but did not maintain records or track the time those employees spent performing such side-work. *See Wintjen*, 2021 U.S. Dist. LEXIS 35199, at *29-30. The court the defendant "did not 'keep records of the hours in which an employee receives tips, and the hours in which they do not,' *Belt*, 401 F.Supp.3d at 537, as required by 29 C.F.R. § 516.28." *Id.* Because defendant failed to maintain records, the court held, the plaintiffs could easily discharge their burden under *Mt. Clemens* by providing evidence to support a just and reasonable inference of the time they spent performing sidework.

Notwithstanding Defendant's failure to maintain time records showing the amount of time Plaintiffs were engaged in nontipped work, Defendant completely ignores and fails to address all the testimony and evidence showing the substantial time Plaintiffs spent completing the nontipped duties assigned to them. Instead, Defendant relies solely on two declarations from Messrs. Grady and Garcia who generally state their "belief" about how much time it "should" have taken a server (in general) to complete all the sidework assigned to them. Defendant further relies on these two

declarations to support its presupposition that Plaintiffs must have been "lollygagging" if their nontipped work took any longer than what Messrs. Grady and Garcia say it "should" have taken them. Therefore, Defendant justifies, it was entitled to always take a tip credit and pay Plaintiffs $2.13 per hour, regardless of how must time Plaintiffs spent performing nontipped work, because, as Defendant postulates, Plaintiffs were surely lollygagging.

However, because Defendant failed to keep records of the amount of time Plaintiffs were engaged in nontipped work, Plaintiffs' burden is easily discharged under *Mt. Clemens*. Plaintiffs' sworn testimony (including their declarations) are more than sufficient to meet their burden under *Mt. Clemens. See Rafferty*, 13 F.4th at 1190-91 (finding plaintiff's sworn testimony sufficient and reversing district court for "denying a claim simply because the employee cannot produce records of her time worked would reward an employer's failure to comply with its statutory duty to maintain proper records.").

In fact, Plaintiffs provided more than what is required under Supreme Court and Fifth Circuit precedent. Although Plaintiffs' testimony and declarations alone are sufficient, their testimony is further buttressed by what Defendant calls "extrapolation." *See* Pls SOF ¶ 46; *Id.* ¶¶ 38-48; Section VI. C, supra. In addition, Defendant's attempt to significantly limit the sidework by stating the amount of time it "should" have taken to complete the sidework is not supported and contradicts the evidence. For instance, Defendant submits a declaration from Mr. Grady who avers that "[w]e had a machine polisher that polished glasses, 4 at a time[.]" *Greg Grady Suppl. Decl.*, Def's App., Ex. F [Doc. 81 at p. 026]. However, this assertion is contradicted by the server development guide Defendant provided to its servers instructing them to: **"Never place more than one glass on the glass polisher at a time. Multiple glasses on the polisher may cause**

**breakage and injury."** *See Server Development Guide,* Pls Ex. 25 at App. 450 [Perry's-000625].

Plaintiffs have also offered other substantial evidence showing the substantial time they spent (35% to 55% of their time) performing sidework. *See* Pls SOF ¶ 32-43.[9]

### 3. *Defendant suggests that Plaintiffs must have been "lollygagging," were too slow and did not work fast enough to complete their nontipped sidework assignments.*

Despite Defendant's unsupported assertions that Plaintiffs' must have been "lollygagging," Defendant offers no argument or case that says if Plaintiffs do not complete their sidework at the pace Defendant says it should have taken, then it must be excluded from consideration under the 80/20 Rule. Assuming *arguendo,* as Defendant contends, all opening sidework duties should have taken 35-45 minutes for two servers[10] to complete, Defendant offers no justification for why Plaintiffs were required to show up one hour before their shift.[11]

Moreover, Defendant offers no reason or justification for its conclusion that Plaintiffs were "tipped employees" and could be paid $2.13 even though they were not waiting on customers (before restaurant opened or closed) during periods when Plaintiffs were performing sidework while they waited on the last customer to leave the restaurant (which may not have necessarily even been one a customer Plaintiffs were serving). *See* Pls SOF ¶¶ 38-48; *see also, e.g., Helgason*

---

[9] Cf. *Rafferty*, 13 F.4th at 1190-91 (reversing district court and holding that "denying a claim simply because the employee cannot produce records of her time worked would reward an employer's failure to comply with its statutory duty to maintain proper records.").

[10] Mr. Grady not only contradicts his own statement, Pls SOF ¶¶ 45 (citing Def's App [Doc. 81 at p. 19] and [Doc. 81 at p. 25]), but Defendant fails to offer any other evidence to rebut Plaintiff Helgason's testimony that there was only one assigned opener during a large portion of her employment.

[11] In addition to the opening sidework, Plaintiffs had to perform "first out" sidework and "closing duties." Though Defendant fails to speculate on the total time it took to complete all closing duties, Mr. Grady speculates that "first out" sidework should have taken 16-25 minutes (in addition to the 35-45 minutes for opening duties).

*Depo,* Pls Ex. 3 at App. 152-56 [139:22-143:25]; *Id.* at App. 160-62 [147:2-149:11];[12] *Freeman Depo,* Pls Ex. 8 at App. 318 [75:1-76:2] (testifying Defendant has not produced records showing when first table arrived or when last table left and does not otherwise know the time last table left).

In fact, Defendant's interpretation contradicted by the text of the FLSA. Under the FLSA, an employer may only take a tip credit when an employee is "engaged" in (i.e., busy or occupied with) a tipped occupation. *See Fast*, 638 F.3d at 876 ("The tip credit does not apply to just any employee who ever received a tip . . . an employee is a tipped employee if two things occur: 1) [the employee] is engaged in an occupation, and 2) the occupation is one in which he regularly and customarily receives at least $30 in tips per month.") (citing 29 U.S.C. § 203(t)); *see also* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59.

Therefore, even if Defendant did have evidence to support its unfounded assertions that Plaintiffs must have been "lollygagging" and did not work fast enough to complete their sidework, Defendant would still be unable to take a tip credit for this time because Plaintiffs were not "engaged" in (i.e., busy or occupied with) their tipped occupation of serving customers.

* * *

[12] Yet again, Defendant intentionally omits these pages from Helgason's deposition where she testifies to performing sidework while waiting for the last customer to leave, and not as Defendant contends, "lollygagging."

## CONCLUSION

In conclusion, Defendant has failed to meet its burden and prove—beyond peradventure—that it complied with the FLSA's minimum wage and tip credit provisions. Defendant admits it paid Plaintiffs a subminimum wage rate, and Defendant concedes that it must rely on the tip credit to meet its minimum wage obligations. However, Defendant fails to demonstrate evidence establishing—beyond peradventure—its entitlement to claim the tip credit as a matter of law.

Specifically, Defendant did not comply with the tip credit and has otherwise failed to carry its burden to prove: (1) it allowed Plaintiffs to retain all their tips; (2) its tip pool was fully distributed pool was distributed solely among other tipped employees; and (3) it only took a tip credit while Plaintiffs were performing their jobs as servers and during the limited time periods that the tip credit permits an employer to pay an employee subminimum wages. *See Steele*, 826 F.3d at 242; *Montano*, 800 F.3d at 188; *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9; *Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021).

Moreover, Defendant did not move for summary judgment on whether it informed Plaintiffs of the required tip credit provisions. In addition, Defendant did not move for summary judgment regarding the deductions for uniforms, tools, and other items Plaintiffs were required to purchase in order to perform their jobs. Therefore, Defendant's motion for summary judgment should be summarily denied because even a single violation—including those not raised in its motion—will divest Defendant of the tip credit defense.

In sum, Defendant has failed to carry its burden to prove that it complied with and is entitled to the FLSA's tip credit defense as a matter of law. Defendant not only failed to carry its burden, but Defendant also failed to present evidence that would establish—beyond

peradventure—that it complied with all the requirements for taking a tip credit. Accordingly, Plaintiffs respectfully request the Court deny Defendant's Motion for Partial Summary Judgment [Doc. 77] and grant Plaintiffs all such relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

By: */s/ Drew N. Herrmann*

Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com
Allison H. Luttrell
Texas Bar No. 24121294
allison@herrmannlaw.com

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102
ATTORNEYS FOR PLAINTIFFS